1  Kristin J. Madigan (SBN 233436)
   kmadigan@crowell.com
2  Warrington S. Parker, III (SBN 148003)
   wparker@crowell.com
3  Rebecca Suarez (SBN 284853)
   rsuarez@crowell.com
4  Jacob S. Canter (SBN 324330)
   jcanter@crowell.com
5  CROWELL & MORING LLP
   3 Embarcadero Center, 26th Floor
6  San Francisco, CA 94111
   Telephone: 415.986.2800
7  Facsimile: 415.986.2827

8  Jennifer S. Romano (SBN 195953)
   jromano@crowell.com
9  CROWELL & MORING LLP
   515 South Flower Street, 40th Fl.
10 Los Angeles, CA 90071
   Telephone: 213.622.4750
11 Facsimile: 213.622.2690

12

13 Attorneys for Defendant
   Viamericas Corporation

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                          OAKLAND DIVISION

17 NELSON SEQUIERA, ORSAY ALEGRIA, and      Case No. 4:22-cv-07996-HSG
   ISMAEL CORDERO, individually and on behalf
18 of all others similarly situated,         **DEFENDANT VIAMERICAS
                                             CORPORATION'S NOTICE OF
19                Plaintiffs,                 MOTION AND MOTION TO
                                             DISMISS THE FIRST AMENDED
20        v.                                  COMPLAINT PURSUANT TO
                                             RULES 12(B)(1) AND 12(B)(6);
21 U.S. DEPARTMENT OF HOMELAND               MEMORANDUM OF POINTS AND
   SECURITY; U.S. IMMIGRATION &              AUTHORITIES IN SUPPORT
22 CUSTOMS ENFORCEMENT; THE                  THEREOF**
   WESTERN UNION FINANCIAL SERVICES,
23 INC., a Colorado corporation; CONTINENTAL Date:  May 18, 2023
   EXCHANGE SOLUTIONS, INC., a Kansas       Time:  2:00 p.m.
24 corporation, d/b/a RIA FINANCIAL          Judge: Hon. Haywood S. Gilliam, Jr.
   SERVICES and AFEX MONEY EXPRESS;
25 VIAMERICAS CORPORATION, a Delaware        Complaint filed: December 12, 2022
   Corporation; and DOLEX DOLLAR EXPRESS,    First Amended Complaint filed: January
26 INC., a Texas corporation,                24, 2023

27                Defendants.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

VIAMERICAS CORPORATION'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT;
CASE NO. 4:22-CV-07996-HSG

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

    A.    Plaintiffs Bring Individual and Class Claims Against Six Defendants—Two Federal Government Agencies and Four Money Transfer Companies. ................... 2

    B.    Plaintiffs Allege That Reporting Money Transfers in Response to Subpoenas Violates the Law. ....................................................................................................... 3

    C.    Plaintiff Alegria Sued Viamericas Based on Its Money Transfer Business and Claimed Disclosures to TRAC in Response to Subpoenas. ................................... 4

    D.    Viamericas Produced Information Regarding Plaintiff Alegria Pursuant to Subpoenas Issued by the Attorney General of Arizona. ......................................... 5

    E.    Plaintiffs Bring RFPA Claims Against All Defendants and CalFIPA Claims Against the Money Transfer Defendants. ................................................................. 6

ARGUMENT ........................................................................................................................ 7

I.     PLAINTIFF'S RFPA CLAIM AGAINST VIAMERICAS (COUNT I) SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM. .............. 7

    A.    A Money Transfer Company Is Not Subject to RFPA's Notice Requirements. ...... 7

    B.    Viamericas Is Not a Consumer Finance Institution Under the RFPA. ................... 8

II.    PLAINTIFF'S RFPA CLAIM AGAINST VIAMERICAS (COUNT I) SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE PLAINTIFF ALEGRIA LACKS ARTICLE III STANDING. ................................................................................................. 9

    A.    No Causal Connection Exists Between Viamericas' Alleged Conduct and Any Injury to Mr. Alegria. ........................................................................................... 10

    B.    The Prayer for Injunctive Relief Will Not Redress Plaintiff Alegria's Alleged Injury. ....................................................................................................................... 11

III.   PLAINTIFF'S UCL CLAIM AGAINST VIAMERICAS (COUNT II) SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ..................................................... 12

CONCLUSION ................................................................................................................... 13

CROWELL
& MORING LLP
ATTORNEYS AT LAW

VIAMERICAS CORPORATION'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT;
CASE NO. 4:22-CV-07996-HSG

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.*,
No. C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464
F. App'x 651 (9th Cir. 2011) ...............................................................................12

*Anderson v. Seliger*,
2020 WL 1139647 (N.D. Cal. Mar. 9, 2020)........................................................10

*Ass'n of Am. Med. Colls. v. United States*,
217 F.3d 770 (9th Cir. 2000)..................................................................................5

*Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.*,
717 F.3d 545 (7th Cir. 2013)...................................................................................8

*Davis* v. *HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012)...............................................................................12

*Eidmann* v. *Walgreen Co.*,
522 F. Supp. 3d 634 (N.D. Cal. 2021) ..................................................................12

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ..................................................................9

*Henry v. Circus Casinos, Inc.*,
223 F.R.D. 541 (D. Nev. 2004)..............................................................................10

*S.E.C. v. Jerry T. O'Brien, Inc.*,
467 U.S. 735 (1984)..................................................................................................8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..........................................................................................10, 11

*United States v. McKnight*,
2020 WL 1872412 (W.D. Wash. Apr. 15, 2020)..................................................12

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012)..................................................................................................8

*Rosiere v. U.S. S.E.C*,
2010 WL 419440 (D. Nev. Jan. 29, 2010) .......................................................11, 12

*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976)..................................................................................................10

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ii-

VIAMERICAS CORPORATION'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT;
CASE NO. 4:22-CV-07996-HSG

*United States v. Santos*,
    553 U.S. 507 (2008) (Alito, J., dissenting) ...................................................................13

*Shaeffer* v. *Califia Farms, LLC*,
    258 Cal. Rptr. 3d 270 (Cal. Ct. App. 2020) ..................................................................12

*F.T.C. v. Sterling Precious Metals, LLC*,
    2013 WL 1442180 (S.D. Fla. Apr. 9, 2013) ...............................................................8, 9

*Walker v. S.W.I.F.T. SCRL*,
    491 F. Supp. 2d 781 (N.D. Ill. 2007) ..............................................................................9

*Young v. Union*,
    2012 WL 12844773 (N.D. Cal. Aug. 29, 2012), *aff'd sub nom. Young v. Trans
    Union*, 616 F. App'x 301 (9th Cir. 2015) .......................................................................9

*United States v. Zimmerman*,
    957 F. Supp. 94 (N.D.W. Va. 1997) ..........................................................................11, 12

**Statutes**

A.R.S. Section 13-2315(B) .................................................................................................6

12 U.S.C. §§ 3401 *et seq.* ..................................................................................................1

12 U.S.C. § 3401(1) .............................................................................................1, 7, 8, 9

12 U.S.C. § 3414(e) ............................................................................................................7

31 U.S.C. § 5312 .............................................................................................................1, 8

Cal. Bus. & Prof. Code § 17200 .................................................................................1, 2, 12

Cal. Fin. Code §§ 4050 *et seq.* ................................................................................. *passim*

Cal. Fin. Code § 4056(b)(5) .....................................................................................2, 12, 13

Cal. Fin. Code § 4056(b)(7) .....................................................................................2, 12, 13

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) .................................................................1, 5, 9, 10

Federal Rules of Civil Procedure 12(b)(6) ........................................................................1, 7

Local Rule 7-2(b) ................................................................................................................1

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

1

**NOTICE OF MOTION**

2       To the Court, all parties and their counsel of record:  Pursuant to Civil Local Rule 7-2(b),

3   please take notice that Defendant Viamericas Corporation ("Viamericas") hereby moves to

4   dismiss Plaintiffs' first amended complaint ("FAC") pursuant to Federal Rules of Civil Procedure

5   12(b)(1) and 12(b)(6).  The Court has set a hearing for May 18, 2023.  This motion is based upon

6   the accompanying memorandum of points and authorities, the supporting declaration of Mr.

7   Jaime Castaneda, all other pleadings and papers filed, and any arguments made at the hearing.

8

**INTRODUCTION**

9       The allegations in the FAC about Viamericas center around its activities as a money

10  transfer company.  While Plaintiffs hedge by claiming that Viamericas is a "consumer finance

11  institution," the only activity by Viamericas at issue in the FAC is in connection with its money

12  transfer business.  Plaintiff Orsay Alegria alleges that Viamericas disclosed information about

13  himself and other money transfer customers to the federal government.  Plaintiffs allege that this

14  disclosure violated the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3401 *et seq.* and

15  the California Financial Information Privacy Act ("CalFIPA"), Cal. Fin. Code §§ 4050 *et seq.*

16  The alleged violation of CalFIPA is the basis for Plaintiffs' California Unfair Competition claim.

17  Cal. Bus. & Prof. Code §§ 17200 *et seq.*

18      Plaintiff's claims against Viamericas should be dismissed with prejudice pursuant to

19  Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

20      First, the FAC does not state a valid legal claim against Viamericas under the RFPA.  The

21  RFPA's disclosure requirements expressly do *not* extend to money transfer businesses.  12 U.S.C.

22  § 3401(1) (defining "financial institution" and not including money transfer businesses).  When

23  Congress wished to pull money transfer businesses within the scope of other RFPA provisions

24  that are not at issue in this case, Congress broadened the definition of "financial institutions" to

25  expressly include money transfer businesses.  31 U.S.C. § 5312(a)(2)(R).  Congress chose not to

26  do so for the disclosure provisions of the RFPA that are at issue in this case.  And Plaintiffs'

27  conclusory allegation that Viamericas is a "consumer finance institution"—a specific term within

28  12 U.S.C. §3401(1)—is insufficient to subject Viamericas to the disclosure requirements of the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

VIAMERICAS CORPORATION'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT;
CASE NO. 4:22-CV-07996-HSG

1    RFPA because Plaintiffs do not allege that Viamericas provides consumer financing or loans, let

2    alone as its primary reason for existing or its core business offering to consumers.

