1    ROBERT L. WALLAN (SBN 126480)
     robert.wallan@pillsburylaw.com
2    NATHAN M. SPATZ (SBN 204769)
     nathan.spatz@pillsburylaw.com
3    CHRISTOPHER M. BUTLER (SBN 318219)
     christopher.butler@pillsburylaw.com
4    JORDAN RHODES (SBN 342910)
     jordan.rhodes@pillsburylaw.com
5    PILLSBURY WINTHROP SHAW PITTMAN LLP
     725 South Figueroa Street, 36th Floor
6    Los Angeles, CA 90017-5524
     Telephone:      213.488.7100
7    Facsimile:      213.629.1033

8    Attorneys for Defendant *Continental Exchange Solutions, Inc.,*
     *d/b/a Ria Financial Services and AFEX Money Express*

9

                        **UNITED STATES DISTRICT COURT**

10
                        **NORTHERN DISTRICT OF CALIFORNIA**
11
                              **OAKLAND DIVISION**
12

13   NELSON SEQUIERA, ORSAY ALEGRIA        Case No. 4:22-cv-07996-HSG
     and ISMAEL CORDERO, individually and on
14   behalf of all others similarly situated,    Assigned to Hon. Haywood S. Gilliam, Jr.

15                    *Plaintiffs*,             **DEFENDANT CONTINENTAL
                                                EXCHANGE SOLUTIONS, INC.'S:**
16
              *v.*
17                                              **(1) NOTICE OF MOTION AND
     U.S. DEPARTMENT OF HOMELAND                    MOTION TO DISMISS
18   SECURITY; U.S. IMMIGRATION &                   PLAINTIFFS' FIRST AMENDED
     CUSTOMS ENFORCEMENT; WESTERN                   COMPLAINT**
19   UNION FINANCIAL SERVICES, INC., a
     Colorado corporation; CONTINENTAL         **(2) MEMORANDUM OF POINTS AND
20   EXCHANGE SOLUTIONS, INC., a Kansas             AUTHORITIES**
     corporation, d/b/a RIA FINANCIAL
21   SERVICES and AFEX MONEY EXPRESS;           Date:  May 18, 2023
     VIAMERICAS CORPORATION, a Delaware        Time:  2:00 p.m.
22   Corporation; and DOLEX DOLLAR             Crtrm: 2
     EXPRESS, INC., a Texas corporation,       Judge: Hon. Haywood S. Gilliam, Jr.
23
                                                Action Filed: December 12, 2022
24                    *Defendants*.            Trial Date: None Set

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 18th, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 – 4th floor of the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Defendant Continental Exchange Solutions, Inc., d/b/a Ria Financial Services and AFEX Money Express ("CES") will and hereby does move the Court for an order dismissing the instant action.

CES moves to dismiss the First Amended Complaint ("FAC") filed by Plaintiffs Nelson Sequeira, Orsay Alegria, and Ismael Cordero (collectively "Plaintiffs") pursuant to Federal Rule of Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

Plaintiffs' action should be dismissed in its entirety without leave to amend. Plaintiffs' FAC fails to sufficiently plead a claim under either the Right to Financial Privacy Act ("RFPA") or the California Unfair Competition Law ("UCL") by way of a violation of the California Financial Information Privacy Act ("Cal. FIPA"). The RFPA does not apply to money transmitters like CES because CES is not a "financial institution" under the RFPA and the RFPA does not apply to the disclosures allegedly made by CES. Moreover, the Annunzio-Wylie Anti-Money Laundering Act functions as an additional independent bar to the relief Plaintiffs seek as it provides a safe harbor for the alleged activities and preempts Plaintiffs' state law claims. In addition, both the RFPA and Cal. FIPA contain express exceptions for the subpoenas served on CES. Plaintiffs' UCL claim also fails because Plaintiffs do not have standing and cannot use the UCL to plead around Cal. FIPA's omission of a private right of action. Finally, Plaintiffs' UCL and Cal. FIPA claims are also preempted by the Graham-Leach-Bliley Act.

NOTICE OF MOTION AND MOTION TO DISMISS
Case No.: 4:22-cv-07996-HSG

4889-2656-6228.v7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CES's motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and the exhibits attached thereto, the proposed Order, any documents CES may subsequently file, all other pleadings and papers on file, and any oral argument or other matter that may be considered by the Court.

Dated:  March 3, 2023                    PILLSBURY WINTHROP SHAW PITTMAN LLP


                                          /s/ Robert L. Wallan
                              By:         ROBERT L. WALLAN
                                          NATHAN M. SPATZ
                                          CHRISTOPHER M. BUTLER
                                          JORDAN RHODES

                                          Attorneys for Defendant CONTINENTAL
                                          EXCHANGE SOLUTIONS, INC., d/b/a RIA
                                          FINANCIAL SERVICES AND AFEX MONEY
                                          EXPRESS

4889-2656-6228.v7

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF ISSUES TO BE DECIDED ................................................ 1

III.  FACTUAL BACKGROUND .............................................................................. 1

      A.    CES ......................................................................................................... 1

      B.    Plaintiffs' Allegations .......................................................................... 2

      C.    The RFPA ............................................................................................. 3

      D.    The UCL and Cal. FIPA ...................................................................... 4

      E.    TRAC .................................................................................................... 5

IV.  LEGAL STANDARD ........................................................................................ 7

V.   ARGUMENT ...................................................................................................... 7

      A.    The RFPA Does Not Apply to Money Transmitters Producing Transaction Data to TRAC Pursuant to Lawful Subpoenas ................ 7

            1.   CES is Not a Financial Institution Under the Relevant Section of the RFPA ..................................................................... 8

            2.   The General Procedures of the RFPA Do Not Apply to Disclosures Made to TRAC or to DHS or ICE .............................................. 10

                a.   Investigations by DHS and ICE Seeking Financial Records are Exempt from the RFPA ............................... 10

                b.   The RFPA Does Not Apply to Disclosure Requests from State Authorities .................................................. 12

      B.    The Annunzio Act Precludes All of Plaintiffs' Claims ........................ 12

            1.   CES has Comprehensive Immunity for its Disclosures to TRAC Because the Disclosures Relate to Potential Legal Violations .................... 13

            2.   Because the Subpoenas Issued to CES Serve as "Legal Authority" for Section 5318(g) Purposes Any Disclosures Made Pursuant to Those Subpoenas Are Not Actionable .......................................... 14

            3.   There is No "Good Faith" Requirement in Making Disclosures under the Annunzio Act ................................................................ 16

i

C.   Plaintiffs' FAC Fails to State a Claim Under the UCL via Cal. FIPA Based on CES's Provision of Information to TRAC ........................................................ 16

1.   Plaintiffs Lack Standing to Bring a UCL Claim Based on CES's Provision of Information to TRAC ................................................................ 16

2.   Plaintiffs' UCL Claim Fails Because CES's Provision of Money Transfer Data to TRAC Does Not Violate Cal. FIPA ................................. 17

3.   Plaintiffs Cannot Circumvent the Absence of a Private Right of Action to Enforce Cal. FIPA by Bringing a Claim Under the UCL ............ 20

4.   Plaintiffs' UCL and Cal. FIPA Claims are Also Preempted by the Graham-Leach-Bliley Act ............................................................................ 21

VI.   CONCLUSION ............................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................................7

*Baugh v. CBS, Inc.,*
   828 F. Supp. 745 (N.D. Cal. 1993) ......................................................................17

*BMA LLC v. HDR Glob. Trading Ltd.,*
   No. 20-CV-03345-WHO, 2021 WL 4061698 (N.D. Cal. Sept. 7, 2021) ..............21

*Budowich v. Pelosi,*
   —— F.Supp.3d ——, No. CV 21-3366 (JEB), 2022 WL 2274359 (D.D.C. June 23, 2022) ...18

*Byrd v. GMAC Mortg., LLC,*
   No. 119CV00651DDDSTV, 2020 WL 4577461 (D. Colo. Aug. 7, 2020) ..............8

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal.4th 163 (1999) ...........................................................................................20

*Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.,*
   717 F.3d 545 (7th Cir. 2013) .........................................................................8, 9, 10

*Coronado v. Bank Atl. Bancorp, Inc.,*
   222 F.3d 1315 (11th Cir. 2000) ......................................................................14, 15

*Ehret v. Uber Techs., Inc.,*
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) .................................................................17