3         Second, Plaintiff's California Unfair Competition claim fares no better.  That claim is

4    premised on an alleged violation of CalFIPA.  CalFIPA provides a safe harbor that exempts

5    disclosures made to law enforcement and as to investigations and subpoenas.  *See* Cal. Fin. Code

6    §§ 4056(b)(5), (b)(7).  Plaintiffs expressly allege that the disclosures here were to law

7    enforcement and for the purpose of investigations.  Taking all of Plaintiffs' allegations as true,

8    Viamericas did nothing unlawful under the statute.  There is no Section 17200 unfair competition

9    claim.

10        Finally, Plaintiff Alegria lacks standing to bring claims against Viamericas for purported

11   disclosures to the federal government because Viamericas did not produce his information to the

12   federal government.  Viamericas produced information relating to Plaintiff Alegria pursuant to

13   subpoenas *issued by the Attorney General of the State of Arizona*.  Neither the RFPA nor

14   CalFIPA regulates compliance with a state subpoena.  To the extent any information about

15   Plaintiff Alegria was shared with the federal government, it was not the doing of Viamericas.

16        Viamericas requests that the Court grant its Motion to Dismiss without leave to amend.

17                          **STATEMENT OF FACTS**

18   A.   **Plaintiffs Bring Individual and Class Claims Against Six Defendants—Two
          Federal Government Agencies and Four Money Transfer Companies.**
19

20        Plaintiffs Nelson Sequeira, Orsay Alegria, and Ismael Cordero bring claims individually

21   and on behalf of a proposed class against Defendants, seeking relief based on Defendants' alleged

22   "unlawful sharing and accessing of private financial information and personal records, in

23   violation of" the RFPA and CalFIPA.  FAC ¶ 1.  Plaintiffs bring their claims against two groups

24   of Defendants:  (1) two "Federal Government Defendants"—the United States Department of

25   Homeland Security and United States Immigration and Customs Enforcement, and (2) four

26   "Money Transfer Business Defendants" or "MTB Defendants"—Western Union Financial

27   Services, Inc., Continental Exchange Solutions, Inc. (D/B/A Ria Financial Services and AFEX

28   Money Express), DolEx Dollar Express, Inc., and Viamericas Corporation.  FAC ¶¶ 1, 4-9.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

VIAMERICAS CORPORATION'S MOTION TO
                                    DISMISS THE FIRST AMENDED COMPLAINT;
                                    CASE NO. 4:22-CV-07996-HSG

**B.      Plaintiffs Allege That Reporting Money Transfers in Response to Subpoenas Violates the Law.**

Plaintiffs claim that the Defendants have violated the RFPA and CalFIPA because they report money transfers to the Transaction Record Analysis Center ("TRAC") in response to subpoenas issued by law enforcement, and the government has access to those reports.  Plaintiffs allege that TRAC is a "collaboration of law enforcement agencies, including several federal government agencies." FAC ¶ 13.  Plaintiffs further allege that "TRAC is the nucleus of a state/federal Suspicious Transaction Report Project, which coordinates money laundering investigation and prosecutions . . ." *Id.* ¶ 27.

Plaintiffs allege that since at least 2014, TRAC has been "collecting and disseminating records" about "money transfers over $300 sent to or from the Southwest border region" and, since at least 2015, "has been gathering and accessing" consumer records "about money transfers greater than $500 sent to or from Arizona, California, New Mexico, Texas, or Mexico." *Id.* ¶ 15.

Plaintiffs allege, without differentiating between any of the Defendants, that "Defendants . . . devised a program [TRAC] to regularly collect, scrutinize, and share millions of financial records from unknowing consumers in the Southwest border states." *Id.*  As to all four "Money Transfer Business Defendants," Plaintiffs allege that the "MTB Defendants were well aware that, by disclosing financial records to TRAC, they were also disclosing them to the federal government agencies participating in TRAC—even when data requests did not come directly from a federal government agency." *Id.* ¶ 44.

In the same vein, without any attempt to tailor allegations specific to Viamericas, Plaintiffs broadly assert that all of the Money Transfer Defendants provide information to TRAC, *and* the "MTB Defendants" knew or should have known that TRAC then provides this information to federal agencies.  *See id.* ¶¶ 15, 17, 32, 35, 42-48.