*United States v. Escobedo,*
   2019 WL 6493943 (D. Mont. Dec. 3, 2019)...........................................................6

*Hartless v. Clorox,*
   No. 06CV2705 JAH(CAB), 2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) ............21

*SEC v. Jerry T. O'Brien, Inc.,*
   467 U.S. 735 (1984).................................................................................................8

*Kwikset Corp. v. Superior Ct.,*
   51 Cal.4th 310 (2011) ...........................................................................................17

*Lee v. Bankers Trust Co.,*
   166 F.3d 540 (2d Cir. 1999).................................................................................16

*Lopez v. First Union Nat. Bank of Fla.,*
   129 F.3d 1186 (11th Cir. 1997) ...........................................................................15

-iii-

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................17

*Martinez-Rodriguez v. Bank of Am.*,
  No. C 11-06572 CRB, 2012 WL 967030 (N.D. Cal. Mar. 21, 2012)......................16

*Newton v. American Debt Services, Inc.*,
  75 F. Supp. 3d 1048 (N.D. Cal. 2014) ...................................................................21

*O'Donnell v. Bank of Am., Nat. Ass'n*,
  504 Fed. Appx. 566 (9th Cir. 2013)...................................................................20, 21

*Oneok, Inc. v. Learjet, Inc.*,
  575 U.S. 373 (2015).........................................................................................14, 23

*Parks Sch. of Bus. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) .................................................................................7

*Ruiz v. Gap, Inc.*,
  540 F.Supp.2d 1121 (N.D. Cal. 2008), aff'd, 380 F. App'x 689 (9th Cir. 2010) ....................17

*Silva v. AvalonBay Communities, Inc.*,
  No. LACV1504157JAKPLAX, 2015 WL 11422302 (C.D. Cal. Oct. 8, 2015) ....................21

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ...............................................................................7

*Stoutt v. Banco Popular de Puerto Rico*,
  320 F.3d 26 (1st Cir. 2003)............................................................................13, 16

*Thompson v. Home Depot, Inc.*,
  2007 WL 2746603 (S.D. Cal. Sept. 18, 2007)......................................................17

*Toader v. J.P. Morgan Chase Bank*,
  482 F. App'x 180 (7th Cir. 2012) ..........................................................................14

*Winters v. Board of County Commissioners*,
  4 F.3d 848 (10th Cir. 1993) ...................................................................................8

MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 4:22-cv-07996-HSG

4889-2656-6228.v7

<u>Statutes and Codes</u>

United States Code
    Section 4057 ................................................................................................................20, 21
    Section 5318(g) ................................................................................................... *passim*
    Title 6, Section 111(b) .............................................................................................11
    Title 12, Section 1843(k) ........................................................................................22
    Title 12, Section 1843(k)(4)(A) ..............................................................................22
    Title 12, Section 3401(1) ...............................................................................3, 4, 8, 9
    Title 12, Section 3401(3) ...............................................................................3, 11, 12
    Title 12, Section 3401(7) ...........................................................................................9
    Title 12, Sections 3401-3422 ..................................................................................13
    Title 12, Section 3401, *et seq.* .....................................................................1, 2, 9, 18
    Title 12, Section 3402 ...............................................................................................3
    Title 12, Sections 3402-3411 ..................................................................................12
    Title 12, Section 3403(b) ...........................................................................................3
    Title 12, Section 3405 ............................................................................................3, 4
    Title 12, Section 3405(2) ...........................................................................................3
    Title 12, Section 3407 ............................................................................................3, 4
    Title 12, Section 3407(2) ...........................................................................................3
    Title 12, Section 3412 .............................................................................................10
    Title 12, Sections 3413-3414 ....................................................................................4
    Title 12, Section 3414 ..................................................................................... *passim*
    Title 12, Section 3414(a)(1) ..............................................................................10, 11
    Title 12, Section 3414(c) ...........................................................................................3
    Title 12, Section 3414(e) ...........................................................................................9
    Title 12, Section 3415 ....................................................................................3, 4, 10
    Title 12, Section 3417 ....................................................................................3, 4, 10
    Title 12, Section 3418 ...................................................................................... 3, 10
    Title 12, Section 3421 ...............................................................................................3
    Title 12, Chapter 21 ................................................................................................22
    Title 15 Section 6801–6809 .............................................................................21, 22
    Title 15, Section 6809(3)(A) ...................................................................................22
    Title 18, Section 3056 .............................................................................................11
    Title 18, Section 3056A ..........................................................................................11
    Title 31, Section 5311 .............................................................................................19
    Title 31, Sections 5311-5330 ..................................................................................13
    Title 31, Section 5312(a)(2) ...................................................................................4, 9
    Title 31, Section 5312(c)(1) ......................................................................................4
    Title 31, Section 5318 .............................................................................................19
    Title 31, Section 5318(g)(3)(A) ..............................................................................13
    Title 31 Section 5318(g)(3)(A) ...............................................................................15
    Title 31, Section 5318(h) ........................................................................................19
    Title 31, Section 5330 .............................................................................................19
    Title 31, Chapter 53 ................................................................................................22

Aizona Revised Statutes
    Section 13-2315(B) ...................................................................................................7

Annunzio Act ...............................................................................................................12, 13, 14, 21

Bank Secrecy Act ..........................................................................................................................19

California Business & Professional Code
    Section 17200, *et seq.* ............................................................................................................2
    Sections 17500-17577.5 .........................................................................................................4

California Financial Code
    Section 4050, *et seq.* ..............................................................................................................2
    Section 4051 ............................................................................................................................5
    Sections 4052-4060 ................................................................................................................5
    Section 4052.5 .........................................................................................................................5
    Section 4053 .......................................................................................................................5, 18
    Section 4054.6 ....................................................................................................................5, 18
    Section 4056 .......................................................................................................................5, 18
    Section 4056(b)(3) ................................................................................................................19
    Section 4056(b)(3)(5)(7)(12) ...........................................................................................18, 19
    Section 4056(b)(5) ................................................................................................................19
    Section 4056(b)(7) ......................................................................................................5, 18, 19
    Section 4056(b)(12) ..............................................................................................................19
    Section 4057(e) .................................................................................................................5, 20

PATRIOT Act ...............................................................................................................................19

<u>Rules and Regulations</u>

Code of Federal Regulations
    Title 12, Section 1016.15(a) .................................................................................................22
    Title 12, Section 10167.17 ....................................................................................................23
    Title 31, Section 1010.210 ....................................................................................................19
    Title 31, Section 1022.210 ....................................................................................................19
    Title 31, Section 1022.210(d)(1)(i)(D) .................................................................................19

Federal Rules of Civil Procedure Rule 12(b)(6) .............................................................................7

<u>Other Authorities</u>

H.R. Rep. 95-1383 ..........................................................................................................................4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Continental Exchange Solutions, Inc., d/b/a Ria Financial Services and AFEX Money Express ("CES"), respectfully submits this Memorandum of Points and Authorities in support of CES's Motion to Dismiss ("Motion") Plaintiffs' Nelson Sequeira, Orsay Alegria, and Ismael Cordero's (collectively "Plaintiffs") First Amended Complaint ("FAC").

## I.   INTRODUCTION

Plaintiffs badly misread federal and state privacy statutes, seeking to impose liability on CES and other money transfer defendant businesses for complying with subpoenas. The first claim for relief alleges violations of the federal Right to Financial Privacy Act, ("RFPA"), 12 U.S.C. §§ 3401, *et seq*. But the provisions of the RFPA that Plaintiffs allege CES violated do not apply to money transmitters like CES. Also, the Annunzio-Wylie Anti-Money Laundering Act ("Annunzio Act") provides an independent source of immunity for CES's compliance with subpoenas. Plaintiffs' second claim for relief alleges violations under the California Financial Information Privacy Act ("Cal. FIPA"), but the provisions of Cal. FIPA that Plaintiffs allege CES violated contain exceptions that apply to CES's disclosure of nonpublic personal information in this case. Moreover, Cal. FIPA does not permit a private right of action, so Plaintiffs cannot bootstrap a claim via California's Unfair Competition Law ("UCL"). Plaintiffs' effort to assert a claim via the UCL also fails because Plaintiffs do not identify any lost property or money sufficient to satisfy the UCL's standing requirement. Finally, as explained below, both the RFPA and Cal. FIPA contain exceptions that apply to disclosure of information in response to subpoenas.