///

///

///

///

**C.      Plaintiff Alegria Sued Viamericas Based on Its Money Transfer Business and Claimed Disclosures to TRAC in Response to Subpoenas.**

Plaintiff alleges that Viamericas is a Delaware company with its principal place of business in Bethesda, Maryland.  FAC ¶ 8.[1]  The FAC alleges, without any supporting facts, that Viamericas is a "consumer financial institution."  FAC ¶ 67.  The FAC further alleges that the consumer services Viamericas provides include "money transfer, bill payment, check processing, and top-up services, including cash payout and direct deposits to bank accounts."  FAC ¶ 8.

While the FAC claims that Viamericas provides all these services, the FAC only focuses on Viamericas' activities as a money transfer company.  The FAC identifies one person, Plaintiff Alegria, as having used Viamericas' money transfer services.  *Id.* ¶ 54.

Moreover, while Plaintiffs make the broad allegation that Viamericas disclosed Plaintiff Alegria's information to the federal government "without a valid warrant, subpoena, or court order," FAC ¶ 54, the FAC makes clear that at issue is Viamericas' claimed disclosures to TRAC as a money transfer company.  *See, e.g.*, FAC ¶¶ 13, 15-17, 27-52.

That the allegations against Viamericas are premised on its activities as a money transfer business and its disclosures to TRAC are further shown by the following.

First, the FAC consistently refers to Viamericas as a money transfer company.  When Viamericas is grouped with the other individual defendants, it is referenced as "Money Transfer Defendants" or "MTB Defendants" for short.  That occurs dozens of times in the FAC.  FAC ¶¶ 1, 14-15, 17, 24, 26, 38, 42-44, 48-49, 52, 58, 66-67, 69-72, 77, 79, 82-86, prayer for relief.

When the FAC references Viamericas' activities, it does so in connection with Viamericas' money transfer activities.  Viamericas' money transfer activities are what Plaintiff used.  FAC ¶ 54.  And all of the remaining allegations in the FAC relate to Viamericas' money transfer activities.  Indeed, Plaintiffs assert that Viamericas is liable because it reported information relating to money transfers.  In Plaintiffs' words, Viamericas reported to TRAC, which has been "collecting and disseminating records" about "*money transfers* over $300 sent to or from the Southwest border region" and, since at last 2015, "has been gathering and accessing"

---

[1] Effective February 1, 2023, Viamericas is headquartered in Coral Gables, Florida.

consumer records "about *money transfers* greater than $500 sent to or from Arizona, California, New Mexico, Texas, or Mexico."  FAC ¶ 15 (emphasis added); *see also* FAC ¶ 32 (referencing Viamericas and noting that other money transfer companies were implicated); *id.*, ¶ 45 (referencing fact that information was received from three money transfer companies and identifying Viamericas as one); *id.*, ¶ 46 (noting that Viamericas "like other money transfer companies . . . ."); *id.*, ¶ 70 (alleging that Viamericas provide personal information when sending money transfers).

Second, two paragraphs of the FAC assert that Viamericas knew it was reporting financial information to the federal government.  Both paragraphs relate to Viamericas' activities as a money transfer company.  FAC ¶¶ 45-46.  Both paragraphs relate to Viamericas' claimed disclosures to TRAC.

Paragraph 45 alleges that on January 18, 2023, U.S. Senator Ron Wyden sent a letter to the Department of Justice relating to the *activities of three money transfer companies, including Viamericas*.  According to the letter, these companies had delivered data to TRAC, and the data was delivered to TRAC "'in response to legal demands from HSI and other governmental entities.'"  FAC ¶ 45 (quoting letter).  Senator Wyden's letter also stated that Viamericas received "legal demands" from other entities like the DEA, the FBI, and the Arizona Attorney General—but it did not state that any data was delivered to TRAC or any other entity in response to those demands.  *Id.*

Paragraph 46 alleges that Viamericas, "like other *money transfer companies*," knew that the federal government has access to TRAC.  (emphasis added).

**D.    Viamericas Produced Information Regarding Plaintiff Alegria Pursuant to Subpoenas Issued by the Attorney General of Arizona.**

Viamericas has only provided information about Plaintiff Alegria to a single third party–the Attorney General of Arizona.  Declaration of Jaime Castaneda ("Castaneda Decl.") filed concurrently herewith, ¶ 4.[2]  Viamericas did so pursuant to subpoenas issued by the Attorney

---

[2] Because Viamericas is raising a subject matter jurisdiction argument pursuant to Federal Rule of Civil Procedure 12(b)(1), Viamericas is entitled to present evidence beyond the allegations of the pleadings.  *See, e.g.*, *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

1   General of Arizona.  *Id.*, ¶ 4 & Ex. A.  Citing to Arizona's racketeering statutes, the subpoenas

2   compelled the production of information in "a felony investigation."  Ex. A at 2.  The subpoenas