## II.   STATEMENT OF ISSUES TO BE DECIDED

The issues to be decided by this motion are whether: (1) the FAC fails to state a claim against CES under the RFPA; (2) the FAC fails to state a claim against CES under the UCL and Cal. FIPA; and (3) the defects in the FAC are incurable.

## III.   FACTUAL BACKGROUND

### A.   CES

CES provides global money transfer services primarily under the brand names Ria, IME, AFEX Money Express, and xe. FAC ¶ 7. In California, CES is regulated and licensed as a money

1

4889-2656-6228.v7

1    transmitter by the California Department of Financial Protection and Innovation ("DFPI"). *See*

2    Request for Judicial Notice ("RJN"), Exh. A.

3        **B.    Plaintiffs' Allegations**

4        Plaintiffs filed a class action complaint against DHS, ICE, and several Money Transfer

5    Business Defendants ("MTB Defendants"), including CES. Only one of the three proposed class

6    plaintiffs in the FAC, Orsay Alegria ("Alegria"), claims to have used CES's money transfer services.

7    FAC, ¶ 54. Alegria alleges that CES impermissibly, and without his consent or knowledge, shared his

8    private financial information with ICE and DHS through the Transaction Record Analysis Center

9    ("TRAC") reporting program. FAC, ¶¶ 13-15, 54. Specifically, Plaintiffs allege that the Arizona

10   Attorney General demanded that CES produce bulk transaction data to TRAC, which requests

11   continued through 2022. FAC, ¶ 32. Plaintiffs acknowledge that data requests did not necessarily come

12   directly from any federal agency, though they claim that generally the MTB Defendants produced data

13   "in response to requests from federal agencies, as well as state law enforcement agencies acting on

14   behalf of TRAC and its membership." FAC, ¶¶ 44, 48. Plaintiffs describe ways in which both ICE and

15   DHS participated in TRAC, made information demands to certain MTB Defendants, and used data

16   obtained from TRAC. FAC, ¶¶ 35, 45, 49-52. Plaintiffs describe the TRAC program as a "dragnet"

17   sweeping the southwestern US and capturing all transfers (inter and intra nationally) of $500 or more.

18   FAC, ¶¶ 1, 37.

19       Plaintiffs' proposed class consists of (with some carveouts) all persons who sent or received a

20   money transfer via CES and whose transaction data the federal government had access to via TRAC

21   since 2010. FAC, ¶ 56. Plaintiffs allege two causes of action: (1) violation of the RFPA, 12 U.S.C.

22   §§ 3401, *et seq*., and (2) violation of the "unlawful" prong of the UCL, Cal. Bus. & Prof. Code

23   §§ 17200, *et seq*. by violation of Cal. FIPA, Cal. Fin. Code §§ 4050, *et seq*. FAC, ¶¶ 64-86.

24       Alegria alleges no financial harm but alleges that he "feels distress" that TRAC obtained his

25   transaction information. FAC, ¶ 54. Notably, in contrast to every other named Plaintiff in this action,

26   Alegria does not allege that had he known about TRAC he would have sought out an alternative means

27   of money transmittal. FAC, ¶¶ 53-55. Nor does Alegria allege loss of money or property, or even that

28   he would have paid less for CES's transmittal service had he been aware of TRAC. FAC, ¶ 54.

1

### C.    The RFPA

2    Plaintiffs' first cause of action is for alleged violations of the RFPA. Specifically, Plaintiffs

3    claim that CES is a "financial institution" under 12 U.S.C. § 3401(1) because it is a "consumer finance

4    institution" located in the United States, and that when it provided financial records to TRAC, it

5    provided the information to DHS and ICE because the information was shared with those agencies

6    through TRAC. FAC, ¶¶ 67, 72. Plaintiffs further claim that DHS and ICE did not provide them with

7    notice of the disclosure of their information to DHS and ICE or an opportunity to object to the

8    disclosure in violation of 12 U.S.C. §§ 3405(2) and 3407(2). FAC, ¶ 75.

9    The RFPA provides a "customer" of a "financial institution" with the right to notice and an

10    opportunity to object before his or her financial records may be disclosed by that institution to a federal

11    government agency. 12 U.S.C. § 3402. The RFPA does not apply to state government authorities. 12

12    U.S.C. § 3401(3). The RFPA generally protects personal financial records by establishing specific

13    procedures that federal government authorities must follow to obtain such records from a "financial

14    institution" about a customer (the "RFPA General Procedures"). The RFPA General Procedures

15    require obtaining a subpoena, notifying the customer, and providing the customer with an opportunity

16    to object. 12 U.S.C. §§ 3405, 3407. The RFPA General Procedures also impose some limitations and

17    obligations on financial institutions prior to releasing such information requested by the federal

18    government. 12 U.S.C. § 3403(b). However, the RFPA also provides special procedures when a

19    request for financial records comes from a (i) federal government authority that conducts foreign

20    intelligence activities for purposes of conducting such activities, (ii) the Secret Service for the purpose

21    of conducting its protective functions, or (iii) a federal government authority that conducts

22    investigations or intelligence analysis of international terrorism for purposes of such activities (the

23    "RFPA Special Procedures"). 12 U.S.C. § 3414. Only sections 3414, 3415, 3417, 3418, and 3421

24    apply to the RFPA Special Procedures. *Id.* Under the RFPA Special Procedures, it is not necessary to

25    notify the customer and provide an opportunity to object. Additionally, under the RFPA Special

26    Procedures, a financial institution is strictly prohibited from disclosing information about the subpoena

27    to any person, including the customer. 12 U.S.C. § 3414(c).

28    For purposes of the RFPA General Procedures, the RFPA limits the definition of "financial

-3-

institution" to: "except as provided in section 3414 of this title, . . . any office of a bank, savings bank, card issuer . . ., industrial loan company, trust company, savings association, building and loan, or homestead association (including cooperative banks), credit union, or consumer finance institution . . . ." 12 USC § 3401(1). Money transmitters, such as CES, are not included in this definition of financial institutions to which the RFPA General Procedures apply. Section 3414, on the other hand, provides a different definition of a "financial institution" only for purposes of the RFPA Special Procedures under 12 U.S.C. §§ 3414, 3415, and 3417, namely the same meaning as 31 U.S.C. § 5312(a)(2) and (c)(1), which includes money transmitters.

The RFPA sets forth, in some detail, the procedures for providing notice to customers, and these procedures depend upon the nature of the request. *See, e.g.*, § 3405 (procedures that the government must follow when it serves an administrative subpoena on a financial institution); § 3407 (procedures that the government must follow when it serves a judicial subpoena on a financial institution). After the federal government agency has complied with the appropriate customer-notice procedures, it must provide the financial institution with a certificate of compliance, and only then may the institution provide the agency with the requested financial records. § 3403(b). A customer whose records have been disclosed in violation of the RFPA may seek actual damages, civil penalties, and an attorney's fee from either the government agency that obtained the records, or the financial institution that disclosed them. § 3417.

Sections 3413 and 3414 describe myriad exemptions from the RFPA. §§ 3413-14. These exceptions further the RFPA's intent to "strike a balance between customers' right of privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations." H.R. Rep. 95-1383, at 34.

### D.     The UCL and Cal. FIPA

Plaintiffs' second cause of action is asserted under the "unlawful" prong of the UCL based on alleged violations of Cal. FIPA. "Unfair competition" is defined in the UCL as any one of the following wrongs: (1) an "unlawful" business act or practice; (2) an "unfair" business act or practice; (3) a "fraudulent" business act or practice; (4) "unfair, deceptive, untrue or misleading advertising"; and (5) any act prohibited by Cal. Bus. & Prof. Code §§ 17500 through 17577.5. A practice is

"unlawful" if it violates a law other than the UCL. To plead a UCL claim based on an "unlawful" practice, a plaintiff must allege facts sufficient to show a violation of the underlying law and resulting harm. Proposition 64 added a stringent (more restrictive than Article III standing) standing/injury requirement and a requirement that UCL class actions meet typical class action requirements (numerosity, adequacy, *etc.*). The only remedies available to a private plaintiff under the UCL are restitution and injunctive relief (not civil penalties and not attorneys' fees). Here Plaintiffs allege a violation of UCL's "unlawful" prong derived from an alleged violation of Cal. FIPA. FAC, ¶ 79.