3   state that "failure to comply in full … will subject [Viamericas] to the proceedings provided by

4   A.R.S. Section 13-2315(B)", including enforcement by the Arizona Attorney General.  *Id.*

5        Viamericas produced the information in the manner and to the electronic location as

6   directed by the Arizona Attorney General in the subpoenas.  Castaneda Decl. ¶ 5.  Viamericas

7   understands that the electronic location to which the Attorney General and its agents identified in

8   the subpoenas directed the information to be provided—a secure Virtual Private Network

9   ("VPN") address—was TRAC.  Castaneda Decl. ¶ 6.  Viamericas did not provide any

10  information concerning Plaintiff Alegria to federal law enforcement.  Castaneda Decl. ¶ 7.

11       **E.**    **Plaintiffs Bring RFPA Claims Against All Defendants and CalFIPA Claims**
12                 **Against the Money Transfer Defendants.**

13       Based on TRAC's alleged collection of money transfer records, Plaintiffs propose the

14  following classes:

15       **Federal Defendants Class (All Plaintiffs):** All persons who sent or received a
16       money transfer via any money transfer business and whose transaction data a
     federal government agency had access to or obtained copies of through TRAC
17       since 2010.

18       **Western Union Subclass (Plaintiffs Sequeira and Cordero):** All persons who
     sent or received a money transfer via Western Union or any of its subsidiaries,
19       and whose transaction data a federal government agency had access to or obtained
     copies of through TRAC since 2010.

20       **Continental Subclass (Plaintiff Alegria):** All persons who sent or received a
     money transfer via Continental, or any of its subsidiaries, and whose transaction
21       data a federal government agency had access to or obtained copies of through
     TRAC since 2010.
22
     **Viamericas Subclass (Plaintiff Alegria):** All persons who sent or received a
23       money transfer via Viamericas or any of its subsidiaries, and whose transaction
     data a federal government agency had access to or obtained copies of through
24       TRAC since 2010.

25       **DolEx Subclass (Plaintiff Alegria):** All persons who sent or received a money
     transfer via DolEx or any of its subsidiaries, and whose transaction data a federal
26       government agency had access to or obtained copies of through TRAC since
     2010.

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

VIAMERICAS CORPORATION'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT;
CASE NO. 4:22-CV-07996-HSG

**California Subclass (All Plaintiffs):** All California residents who are a member of the Western Union, Continental, Viamericas, or DolEx Subclasses.

FAC ¶ 56.

<u>ARGUMENT</u>

I.     **PLAINTIFF'S RFPA CLAIM AGAINST VIAMERICAS (COUNT I) SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.**

The FAC turns on Viamericas' activities as a money transfer company.  Money transfer businesses like Viamericas are not subject to the RFPA's notice requirements.  Nor are the allegations sufficient to conclude Viamericas is a "consumer finance institution" under the RFPA.

A.     **A Money Transfer Company Is Not Subject to RFPA's Notice Requirements.**

The RFPA imposes notice requirements for what it defines as a "financial institution." The provision imposing the requirement provides that "no [federal] Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless" certain notice requirements are met.  12 U.S.C. § 3402.

However, Viamericas—a money transfer company—is not considered a financial institution for the purposes of the RFPA's notice requirements.  Section 3401(1) of the RFPA defines a "financial institution" as follows:

> "financial institution", except as provided in section 3414 of this title means any office of a bank, savings bank, card issuer as defined in section 1602(n) of title 15, industrial loan company, trust company, savings association, building and loan, or homestead association (including cooperative banks), credit union, or consumer finance institution, located in any State or territory of the United States, the District of Columbia, Puerto Rico, Guam, American Samoa, or the Virgin Islands;

*Id.* § 3401(1).

Section 3401(1) makes no mention of money transfer companies.  This is significant because in other provisions of the RFPA that govern intelligence, counter-intelligence, and Secret Service activities, "financial institutions" are expressly defined to include money transfer companies.  12 U.S.C. § 3414.  In cases involving those other activities not at issue in this case, the definition of "financial institution" expands far beyond the reach of Section 3404(1).  *See* 12 U.S.C. § 3414(e).  For instance, under Section 3414(e), the definition of financial institution is

1   provided by 31 U.S.C. § 5312.  Section 5312 defines "financial institution" to include a host of

2   entities, including a money transfer business:  "a licensed sender of money or any

3   other person who engages as a business in the transmission of currency, funds, or value that

4   substitutes for currency."  31 U.S.C. § 5312(a)(2)(R).

5           As a matter of statutory construction, the RFPA's Section 3402 notice requirements

6   cannot apply to Viamericas.  Congress is presumed to have excluded money transfer entities from

7   the scope of Section 3402's notice requirements because when it *did* want to regulate money

8   transfer entities with respect to certain activities, it expressly included money transfer entities in

9   the definition of "financial institution."  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,

10  566 U.S. 639, 645-46 (2012) (affirming the well-established canon of statutory interpretation that

11  the specific governs the general, "particularly when the two [statutory provisions] are interrelated

12  and closely positioned, both in fact being parts of [the same statutory scheme]") (quoting *HCSC-*

13  *Laundry v. United States*, 450 U.S. 1, 6 (1981)).