Cal. FIPA is codified under §§ 4052-4060 of the California Financial Code ("Cal. Fin. Code"). The purpose of Cal. FIPA is to regulate consumer notice and/or choice about when a consumer's "nonpublic personal information is shared or sold by their financial institutions." Cal. Fin. Code § 4051. Section of Cal. FIPA § 4052.5, reads:

> Except as provided in Sections 4053, 4054.6, and 4056, a financial institution shall not sell, share, transfer, or otherwise disclose nonpublic personal information to or with any nonaffiliated third parties without the explicit prior consent of the consumer to whom the nonpublic personal information relates.

Section 4053 addresses the consent requirement (procedures and exceptions) to disclose nonpublic personal information. Section 4054.6 addresses agreements between financial institutions and "affinity partners" to issue credit cards and other financial services. Section 4056 provides exceptions to the statute, including the release of information to comply with federal, state, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, administrative, or regulatory investigation or subpoena or summons by federal, state, or local authorities. Cal. Fin. Code § 4056(b)(7).  Cal. FIPA is not "intended to change existing law relating to access by law enforcement agencies to information held by financial institutions." Cal. Fin. Code § 4056. Only the California Attorney General or "functional [public] regulator" may seek civil penalties under Cal. FIPA. Cal. Fin. Code § 4057(e).

### E.   TRAC

Although Plaintiffs allege that the privacy violations alleged in the FAC only became public in 2022 when the press exposed the program, nothing could be further from the truth. FAC, ¶ 13. The beginnings of TRAC were created as part of a settlement between Western Union and the State of

Arizona in 2010. FAC, ¶¶ 27-29; RJN, Exh. B. The Settlement Agreement was approved by the Maricopa County Superior Court and was publicly filed with the Securities and Exchange Commission. *Id.* Pursuant to the Settlement Agreement, Western Union and the State of Arizona agreed that Western Union would provide to the State of Arizona, promptly upon the issuance of an Arizona or federal subpoena, summons, court order, or other appropriate legal process, any relevant document, electronic data, or other object in its possession, custody, and/or control concerning matters relating to the State of Arizona's or a participating state's investigation of money laundering or other related criminal activity in the Southwest Border Area for transactions in amounts of $500 or more. FAC, ¶¶ 30, 36; RJN, Exh. B. In a subsequent Amendment to the Settlement Agreement in 2014, also approved by the Maricopa County Superior Court, the creation of TRAC was described as follows:

> To draw Western Union analysts and law enforcement analysts closer together to achieve their mutual goals of effectively deterring, detecting, and preventing money laundering, and to achieve economies of scale and avoid duplication of effort, Western Union's compliance organization and the Financial Crimes Task Force will create a Money Transmitter Transaction Record Analysis Center ("TRAC" or "Center") housed at the Financial Crimes Task Force offices. Western Union's formation of and participation in the Center, in whatever form, shall be subject to compliance with all applicable laws, including, but not limited to, laws governing privacy, data protection, information sharing, and antitrust.

RJN, Exh. C.

In 2019, the court in *United States v. Escobedo*, 2019 WL 6493943, *1 (D. Mont. Dec. 3, 2019) described the TRAC program as follows:

> The Southwest Border Transaction Record Analysis Center (TRAC) is a web-accessible database law enforcement uses to monitor person-to-person money transfers concentrated in southwest border-states and Mexico. (Doc. 23 at 3.) It is available online at www.sbtrac.com, but only law enforcement officers with a login and password may access it. (Doc. 27 at 2.)
>
> In 2014, Western Union—a prominent person-to-person money transfer corporation—and the Arizona Attorney General entered into an agreement to create TRAC. (Doc. 23 at 3.) Western Union agreed to provide the Government with transaction data for all money transfers of $500 or more that are sent or received in California, Arizona, New Mexico, Texas, and Mexico. Since that time, several other money transfer services, like RIA Financial, have also agreed to provide the Government with the same data. The TRAC system now provides law enforcement with the information an individual supplies a third-party money transfer service to execute a money transfer, including the individual's name, address, date of birth, and other identifying information; the transaction date and amount;

the location the funds were sent to; and the name of the transfer recipient. Law enforcement uses TRAC to investigate money laundering related to human trafficking, human smuggling, narcotics trafficking, and terrorism.

The data provided by CES to TRAC is sent pursuant to subpoenas received by CES. These subpoenas are signed and issued by the Arizona Assistant Attorney General "in order to investigate racketeering" and in support of "a felony investigation," and "failure to comply in full with this request will subject [CES] to the proceedings provided by A.R.S. § 13-2315(B)." RJN, Exh. D-F.

## IV.   LEGAL STANDARD

A motion to dismiss under 12(b)(6) of the Federal Rules of Civil Procedure tests for legal sufficiency of claims alleged in the complaint. *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Courts are not bound to accept as true "a legal conclusion couched as a factual allegation," and the claim in the complaint must be factually supported and plausible on its face to survive a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If facts alleged in a complaint are equally consistent with lawful behavior, the pleading fails to state a plausible claim and should be dismissed. *Id.* at 663. A court need not accept conclusory allegations, unwarranted fact deductions, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## V.   ARGUMENT

### A.   The RFPA Does Not Apply to Money Transmitters Producing Transaction Data to TRAC Pursuant to Lawful Subpoenas

Plaintiffs' FAC fails to state a claim against CES with respect to the RFPA for at least two independent reasons. First, CES is not a "financial institution" as defined in the relevant section of the RFPA, as alleged by Plaintiffs, and therefore the RFPA General Procedures upon which Plaintiffs rely do not apply to CES. Second, the RFPA sections at issue in this case (the RFPA General Procedures) do not apply to disclosure of financial records pursuant to subpoenas. Accordingly, because the transaction data CES provides to TRAC is produced at the demand of either state authorities or federal agencies covered by the RFPA Special Procedures, such disclosure is exempt from the RFPA General

Procedures cited in Plaintiffs' FAC, including the requirement to provide notice and opportunity to object prior to disclosure of the financial records.

### 1. CES is Not a Financial Institution Under the Relevant Section of the RFPA

The sections of the RFPA relevant to Plaintiffs' allegations only apply to a "financial institution." Plaintiffs' FAC incorrectly asserts that CES is a "financial institution" under 12 U.S.C. § 3401(1) because it is a "consumer finance institution." FAC, ¶ 67.  Because CES is not a "consumer finance institution" or any other type of "financial institution" under section 3401(1), CES is not regulated by this section.

The RFPA defines "financial institution" as: "[except as provided in 12 U.S.C. § 3414] any office of a bank, savings bank, card issuer . . ., industrial loan company, trust company, savings association, building and loan, or homestead association (including cooperative banks), credit union, or consumer finance institution . . . ." 12 U.S.C. § 3401(1). In contrast, Plaintiffs allege that CES provides money transfer services and ancillary services such as check cashing and money orders. FAC, ¶ 7. Plaintiffs have alleged a legal conclusion, without providing any explanation, reasoning, or legal authority, that CES is a "consumer finance institution." FAC, ¶ 67. However, the meaning of this phrase is narrowly limited to a financial institution that provides consumer financing products, which CES does not provide. As courts have found, "the primary reason each of these entities exists is to provide financing and cash loans to the general public[.]" *Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.* (*"Commodity Futures"*), 717 F.3d 545, 551 (7th Cir. 2013); *see also Byrd v. GMAC Mortg., LLC*, No. 119CV00651DDDSTV, 2020 WL 4577461, at *3 (D. Colo. Aug. 7, 2020). Merely extending credit or loaning money is not sufficient to bring an entity within the RFPA's general definition of "financial institution." *Commodity Futures*, 717 F.3d at 551 (holding that a commodities dealer that extended credit to customers was not a "financial institution" under 12 U.S.C. § 3401(1) because its primary purpose was not "to provide financing and cash loans to the general public"); *Winters v. Board of County Commissioners*, 4 F.3d 848, 852 (10th Cir. 1993) (holding that a pawnbroker, despite issuing loans, is not a "financial institution" within the definition of the RFPA). The Supreme Court has cautioned that the RFPA is to be given a narrow scope. *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) ("[t]he most salient feature of the [RFPA] is the narrow scope

of the entitlements it creates."). As such, the term "consumer finance institution" does not extend to money transfer businesses like CES. Therefore, under 12 U.S.C. § 3401(1), CES is not a "financial institution." for purposes of the RFPA's General Procedures.