14          **B.      Viamericas Is Not a Consumer Finance Institution Under the RFPA.**

15          For the reasons stated above, Viamericas cannot be considered a consumer finance

16  institution.  A consumer finance institution is enumerated as falling within the definition of

17  "financial institution" in Section 3401(1).

18          Plaintiffs do not allege facts to support the bald allegation that Viamericas is a consumer

19  finance institution.  "The most salient feature of the [RFPA] is the narrow scope of the

20  entitlements it creates."  *See S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984).  The

21  RFPA "accords customers of banks *and similar financial institutions* certain rights to be notified

22  of and to challenge in court administrative subpoenas of financial records *in the possession of the*

23  *banks*."  *Id*. (emphasis added).

24          That the RFPA extends to banks and similar financial institutions, but not companies like

25  Viamericas, is reinforced by the decisions in *Commodity Futures Trading Comm'n v. Worth*

26  *Bullion Grp., Inc.*, 717 F.3d 545, 549-53 (7th Cir. 2013), and *F.T.C. v. Sterling Precious Metals*,

27  *LLC*, 2013 WL 1442180, at *2-5 (S.D. Fla. Apr. 9, 2013).  In both cases, the courts limited the

28  extent of the RFPA's notice requirements to institutions that provide consumer financing and

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-8-

VIAMERICAS CORPORATION'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT;
CASE NO. 4:22-CV-07996-HSG

1   loans, which Viamericas is not alleged to offer at all.

2          In *Worth Bullion Grp., Inc.*, the court defined a "consumer finance institution" as one

3   whose primary reason for existing "is to provide financing and cash loans to the general public."

4   717 F.3d at 551.  That a company may engage in what might be broadly considered as financial

5   transactions is not enough.  It was not enough in *Worth Bullion* that a company bought and sold

6   precious metals to retailers and customers.  *Id.* at 547, 549-51.  According to the court, expanding

7   the reach of the RFPA to those companies would run counter to the definition of "financial

8   institution," which clearly limited itself more narrowly to entities that acted as a bank would by

9   providing consumer financing and loans.  *Id* at 550-51.

10          The court in *Sterling* reached a similar conclusion.  There the court concluded a company

11   could not be considered a "consumer finance institution" unless "a core aspect" of its business

12   was consumer "financing."  2013 WL 1442180, at *5.[3]

13          Plaintiffs do not—and cannot—allege that Viamericas provides consumer financing or

14   loans at all, let alone as its primary reason for existing or its core business offering to consumers.

15   Viamericas is therefore not a "consumer finance institution."  Taking Plaintiffs at their word,

16   Viamericas provides "money transfer, bill payment, check processing, and top-up services,

17   including cash payout and direct deposits to bank accounts."  FAC ¶ 8.  For this reason, the RFPA

18   claim against Viamericas should be dismissed.

19   **II.    PLAINTIFF'S RFPA CLAIM AGAINST VIAMERICAS (COUNT I) SHOULD BE
20          DISMISSED UNDER RULE 12(B)(1) BECAUSE PLAINTIFF ALEGRIA LACKS
           ARTICLE III STANDING.**

21          Plaintiff Alegria's RFPA claim against Viamericas should be dismissed for lack of

22   standing.

23          "At least one named plaintiff must have standing with respect to each claim that the class

24   representatives seek to bring" against each defendant.  *Greenstein v. Noblr Reciprocal Exch.*, 585

25

26   ---
     [3] These holdings are consistent with other courts' treatment of the scope of the RFPA.  *See, e.g.*,
27   *Young v. Union*, 2012 WL 12844773, at *7 (N.D. Cal. Aug. 29, 2012), *aff'd sub nom. Young v.
     Trans Union*, 616 F. App'x 301 (9th Cir. 2015) (VISA is not a "card issuer" under the RFPA but
28   is instead an "acquirer and issuer [that] banks contract with [ ] for access to the VISA network")
     (citations omitted); *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 792-93 (N.D. Ill. 2007) (a
     "supplier of messaging services to financial institutions" is not covered by section 3401(1)).

1    F. Supp. 3d 1220, 1226 (N.D. Cal. 2022); *see also Henry v. Circus Casinos, Inc.*, 223 F.R.D. 541,

2    544 (D. Nev. 2004) (to establish standing, for "every named defendant there [must] be at least one

3    named plaintiff who can assert a claim directly against that defendant").