Plaintiffs' FAC does not allege facts sufficient to show that CES is a "financial institution" under the RFPA. The FAC relies on the erroneous legal conclusion that the MTB Defendants are "financial institutions under … § 3401(1) because they are consumer finance institutions." FAC, ¶ 37. The FAC does not allege that CES is a bank, savings bank, card issuer, industrial loan company, trust company, savings association, building and loan, homestead association, or credit union. That definition comprises ten types of financial entities, all of which, unlike CES, provide credit to the public at large, make cash loans, and are subject to routine regulatory examination by a supervisory government agency. *See Commodity Futures*, 717 F.3d at 551. Applying the canon "*noscitur a sociis*" requires CES to share these attributes for CES to qualify as a financial institution. *Id*. But CES's business is of a different character.

CES provides money transfer services for a fee. FAC, ¶ 24. A customer will visit a CES physical location or connect virtually (online, by phone, or by mobile application), provide funds, and designate the destination and recipient for the transfer. *Id.* CES then completes the transfer by sending money to the designated recipient. *Id.*  And even if CES were to provide credit, which it does not, CES would still not qualify as a "financial institution" unless providing "financing and cash loans to the general public" was "a core function and purpose" of its business.  *Commodity Futures*, 717 F.3d at 551. Further, CES is not subject to routine regulatory examination by any of the supervisory agencies listed in section 3401(7). Plaintiffs' conclusory and erroneous assertion that the RFPA applies to CES appears to be premised solely on the fact that CES transfers money for a fee. FAC, ¶ 24. But transferring money does not make CES a "financial institution" under the RFPA definition in § 3401(1).

Section 3401's cross-reference to section 3414 only serves to strengthen CES's argument that money transmitters are not a "financial institution" for the provisions of the RFPA upon which Plaintiffs rely. Section 3414(e) provides that for limited purposes of 12 U.S.C. §§ 3414, 3415, and 3417, the term "financial institution" has the same meaning as 31 U.S.C. § 5312(a)(2) and (c)(1) (the

-9-

1  definitions provided in the Bank Secrecy Act or "BSA"), which includes money transmitters. In other
2  words, as a money transmitter CES is only a "financial institution" for the limited purposes of the
3  RFPA Special Procedures—sections 3414, 3415, and 3417 only—and not for the broader RFPA
4  General Procedures cited by the FAC.

5  But Plaintiffs do not, and could not, base their allegations on sections 3414, 3415, and 3417.
6  Congress added section 3414 to the RFPA by amendment in 2003 to explicitly carveout intelligence
7  and counterterrorism investigations from the RFPA. For the purposes of intelligence or
8  counterterrorism, the government need not contact the customer and the financial institution is
9  forbidden from notifying the customer of the request. In other words, money transmitters are only
10  subject to the RFPA as described in section 3414, and the purpose of section 3414 is to relieve
11  intelligence and counterterrorism operations from having to comply with the RFPA General
12  Procedures. The fact that the RFPA makes a limited incorporation of the BSA's definition of financial
13  institution in section 3414 creates a negative inference that the BSA's broader definition of "financial
14  institution" does not apply to other sections of the RFPA, including those sections of the RFPA
15  relevant to Plaintiffs' case. *Commodity Futures*, 717 F.3d at 551. This Court should dismiss the RFPA
16  claim because CES is not a "financial institution" under the RFPA for the purposes of Plaintiffs'
17  allegations.

18  **2.    The General Procedures of the RFPA Do Not Apply to Disclosures Made to TRAC or to DHS or ICE**
19

20  **a.    Investigations by DHS and ICE Seeking Financial Records are Exempt from the RFPA**

21  Even if CES qualified as a financial institution for the purposes Plaintiffs' RFPA claim, which
22  it does not, DHS and ICE are not generally subject to the RFPA. CES only provides data to TRAC
23  pursuant to subpoena at the behest of government agencies. RFPA section 3414 provides that nothing
24  in the RFPA (except for sections 3415, 3417, 3418, and 3412 which are not relevant to Plaintiffs'
25  allegations) applies to the production and disclosure of financial records to government entities
26  authorized to conduct intelligence and/or counterterrorism investigations. 12 U.S.C. § 3414(a)(1).
27  Section 3414 applies to requests from: (i) "a Government authority authorized to conduct foreign

28

MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 4:22-cv-07996-HSG

1   counter- or foreign positive-intelligence activities;" (ii) the Secret Service for purposes of conducting

2   its protective functions under 18 U.S.C. §§ 3056 and 3056A; and (iii) "a Government authority

3   authorized to conduct investigations of, or intelligence or counterintelligence analyses related to,

4   international terrorism." The term "Government authority" is broadly defined to mean "any agency or

5   department of the United States, or any officer, employee, or agent thereof." 12 U.S.C. § 3401(3). The

6   requirement to obtain customer authorization to release personal financial records, the broad limits on

7   governmental use of the records, and the customer's right to object to the disclosure of the records do

8   not apply to a procedure to obtain records pursuant to the RFPA Special Procedures under

9   Section 3414.

10       Plaintiffs accuse CES of improperly yielding to information requests from government

11   authorities by providing information submitted to TRAC. FAC, ¶ 48. But requests for financial records

12   from DHS and ICE are generally excluded from the RFPA, subject to narrow exceptions, as provided

13   by section 3414. DHS is specifically tasked under federal law with counterterrorism duties. In

14   particular, the Homeland Security Act of 2002 provides that the mission of DHS is, among other

15   things, to "prevent terrorist attacks within the United States [and] reduce the vulnerability of the United

16   States to terrorism." 6 U.S.C. § 111(b). Therefore, under section 3414, because DHS is a government

17   authority authorized to conduct investigations of, or intelligence or counterintelligence analyses

18   related to, international terrorism, disclosure of financial requests from DHS are not subject to the

19   provisions of the RFPA General Procedures that form the basis of Plaintiffs' claims.

20       ICE is also excluded from the sections of the RFPA relevant to this case by section 3414. ICE

21   is a part of DHS and, therefore, has the same counterterrorism mandate under the Homeland Security

22   Act of 2002. In 2010, the division of Homeland Security Investigations ("HSI") was created within

23   ICE from the previous ICE Offices of Investigations, Intelligence and International Affairs. RJN, Exh.

24   G. The mission of HSI is to investigate, disrupt, and dismantle "transnational criminal organizations

25   and terrorist networks that threaten or seek to exploit the customs and immigration laws of the United

26   States." *Id*.

27       According to section 3414, the RFPA consumer protections Plaintiffs invoke are inapplicable

28   to "the production and disclosure of financial records pursuant to requests from" DHS and ICE. 12

U.S.C. § 3414(a)(1). While Plaintiffs allege that DHS and ICE improperly further disseminate the data received to other government departments outside the bounds of section 3414, those allegations are independent of, and do not support a claim against, CES. FAC, ¶ 41. This Court should grant CES's Motion to dismiss the RFPA claim because all consumer financial data that is shared with TRAC is exempt from the requirements Plaintiffs claim were violated.

### b.    The RFPA Does Not Apply to Disclosure Requests from State Authorities

No provision of the RFPA applies to a financial institution making a disclosure of information to a state government authority. The RFPA defines a "Government authority" as only federal government entities: "'Government authority' means any agency or department of the United States, or any officer, employee, or agent thereof." 12 U.S.C. § 3401(3). The provisions of the RFPA exclusively apply to information disclosures requested by or made to "Government authorities." 12 U.S.C. §§ 3402-3411, 3414. The RFPA simply does not apply to a financial institution responding to a state government subpoena, regardless of what happens or who accesses the data after it is turned over to the state government authority. Plaintiffs acknowledge that CES provided information to TRAC, not to a federal agency, in response to subpoenas issued by the Arizona Attorney General. FAC ¶ 44. Therefore, this Court should grant CES's Motion to dismiss the RFPA claim because all consumer financial data that is shared with TRAC at the behest of the Arizona Attorney General falls entirely outside the provisions of the RFPA.