4         Here, the only reason that Viamericas is named in this lawsuit is because Plaintiff Alegria

5    alleges that Viamericas "shared with the federal government without a valid warrant, subpoena,

6    or court order" transactions relating to him.  FAC ¶ 54.  Plaintiff Alegria, the only named plaintiff

7    who alleges to have used Viamericas' services, *see* FAC ¶¶ 53-55, lacks standing for the RFPA

8    claim because he cannot show either (1) "a causal connection between the injury and the conduct

9    complained of—the injury has to be 'fairly … trace[able] to the challenged action of the

10   defendant, and not … th[e] result [of] the independent action of some third party not before the

11   court'"; or (2) that "it must be 'likely', as opposed to merely 'speculative', that the injury will be

12   'redressed by a favorable decision.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)

13   (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41-42, 43 (1976)).

14        **A.    No Causal Connection Exists Between Viamericas' Alleged Conduct and Any
15               Injury to Mr. Alegria.**

16        Plaintiff Alegria alleges that he was injured as a result of the production of his information

17   to the federal government.  But Viamericas has only ever produced documents about Plaintiff

18   Alegria in response to a subpoena from the State of Arizona.  *See* Statement of Facts, Section D;

19   Castaneda Decl. ¶¶ 5-7.[4]  There is no causal connection between Plaintiff Alegria's injury and

20   Viamerica's conduct.

21        According to the FAC, Viamericas' production of information violated the RFPA because

22   the federal government ultimately accessed the information after Viamericas' production.

23   Plaintiff Alegria alleges that, as a result, *Viamericas* violated the RFPA because the federal

24   government did not provide Plaintiff Alegria with notice *prior to* when Viamericas complied with

25

26   [4] "In a factual challenge" to a plaintiff's standing, "'the challenger disputes the truth of the
     allegations [in the complaint] that, by themselves, would otherwise invoke federal jurisdiction'"
27   and thus "the district court may review evidence beyond the complaint without converting
     the Rule 12(b)(1) motion to dismiss into a motion for summary judgment."  *Anderson v. Seliger*,
28   2020 WL 1139647, at * 3 (N.D. Cal. Mar. 9, 2020) (quoting *Safe Air for Everyone v. Meyer*, 373
     F.3d 1035, 1039 (9th Cir. 2004)).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

VIAMERICAS CORPORATION'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT;
CASE NO. 4:22-CV-07996-HSG

1    the Arizona state subpoena.  *See* FAC ¶¶ 54, 75 (the RFPA violation occurred because "[a]t no

2    point did the Federal Government Defendants . . . provide Plaintiffs or . . . Viamericas . . . with

3    notice and information about how to object to the disclosure of their financial records as required

4    under the RFPA").

5            However, Viamericas had a legal duty to comply with the Arizona state subpoena, and

6    that duty is not impacted in any way by the RFPA.  Regardless of whether or not the federal

7    government provided notice, the RFPA does not govern state subpoenas.  *See, e.g.*, *Rosiere v.*

8    *U.S. S.E.C*, 2010 WL 419440, at *1 (D. Nev. Jan. 29, 2010) ("By its own terms, the RFPA does

9    not apply to the subpoena served by the State of Florida's Office of Financial Regulation because

10   it is not an agency or department of the United States' government."); *United States v.*

11   *Zimmerman*, 957 F. Supp. 94, 96 (N.D.W. Va. 1997) ("the Right to Financial Privacy Act does

12   not apply to requests for information from state and local governmental agencies, and thus, is not

13   applicable to the facts of this case").[5]

14           Here, Plaintiff Alegria failed to allege an injury that can be traced to Viamericas.

15   Viamericas' only conduct was the production of information to the State of Arizona, as it was

16   required to do.  To the extent that, after production to the State of Arizona, Plaintiff Alegria's

17   information was later accessed by the federal government resulting in Mr. Alegria's alleged

18   injury, his injury results from "the independent action of some third party" and not Viamericas.

19   *See Lujan*, 504 U.S. at 560.

20       **B.     The Prayer for Injunctive Relief Will Not Redress Plaintiff Alegria's Alleged**
         **Injury.**
21

22           To redress his alleged injury, Mr. Alegria seeks to "[e]njoin [Viamericas] from continuing

23   to provide access to or copies of [his] consumer financial information to a federal government

24   agency through TRAC or otherwise without complying with RFPA."  FAC "Prayer for Relief,"

25   ¶ (d).  This relief, however, would not redress Mr. Alegria's alleged injury because Viamericas

26   must still comply with a state subpoena even if Viamericas is directed to comply with the RFPA.

27

28   _____

[5] Indeed, the FAC places Viamericas in an untenable position.  Under Plaintiffs' unsound logic, Viamericas either complies with a state subpoena and violates federal law, or it refuses to comply with a state subpoena and thus violates state law.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

1   *See Rosiere*, 2010 WL 419440, at *1; *Zimmerman*, 957 F. Supp. at 96.