### B.    The Annunzio Act Precludes All of Plaintiffs' Claims

Plaintiffs' FAC fails because CES's financial disclosures to TRAC are protected by the safe harbor established through the Annunzio Act, otherwise referred to as U.S.C. Section 5318(g). This statute protects CES for three reasons. First, in contrast to the RFPA, CES is defined as a "financial institution" under the Annunzio Act, and Section 5318(g) of the Annunzio Act provides sweeping protection to broadly defined financial institutions that make voluntary or compulsory disclosures of potential legal violations. Second, the subpoenas issued to CES function as "other authority" for Section 5318(g) purposes, and thus, CES cannot be liable for complying with such orders. Lastly, CES acted in good faith in disclosing financial information to TRAC because it was pursuant to subpoenas,

but even good faith is not a requirement under the Annunzio Act, further highlighting the broad protections Section 5318(g) affords financial institutions. For these reasons, the Court should grant CES's motion to dismiss.

### 1.   CES has Comprehensive Immunity for its Disclosures to TRAC Because the Disclosures Relate to Potential Legal Violations

The Bank Secrecy Act ("BSA") requires CES to disclose all possible violations of law to the government. *See e.g.*, 31 U.S.C. §§ 5311-5330. This regulatory scheme functions to combat money laundering across the United States and outside of the nation's border. Prior to 1992, the RFPA, 12 U.S.C. §§ 3401-3422, provided only a limited amount of protection to banks and other financial institutions for disclosing financial information related to suspicious activity under the BSA or otherwise. Financial institutions found themselves caught between Scylla and Charybdis: at risk for reporting "too much" and facing lawsuits by customers, while simultaneously facing prosecution in the event the Government deemed that the institution reported "too little," and in some cases, facing lawsuits brought by both sides.

In 1992, Congress remedied this dilemma with the passage of the Annunzio Act, 31 U.S.C. § 5318(g). In its present form, the Act states:

> Any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency ***or makes a disclosure pursuant to this subsection or any other authority***, . . . ***shall not be liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State.*** . . for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure.

31 U.S.C. § 5318(g)(3)(A) (emphasis added). The purpose of the Anunzio Act is to provide "the broadest possible exemption from civil liability for the reporting of suspicious transactions." *Stoutt v. Banco Popular de Puerto Rico*, 320 F.3d 26, 31 (1st Cir. 2003).

Unlike the RFPA, the Annunzio Act defines a "financial institution" to include money transmitters like CES. Section 5312(a)(2) provides: "In this subchapter -- ... 'financial institution' means-- . . . A licensed sender of money or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer

1    system or any network of people who engage as a business in facilitating the transfer of money

2    domestically or internationally outside of the conventional financial institutions system." CES is a

3    licensed money transmitter. RJN, Exh. A.

4           Since the passage of the Annunzio Act, courts across multiple jurisdictions have not supported

5    plaintiffs bringing RFPA actions (and similar federal legal claims) against financial institutions. *See,*

6    *e.g., Coronado v. Bank Atl. Bancorp, Inc.*, ("*Coronado*") 222 F.3d 1315 (11th Cir. 2000) (affirming

7    Defendant-Banks' motion for summary judgment and declining to address Plaintiff's RFPA claims

8    because Bank was shielded from liability under the safe harbor provisions of the Annunzio Act); *see*

9    *also Toader v. J.P. Morgan Chase Bank*, 482 F. App'x 180 (7th Cir. 2012) (affirming motion for

10   summary judgment where Plaintiff-customer claimed Bank violated the RFPA by disclosing to the

11   government because, among other reasons, Bank's disclosures were shielded by the safe harbor

12   provisions of the Annunzio Act). The addition of 31 U.S.C. § 5318(g) underscores the broad

13   protections that financial institutions generally maintain when it comes to their disclosing information

14   to combat money laundering.

15          The broad protections provided by the Annunzio Act also preempt Plaintiffs' state law claims.

16   Section 5318(g)(3)(A) specifically provides that if CES "makes a disclosure pursuant to . . . any other

17   authority, [it] . . . shall not be liable to any person under any law or regulation of the United States,

18   any constitution, law, or regulation of any State or political subdivision of any State."  The Supremacy

19   Clause provides that "the Laws of the United States" "shall be the supreme Law of the Land... any

20   Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2.

21   "Congress may consequently pre-empt, i.e., invalidate, a state law through federal legislation. It may

22   do so through express language in a statute." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015).

23   Here, the express language of the Annunzio Act provides that CES is not liable under any law of any

24   State for making disclosures pursuant to any authority. As such, Plaintiffs' state law claims are

25   preempted.

26          **2.     Because the Subpoenas Issued to CES Serve as "Legal Authority" for**
              **Section 5318(g) Purposes Any Disclosures Made Pursuant to Those**
27            **Subpoenas Are Not Actionable**

28          Section 5318(g) makes clear that the safe harbor provision applies to disclosures made

-14-

4889-2656-6228.v7

"pursuant to this subsection or *any other authority*." 31 U.S.C. § 5318(g)(3)(A) (emphasis added). Courts have clarified that Section 5318(g) protects disclosures made pursuant to "any other authority" besides, the Treasury Secretary's regulations, so long as such disclosures are made pursuant to "legal authority" (*i.e.*, statutes, regulations, court orders, other sources of law). *See Lopez v. First Union Nat. Bank of Fla.*, 129 F.3d 1186 (11th Cir. 1997). For example, in *Lopez*, the 11th Circuit assessed financial disclosures made pursuant to a seizure warrant and those made pursuant to verbal instructions by government officials. *Id.* at 1188. In doing so, the court explained the "other authority" aspect of Section 5318(g) and determined that the Bank's disclosure of customer financial records in response to the seizure warrant was within the safe harbor provision of Section 5318(g) as the warrants were based on "legal authority." *Id.*

Courts have also determined that a valid grand jury subpoena is considered "other authority" within the meaning of Section 5318(g)'s safe harbor provision. *See Coronado*, 222 F.3d 1315. The Eleventh Circuit reached such a holding in *Coronado*, noting that unlike "a mere verbal request from a government agent, there is a legal mechanism to enforce grand jury subpoenas." *Id* at 1320. The court further reasoned that valid grand jury subpoenas "possess the 'force of law' because they are issued under the authority of a federal district court, and disobedience can lead to a legal sanction." *Id.*

The subpoenas issued to CES fall within the "other authority" provision of 5318(g) as they were based on "legal authority" and failure to comply could result in legal action against CES. Like a grand jury subpoena—which is issued based on the authority of the court and grand jury—the subpoenas in the present case were issued pursuant to the court ordered settlement agreement between Western Union and the Arizona Attorney General that established the TRAC program. In the years following TRAC's creation in 2014, TRAC functioned as an extension of the government and, as *Plaintiffs notes,* federal involvement in TRAC "has a long history." FAC, ¶ 18. CES faced threat of legal action for failing to comply with the subpoenas. The subpoenas themselves stated that they were issued pursuant to state law and advised that "*warning another person of impending felony prosecution*" or "*suppressing physical evidence by concealment, alteration or destruction in a felony investigation*" are each felony crimes. RJN, Exh. F. Because CES disclosed information pursuant to

what constitutes as "other authority" under 5318(g), it cannot be held liable for the acts alleged in Plaintiffs' FAC.

### 3. There is No "Good Faith" Requirement in Making Disclosures under the Annunzio Act

CES acted in good faith because it was responding to subpoenas. Nevertheless, several courts have explicitly held that, under Section 5318(g), there is no "good faith" requirement when financial institutions voluntarily disclose information. *See Lee v. Bankers Trust Co.,* 166 F.3d 540, 545 (2d Cir. 1999) ("[w]e decline to import a good faith requirement into the statute. . . We conclude that the safe harbor provision does not limit protection to disclosures based on a good faith belief that a violation has occurred"); *see also Stoutt v. Banco Popular de Puerto Rico*, 320 F.3d 26 (1st Cir. 2003) (holding that that the language and legislative history of the Annunzio Act caution against imposing an implied "good faith" requirement). The Northern District specifically has also taken a similar view with respect to Section 5318(g). *See Martinez-Rodriguez v. Bank of Am.*, No. C 11-06572 CRB, 2012 WL 967030, at *12 (N.D. Cal. Mar. 21, 2012) ("[t]he plain language of the Act provides immunity for a 'voluntary disclosure of any possible violation of law,' and to impose a good faith requirement on top of this clear statutory text would result in a far narrower preemption provision"). Because Section 5318(g) does not contain a good faith requirement, CES's motive for complying with the subpoenas is irrelevant. CES cannot be held liable for disclosing financial information when Section 5318(g) provides complete immunity for such disclosures.