2   **III.    PLAINTIFF'S UCL CLAIM AGAINST VIAMERICAS (COUNT II) SHOULD BE
3            DISMISSED FOR FAILURE TO STATE A CLAIM.**

4            Plaintiffs' sole basis for alleging a violation of Business and Professions Code section

5   17200 is that Viamericas' actions were "unlawful."  FAC ¶ 79.  To state a claim under the

6   "unlawful" prong of the UCL, a plaintiff must plead, among other things, a predicate violation of

7   a federal or California "statute or regulation."  *Shaeffer* v. *Califia Farms, LLC*, 258 Cal. Rptr. 3d

8   270, 277 (Cal. Ct. App. 2020) (citation omitted); *Davis* v. *HSBC Bank Nevada, N.A.*, 691 F.3d

9   1152, 1168 (9th Cir. 2012) ("[S]ection 17200 borrows violations of other laws and treats them as

10  unlawful practices that the unfair competition law makes independently actionable.") (quoting

11  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)); *see also*

12  *Eidmann* v. *Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) ("[I]f the plaintiff cannot

13  state a claim under the predicate law . . . [the UCL] claim also fails.") (internal citations omitted);

14  *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *15 (N.D. Cal. Nov. 6, 2009) ("Under its

15  'unlawful' prong, the UCL borrows violations of other laws ... and makes those unlawful

16  practices actionable under the UCL"), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (internal citations

17  omitted).

18          There is no unlawful conduct to support a Section 17200 claim against Viamericas.  For

19  the reasons set forth above, Plaintiffs have failed to state a claim that Viamericas violated the

20  RFPA.  *See supra* Section I.  Furthermore, Plaintiffs cannot state a claim under CalFIPA because

21  it provides two exceptions that apply and protect Viamericas against Plaintiff Alegria's claims.

22          First, CalFIPA permits disclosure made "to law enforcement agencies . . . or for an

23  investigation on a matter related to public safety."  Cal. Fin. Code § 4056(b)(5).  This exception

24  applies because Plaintiffs specifically allege that "TRAC is the nucleus of a state/federal

25  Suspicious Transaction Report Project, which coordinates money laundering investigation and

26  prosecutions."  FAC ¶ 27.  The disclosures also are made for an investigation on "a matter related

27  to public safety," Cal. Fin. Code § 4056(b)(5), because money laundering is a criminal offense

28  that implicates public safety.  *See United States v. McKnight*, 2020 WL 1872412, at *2 (W.D.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-12-

VIAMERICAS CORPORATION'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT;
CASE NO. 4:22-CV-07996-HSG

1   Wash. Apr. 15, 2020) (finding that a defendant charged with "money laundering" may be a

2   "flight risk or threat to public safety"); *United States v. Santos*, 553 U.S. 507, 536 (2008) (Alito,

3   J., dissenting) (a "money laundering statute" should be construed to protect "public safety").

4   Plaintiffs' own pleading therefore places the alleged conduct squarely within CalFIPA's

5   exceptions.[6]

6       Second, disclosure is allowed under CalFIPA where necessary "to comply with federal,

7   state … and other applicable legal requirements" or "a properly authorized civil, criminal,

8   administrative, or regulatory investigation or subpoena or summons by federal, state, or local

9   authorities . . . ." Cal. Fin. Code § 4056(b)(7).  Here, the only disclosures relating to Plaintiff

10   Alegria were in response to subpoenas from the Attorney General of Arizona.  *See* Statement of

11   Facts, Section D.  Viamericas' production thus plainly falls within CalFIPA's exception allowing

12   disclosure when doing so is necessary "to comply with state … and other applicable legal

13   requirements" or "a properly authorized … subpoena … by … state… authorities . . . ." Cal. Fin.

14   Code § 4056(b)(7).

15       Even if the conduct that Plaintiffs allege Viamericas took is covered by CalFIPA section

16   4052.5, it falls within these exceptions.  For these reasons, Plaintiffs have failed to state a valid

17   claim under the California Unfair Competition law and the claim should be dismissed.

18                 **<u>CONCLUSION</u>**

19       For the above reasons, Viamericas respectfully asks the Court to grant its motion to

20   dismiss without leave to amend.

21   Dated:  March 3, 2023          CROWELL & MORING LLP

23          By: *<u>Kristin J. Madigan</u>*
                 Kristin J. Madigan

24          Attorneys for Defendant
25          Viamericas Corporation

---

[6] Plaintiffs make the broad allegation that Viamericas shared Plaintiff Alegria's information "without a valid warrant, subpoena, or court order." FAC ¶ 54.  However, this allegation is conclusory and must be read in the context of the remainder of the complaint, which only seeks to hold Viamericas liable for disclosure to TRAC.  *See, e.g.*, FAC ¶¶ 13, 15-17, 27-52.

CROWELL & MORING LLP
ATTORNEYS AT LAW

VIAMERICAS CORPORATION'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT;
CASE NO. 4:22-CV-07996-HSG