### C. Plaintiffs' FAC Fails to State a Claim Under the UCL via Cal. FIPA Based on CES's Provision of Information to TRAC

Plaintiffs' FAC fails to state a claim for an "unlawful" violation of the UCL for at least four reasons. Plaintiffs' claim fails because: (1) Plaintiffs do not have standing under the UCL, (2) CES's provision of money transfer data to TRAC does not violate Cal. FIPA, (3) Plaintiffs cannot use the UCL to circumvent Cal. FIPA's rejection of a private right of action, and (4) Plaintiffs' claim is preempted by the GLBA.

### 1. Plaintiffs Lack Standing to Bring a UCL Claim Based on CES's Provision of Information to TRAC

Plaintiffs have not alleged facts sufficient to satisfy standing for a UCL claim. To assert a UCL

claim, a private plaintiff must have both "suffered injury in fact and . . . lost money or property as a result of the unfair competition." *See Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 323 (2011). "Accordingly, standing under the UCL is far narrower than traditional federal standing requirements" and "more stringent." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) (holding that in contrast to a UCL plaintiff, a "federal plaintiff's injury in fact may be intangible and need not involve lost money or property") (internal quotation marks omitted). A claim under Cal. FIPA is a claim concerning the alleged improper dissemination of financial information, not restitution of lost money or property. *See Baugh v. CBS, Inc.*, 828 F. Supp. 745, 757-58 (N.D. Cal. 1993) (rejecting attempt to "convert" an invasion-of-privacy damages claim into a restitution claim). "[P]ersonal information' does not constitute money or property under Proposition 64." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1026 (N.D. Cal. 2012); *Thompson v. Home Depot, Inc.*, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007) (same). Therefore, the unauthorized dissemination of personal information is insufficient to satisfy UCL standing. *See Ruiz v. Gap, Inc.*, 540 F.Supp.2d 1121, 1127 (N.D. Cal. 2008), aff'd, 380 F. App'x 689 (9th Cir. 2010) (dismissing "unlawful" UCL claim because "unauthorized release of personal information" is not a loss of money or property).

Plaintiffs do not have standing to bring a UCL claim because Plaintiffs have neither identified their injury nor tied that injury to lost money or property. Here, Plaintiffs do not allege that CES illicitly acquired money or property from Plaintiffs. Plaintiffs allege that CES provided Plaintiffs with money transfer services. FAC, ¶ 54. Plaintiffs' claim under Cal. FIPA alleges harm because "the MTB Defendants shared their private data with TRAC, the Federal Government Defendants, and other law enforcement agencies. . . ."  FAC, ¶ 84. But "'personal information' does not constitute money or property under Proposition 64." *Low*, 900 F. Supp. 2d at 1026. And the allegedly unauthorized dissemination of personal information is insufficient to satisfy UCL standing. *Ruiz*, 540 F. Supp. 2d at 1127.  This Court should dismiss Plaintiffs' UCL cause of action because Plaintiffs fail to satisfy Proposition 64's stringent pleading requirements.

### 2. Plaintiffs' UCL Claim Fails Because CES's Provision of Money Transfer Data to TRAC Does Not Violate Cal. FIPA

Plaintiffs have not alleged facts sufficient to satisfy a UCL claim predicated on a violation of

Cal. FIPA. Plaintiffs' FAC incorrectly claims that Cal. FIPA prohibits financial institutions from sharing nonpublic personal information with any nonaffiliated third party without the explicit prior consent of the consumer. FAC, ¶ 80. But Cal. FIPA contains numerous exceptions and qualifications that allow disclosure of nonpublic personal information without prior consent of the consumer under a variety of circumstances. *See e.g.*, Cal. Fin. Code §§ 4053, 4054.6, and 4056. One class of exceptions pertinent to this case is that restrictions on sharing customer information delineated in Cal. FIPA do not apply when government agencies are seeking information connected to law enforcement investigations. Cal. Fin. Code § 4056; *see, e.g., Budowich v. Pelosi* ("*Budowich*"), —— F.Supp.3d ——, No. CV 21-3366 (JEB), 2022 WL 2274359 (D.D.C. June 23, 2022) (interpreting California law). A "financial institution may release nonpublic personal information" when the "nonpublic personal information" is any of the following:

> (3) Released to protect against or prevent actual or potential fraud, identity theft, unauthorized transactions, claims, or other liability…

> (5) The nonpublic personal information is released to the extent specifically required or specifically permitted under other provisions of law and in accordance with the Right to Financial Privacy Act of 1978 (12 U.S.C. Sec. 3401 et seq.), to law enforcement agencies…

> (7) The nonpublic personal information is released to comply with federal, state, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, administrative, or regulatory investigation or subpoena or summons by federal, state, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

> (12) the release of information is required by the USA PATRIOT Act.

Cal. Fin. Code §§ 4056(b)(3)(5)(7)(12).

In *Budowich*, the court held that a bank's production of plaintiff's financial records in response to a subpoena relating to a criminal investigation did not violate Cal. FIPA, and thus an alleged violation could not create liability under California's UCL. Because the bank was required by law to comply with a subpoena, its disclosure of plaintiff's financial records fell within Cal. FIPA's exception allowing financial institutions to disclose nonpublic personal information when necessary to comply with legal requirements. *Id.* at 15-16; Cal. Fin. Code § 4056(b)(7). CES's provision of information to

1    TRAC falls squarely within these exceptions.

2           CES has not breached Cal. FIPA by complying with law enforcement authorities' demands to

3    supply money transfer data to TRAC. It is undisputed that TRAC shares money-transfer data with law

4    enforcement as demanded by DHS and ICE. Therefore, CES's conduct is protected by at least four

5    separate Cal. FIPA exceptions under Cal. Fin. Code §§ 4056(b)(3)(5)(7)(12).

6           First, the TRAC program is an information exchange at the behest of law enforcement designed

7    to prevent criminal activity, including potential fraud, unauthorized transactions, identity theft, and

8    other liability. Cal. Fin. Code § 4056(b)(3).

9           Second, CES is required or permitted to release this information by law to law enforcement

10   agencies and, as discussed above, it has done so in compliance with the RFPA. Cal. Fin. Code §

11   4056(b)(5).

12          Third, CES is only releasing the information to comply with subpoenas. Cal. Fin. Code §

13   4056(b)(7); *see Budovich* at 15-16. Further, Even if DHS and ICE were to request the at-issue

14   transaction information without a subpoena, in furtherance of a law enforcement investigation, CES

15   would still be within the bounds of section 4056(b)(7).

16          Fourth, the USA PATRIOT Act requires CES to share financial records with law enforcement

17   agencies. Cal. Fin. Code § 4056(b)(12). The Bank Secrecy Act ("BSA"), as amended by the USA

18   PATRIOT Act, requires every financial institution (including money transmitters) to have a written,

19   board-approved program designed to detect and report money laundering and potential financing of

20   terrorist networks. *See* 31 U.S.C. §§ 5311, 5318, 5330; 31 C.F.R. §§ 1010.210, 1022.210.

21   Approximately one-third of the PATRIOT Act consists of the anti-money laundering and counter

22   terrorist financing provisions of Title III. Of relevance to this case, Title III contains Section 352,

23   which requires that every (here, broadly defined) financial institution must have an anti-money

24   laundering ("AML") program and authorizes the Secretary of the Treasury to adopt regulations

25   governing such AML programs. 31 U.S.C. § 5318(h). Those regulations specify that a compliant AML

26   program under the PATRIOT Act must incorporate policies, procedures, and internal controls that

27   include provisions for complying with law enforcement requests. 31 C.F.R. § 1022.210(d)(1)(i)(D).

28   Thus,the PATRIOT Act requires CES to respond to law enforcement requests. Put another way, if

CES were to refuse to disclose the information requested by the subpoenas, it would have violated the PATRIOT Act.

Cal. FIPA's explicit statement that nothing in the statute is intended to change existing law relating to access by law enforcement agencies clearly signals the legislature's intent to allow financial institutions to disclose nonpublic personal information to law enforcement. Because CES has not violated Cal. FIPA, Plaintiffs cannot state a claim for a derivative UCL violation. This Court should dismiss the FAC's UCL claim on this independent basis.

### 3. Plaintiffs Cannot Circumvent the Absence of a Private Right of Action to Enforce Cal. FIPA by Bringing a Claim Under the UCL

Cal. FIPA explicitly disavows any private right of action. Section 4057 states that the "civil penalties provided for [violating Cal. FIPA] shall be *exclusively* assessed and recovered in a civil action brought in the name of the people of the State of California…" by either the Attorney General or the "functional regulator with jurisdiction over regulation of the financial institution…." Cal. Fin. Code § 4057(e) (emphasis added). Granting exclusive enforcement authority to the Attorney General and "functional regulator" to bring Cal. FIPA claims in the "name of the people of the State of California" unequivocally forecloses a private right of action. Because CES is licensed and regulated as a money transmitter by the DFPI, the only parties authorized to bring a suit seeking civil penalties against CES under Cal. FIPA is the DFPI or the state Attorney General. Indeed, Plaintiffs presumably did not allege a Cal. FIPA claim precisely because the state Attorney General and DFPI possess exclusive enforcement authority. Instead, Plaintiffs seek to "bootstrap" a Cal. FIPA claim by asserting a claim under the UCL. But Plaintiffs are not permitted to do so.

Plaintiffs cannot simply bypass Cal. FIPA's exclusion of private enforcement by styling their claim a UCL action. UCL "unlawful" claims are prohibited when the legislature either (1) intends to preclude a private right of action or (2) provides a "safe harbor" that renders the alleged conduct lawful. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 182-183 (1999). Plaintiffs cannot use the UCL "to engineer" a private right of action by "recasting [a] cause of action as one for unfair competition." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 182; *O'Donnell v. Bank of Am., Nat. Ass'n* ("*O'Donnell*"), 504 Fed. Appx. 566, 568 (9th Cir. 2013) (holding that plaintiff cannot

use the UCL to engineer a private right of action not contained in the Federal Trade Commission Act ("FTCA"));  *Hartless v. Clorox*, No. 06CV2705 JAH(CAB), 2007 WL 3245260, at *4 (S.D. Cal. Nov. 2, 2007) (holding that a UCL claim cannot be predicated on Federal Insecticide, Fungicide, and Rodenticide Act due to Congress' express rejection of private actions); *Newton v. American Debt Services, Inc.*, 75 F. Supp. 3d 1048, 1058 (N.D. Cal. 2014) (holding that violation of an FDIC consent order, entered pursuant to 12 U.S.C. § 1818 that precludes a court from "affect[ing] . . . enforcement" cannot form the basis of a UCL claim).  Courts routinely grant motions to dismiss where plaintiff advances an "unlawful" UCL claim based upon an underlying statute that does not contain a private right of action.  *See, e.g., BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 4061698, at *16 (N.D. Cal. Sept. 7, 2021) (granting motion to dismiss "unlawful" UCL claim for violation of the FTCA because the FTCA "does not provide individuals with a private right of action"); *Silva v. AvalonBay Communities, Inc.*, No. LACV1504157JAKPLAX, 2015 WL 11422302, at *10 (C.D. Cal. Oct. 8, 2015) (granting motion to dismiss UCL claim based on "unlawful" violation of California statute where the statute did not contain a clear private right of action); *O'Donnell*, 504 Fed. Appx. at 568 (similar). This Court should reject Plaintiffs' efforts to circumvent the plain text of section 4057 of Cal. FIPA.

Plaintiffs' FAC is a transparent effort "to engineer" a private right of action under the UCL, which is explicitly disallowed by the underlying statute upon which Plaintiffs' UCL claim relies. This Court should dismiss Plaintiffs' UCL claim on this basis alone.

### 4. Plaintiffs' UCL and Cal. FIPA Claims are Also Preempted by the Graham-Leach-Bliley Act

In addition to preemption of Plaintiffs' state law claims under the Annunzio Act, the Gramm-Leach-Bliley Act ("GLBA") also preempts Plaintiffs' UCL and Cal. FIPA claims.  GLBA is a federal law that requires financial institutions to explain how they share and protect their customers' private information. *See* 15 U.S.C. §§ 6801–6809.  To be GLBA compliant, financial institutions must communicate to their customers how they share the customers' sensitive data, inform customers of their right to opt-out if they prefer that their personal data not be shared with third parties, and apply specific protections to customers' private data in accordance with a written information security plan

4889-2656-6228.v7

1   created by the institution. *Id*. However, similar to the RFPA and Cal. FIPA, GLBA contains broad

2   carve outs for the law enforcement investigations.

3       CES's production of transaction data in response to law enforcement subpoenas is authorized

4   by GLBA. First, unlike the RFPA, for purposes of the GLBA, CES is a "financial institution." Under

5   GLBA, a "financial institution" is "any institution the business of which is engaging in financial

6   activities as described in [12 U.S.C. § 1843(k)]." 15 U.S.C. § 6809(3)(A). Financial activities for these

7   purposes include transferring money. 12 U.S.C. § 1843(k)(4)(A). Second, GLBA contains broad

8   exceptions that allow financial institutions to share their customers' nonpublic personal information

9   with law enforcement agencies. GLBA's implementing regulations ("Regulation P") provide

10  exceptions to the general requirements that a financial institution must give its customers notice of its

11  privacy policies and the opportunity to opt out of disclosure of nonpublic personal information under

12  certain circumstances:

> (2)(ii) to protect against or prevent actual or potential fraud, unauthorized transactions, claims or other liability; . . .

> (4) To the extent specifically permitted or required under other provisions of law and in accordance with the Right to Financial Privacy Act of 1978 (12 U.S.C. *et seq.*) to law enforcement agencies (including the Bureau, a federal functional regulator, the Secretary of the Treasury, with respect to 31 U.S.C. Chapter 53, Subchapter (Records and Reports on Monetary Instruments and Transactions) and 12 U.S.C. Chapter 21, Financial Recording, a state insurance authority, with respect to any person domiciled in that insurance authority's state that is engaged in providing insurance, and the Federal Trade Commission, self-regulatory organizations, or for an investigation on a matter related to public safety; . . .

> (7) (i) to comply with Federal, state, or local laws, rules and other applicable legal requirements; (ii) to comply with a properly authorized civil, criminal, or regulatory investigation, or subpoena or summons by Federal, state, or local authorities; or (iii) to respond to judicial process or government regulatory authorities having jurisdiction over you for examination, compliance, or other purposes as authorized by law.

24  12 C.F.R. § 1016.15(a).

25      This regulation expressly authorizes a covered financial institution to withhold from a

26  consumer notice that the financial institution may disclose the consumer's nonpublic personal

27  information under these circumstances as well as the opportunity to opt out of such disclosure. By

28  providing the information demanded by subpoenas to TRAC, CES was acting (i) to protect against or

-22-

prevent potential fraud, (ii) as permitted or required under the RFPA, and (iii) to comply with applicable legal requirements, properly authorized investigations and subpoenas, and other purposes authorized by law. As such, GLBA authorizes CES to disclose the information without providing Plaintiffs any prior notice or opportunity to opt out of the disclosure.

As federal law, GLBA has preemption power. Regulation P states:

(a) In general.  This part shall not be construed as superseding, altering, or affecting any statute, regulation, order, or interpretation in effect in any state, *except to the extent that such state statute, regulation, order, or interpretation is inconsistent with the provisions of this part*, and then only to the extent of the inconsistency.

12 C.F.R. § 10167.17 (emphasis added). Thus, because Plaintiffs' UCL claim (based on alleged violation of Cal. FIPA) is inconsistent with the provisions of Regulation P and GLBA, the federal supersedes that claim. GLBA expressly permits broad sharing of financial data with law enforcement agencies. Conflict preemption exists where "compliance with both state and federal law is impossible," or where "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Oneok*, 575 U.S. at 377 quoting *California v. ARC America Corp.*, 490 U.S. 93, 100, 101, (1989). In such a situation, federal law must prevail. *Id.* Thus, even if Alegria claims that California law required CES to provide him with notice that information was being disclosed pursuant to subpoena and an opportunity to object, federal law preempts it.

## VI.    CONCLUSION

For the foregoing reasons, this Court should grant this Motion to Dismiss.

Dated:  March 3, 2023                    PILLSBURY WINTHROP SHAW PITTMAN LLP


  */s/ Robert L. Wallan*

By:        ROBERT L. WALLAN
           NATHAN M. SPATZ
           CHRISTOPHER M. BUTLER
           JORDAN RHODES

           Attorneys for Defendant CONTINENTAL
           EXCHANGE SOLUTIONS, INC., d/b/a RIA
           FINANCIAL SERVICES AND AFEX MONEY
           EXPRESS

4889-2656-6228.v7