BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
JULIA A. HEIMAN
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-8480
Fax: (202) 616-8470
Email: julia.heiman@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| NELSON SEQUEIRA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Case No.: 4:22-cv-07996-HSG<br><br>**FEDERAL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES SUBMITTED IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Date: May 18, 2023<br>Time: 02:00 pm |

## I. INTRODUCTION

The Department of Homeland Security and U.S. Immigration and Customs Enforcement (together the "Federal Defendants"), respectfully submit this memorandum in support of their motion to dismiss Plaintiffs' Complaint, ECF No. 1 ("Complaint").

In 2010, the Arizona Attorney General and Western Union Financial Services, Inc. ("Western Union") entered into a Settlement Agreement stipulating that "the Southwest Border Area poses special money laundering risks associated with criminal activity by drug, human, and weapons smuggling organizations. The problems associated with this criminal activity are regional in nature and are not confined to any single U.S. or Mexican border state." Settlement Agreement, *State of Arizona v. Western Union Financial Serv., Inc.*, ¶ 10.[1] They further agreed that "an effective and cooperative working relationship between financial services providers and law enforcement agencies [would] play an important role in enabling law enforcement to successfully combat money laundering and other criminal activity in the Southwest Border Area." *Id.* A 2014 Amendment to that Settlement Agreement created the Southwest Border Transaction Record Analysis Center (TRAC), a web-accessible database available to law enforcement officers that began with data about money transfers from Western Union, but now includes data regarding money transfers over a certain threshold dollar amount from numerous additional money transfer businesses. Law enforcement uses TRAC to investigate money laundering related to human trafficking, human smuggling, narcotics trafficking, and terrorism. *See United States v. Escobedo*, 2019 WL 6493943, at *1 (D. Mont. Dec. 3, 2019).

Plaintiffs include individuals who allege that they regularly use money transfers to send money to family abroad, and that they are distressed that data about those transactions was allegedly collected and can be accessed by government agencies via the TRAC. *See* Compl., ¶¶ 50–53.[2] Presuming such transactions have taken place, Plaintiffs allege that, "by gaining access to or obtaining copies of the financial information in the TRAC database," Compl., ¶ 71, the Government Defendants violated Section 3402 of the Right to Financial Privacy Act, 12 U.S.C.

---

[1] Plaintiffs incorporate this Settlement Agreement by reference in the Complaint, *see* Compl. ¶ 30, and the Court may therefore consider the Settlement Agreement on this motion to dismiss without converting it into a summary judgment motion. *See infra* (discussing case law concerning incorporation by reference).

[2] For purposes of the instant motion, Federal Defendants take no position as to whether any records pertaining money transfers by individual Plaintiffs were collected for the TRAC, and whether any government entity has accessed any such records.

§§ 3401–3422 (the "RFPA"). Whether or not Plaintiffs are correct that records about their transactions have or have not been accessed as a matter of fact, Plaintiffs are mistaken on the law. The Supreme Court has explained that the RFPA "accords customers of banks and similar financial institutions certain rights." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984). Money transfer companies are neither. An examination of the plain language of the provisions that Plaintiffs invoke, the surrounding text of the RFPA, and the broader statutory context, confirms that money transfer businesses are not "financial institutions" to which Section 3402 applies. Thus, government access to the TRAC database, either in general or with respect to data about Plaintiffs' transactions, does not implicate the liability provisions of the RFPA.

For these reasons, and as explained more fully below, Plaintiffs' claim under the RFPA (Count I) should be dismissed with prejudice.

## II. DISCUSSION

### A. Legal Standard

"A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6)." *Rutter v. Apple Inc.*, 2022 WL 1443336, at *1 (N.D. Cal. May 6, 2022). On such a motion, dismissal is appropriate "only where the complaint 'lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Id.* (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). In assessing a Rule 12(b)(6) motion, the Court must consider all well-pled allegations in a complaint as true and view the complaint in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994). "Nevertheless, courts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Rutter,* 2022 WL 1443336, at *1 (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do.") Rather, to survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

"Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, "[u]nder the 'incorporation by reference' rule of this Circuit, a court may look beyond the pleadings" to documents incorporated into the complaint by reference "without converting the Rule 12(b)(6) motion into one for summary judgment." *Id.*

**B. Plaintiffs' Claim Under the Right to Financial Privacy Act Fails Because Money Transfer Businesses Are Not Financial Institutions for Purposes of the Provision that Plaintiffs Invoke.**

Section 3402 of the RFPA provides that, with certain specific exceptions, "no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution" unless the requirements of Section 3402 are fulfilled. 12 U.S.C. § 3402. A "financial institution," for purposes of Section 3402, is:

> any office of a bank, savings bank, card issuer as defined in section 1602(n) of Title 15, industrial loan company, trust company, savings association, building and loan, or homestead association (including cooperative banks), credit union, or consumer finance institution, located in any State or territory of the United States, the District of Columbia, Puerto Rico, Guam, American Samoa, or the Virgin Islands.

12 U.S.C. § 3401(1). Plaintiffs contend that the Money Transfer Business Defendants fall within this definition as "consumer finance institutions located in the United States," Compl., ¶ 65 (citing 12 U.S.C. § 3401(1)), and that therefore, the Government Defendants "violated the RFPA by gaining access to or obtaining copies of the financial information in the TRAC database." Compl., ¶ 71 (citing 12 U.S.C. § 3402). Plaintiffs' theory of liability, therefore, depends on whether money transfer companies are "financial institutions" under Section 3402 of the statute. They are not.

The Supreme Court has observed that "the most salient feature of the [RFPA] is the narrow scope of entitlements it creates." *Jerry T. O'Brien*, 467 U.S. at 745; *see also Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 542 (D.C. Cir. 2015) (quoting same in the course of affirming dismissal of plaintiff's RFPA claim). "Consumer finance institutions" that fall within Section 3401(1)'s definition of "financial institution" are not simply any companies that deal with financial matters and interact with consumers. *See*, *e.g.*, *Young v. Trans Union*, 2012 WL 12844773, at *7 (N.D. Cal. Aug. 29, 2012) (VISA not "financial institution" under Section

3401(1)); *Abdelfattah*, 787 F.3d at 543 (credit reporting agency not "financial institution"); *Winters v. Bd. of County Comm'rs*, 4 F.3d 848, 852 (10th Cir. 1993) (pawnbrokers not "financial institutions"); *Byrd v. GMAC Mortg.*, 2020 WL 4577461, at *3 (D. Colo. Aug. 7, 2020) (credit reporting agency not "financial institution"). Rather, the term has a precise, technical scope. And for multiple reasons, that scope excludes the money transfer businesses at issue here and dooms Plaintiffs' claims against the Federal Defendants.

**1. "Consumer Finance Institutions" Are Companies for Which Provision of Loans to the Public is a Core Function and Purpose of Their Business.**

Two federal courts have carefully considered the scope of the term "consumer finance institution," and both have concluded that it refers only to companies for which "a core function and purpose" is "to provide financing and cash loans to the public." *Commodity Futures Trading Comm'n v. Worth Bullion Group, Inc.*, 717 F.3d 545, 551 (7th Cir. 2013) ("*Worth Bullion*"); *see also FTC v. Sterling Precious Metals, LLC*, 2013 WL 1442180, at *2–5 (S.D. Fl. Apr. 9, 2013) ("*Sterling*") (same).[3] The careful analysis undertaken in these precedents is persuasive and should be adopted here.

**a. Plain Meaning**

To begin, the Court should look to the plain meaning of the relevant text. *United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020) (observing that statutory interpretation begins with "the presumption that Congress intended that the words used be given their plain and ordinary meaning"). Black's Law Dictionary defines a "consumer finance company" as "[a] finance company that deals directly with consumers in extending credit." Black's Law Dictionary (11th ed. 2019); *Worth Bullion Group, Inc.*, 717 F.3d at 550 (citing identical 2009 definition); *Pacheco*, 977 F.3d at 767 ("To determine the ordinary meaning of an undefined term, [the Court] may refer to dictionary definitions.") (citation omitted). Another dictionary, cited by the *Worth Bullion* court, defines "consumer finance company" as "[a] nonbank lender," and elaborates further that "a

[3] *See also Byrd*, 2020 WL 4577461, at *3 (holding that credit reporting agency was not a "financial institution" under the RFPA, relying on the Seventh Circuit's conclusion that "the types of entities covered by the statute 'provide financing' as 'a core function and purpose of such businesses') (citing and quoting *Worth Bullion*, 717 F.3d at 551).

consumer finance company does not receive deposits, but does make loans to customers for business or personal use. It derives its profits from the interest on these loans. It is also called simply a finance company." *Worth Bullion*, 717 F.3d at 550 (quoting The Free Dictionary by Farlex, *available at* http://financial-dictionary.thefree dictionary.com/Consumer+Finance+ Company).

The court in *Sterling*, having also looked to Black's Law definition of "consumer finance company," went on to reason that "the term used in the RFPA is not 'consumer finance company'—it is 'consumer finance *institution*.'" *Sterling*, 2013 WL 1442180, at *3 (emphasis added). The court then considered definitions of the word "institution" in Black's Law Dictionary and the American Heritage Dictionary and concluded "in this circumstance, institution means an established organization that is dedicated to or primarily established for a particular cause or purpose." *Id.* To illustrate, the court observed that while "[f]ew would doubt that Ford fits into the common meaning of . . . an 'automobile manufacturing institution,'" . . . and its financing subsidiary might be a "consumer finance company" under the Black's Law definition, the court reasoned that Ford's incidental provision of credit to consumers to facilitate their purchase of automobiles would not render it a "consumer finance *institution*." *Id.* at *4 (emphasis the court's).

This Court should likewise hold that the plain meaning of the term "consumer finance institutions" excludes money transfer businesses because such businesses do not extend credit to consumers as a core function or purpose. *Worth Bullion*, 717 F.3d at 551. Plaintiffs allege that certain money transfer businesses in this case engage in "lending services" or offer "personal lending," *see* Compl., ¶¶ 7, 10. But those allegations are of no moment. Even if those allegations are true, the Complaint itself acknowledges that lending is not a core feature of these businesses. *Id.*, ¶ 26 (under the heading "How Money Transfer Businesses Work," alleging that "[t]he vast majority of revenue at companies like the [Money Transfer Business] Defendants comes from person-to-person transfers"). Indeed, the very title selected for these companies by Plaintiffs, *i.e.* "Money Transfer Business Defendants," *id.* at 2, reflects that the purpose of these companies is not

"to provide financing and cash loans to the public," *Worth Bullion*, 717 F.3d at 551, but to provide a money transfer service.

This places money transfer businesses beyond the scope of the plain language of the statute Plaintiffs seek to invoke. Because money transfer businesses are not "consumer finance institutions," they do not constitute "financial institution[s]." 12 U.S.C. § 3401(1). Accordingly, Section 3402, which imposes limitations on accessing "the financial records of any customer *from a financial institution*," 12 U.S.C. § 3402 (emphasis added), does not apply to the Federal Defendants' access to TRAC information.[4]

Indeed, in the only prior case of which the Federal Defendants are aware in which a court addressed a claim that the use of TRAC data violated the RFPA, the court expressed skepticism that the statute applies in this setting. *See Escobedo*, 2019 WL 6493943, at *4 (holding, on defendant's motion to suppress based on alleged violation of the RFPA, that "*even if the Act applied here*, there is no right to suppress evidence under it") (emphasis added). The statutory text confirms that the court's doubt was well placed.

**b. Surrounding Statutory Language**

The statutory language surrounding "consumer finance institutions" confirms that money transfer businesses are properly excluded from the scope of this term. "The principle of *noscitur a sociis*—'it is known by its associates' or 'birds of a feather flock together'—instructs that words in statutes are given more precise content by neighboring words." *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1068 (9th Cir. 2022) (citing *Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140 (2017)).

In *Worth Bullion*, the Seventh Circuit invoked this principle in its analysis of "consumer finance institutions": "[i]t is clear that all the referenced entities surrounding the phrase 'consumer finance institution' in the RFPA's definition of 'financial institution,' including banks, card issuers, loan and trust companies, and credit unions, convey considerably more than a tangential or secondary relationship to the field of financing." *Worth Bullion*, 717 F.3d at 551. Rather, a

[4] While Section 3402 imposes limitations on access, Section 3417 enumerates the civil penalties for violations of that provision. *See* 12 U.S.C. §§ 3402, 3417.

primary reason each of these entities exists is to provide financing and cash loans to the general public. *Id.* Applying the same canon of statutory interpretation, the court in *Sterling* agreed: "[t]he entities in the definitional provision of the RFPA all appear to have financing as a core aspect of their business." *Sterling, LLC*, 2013 WL 1442180, at *5.

As in *Worth Bullion*, the nature of the money transfer businesses before the Court in this case "is readily distinguishable from that of the other entities listed in the RFPA's definition of 'financial institution.'" 717 F.3d at 551. For this reason, too, it is apparent that they do not qualify as "consumer finance institutions" under Section 3401 and therefore are not "financial institutions" under Section 3402.

**2. Congress Excluded Money Transfer Businesses from Section 3401's Definition of "Financial Institutions"**

Other provisions of the RFPA confirm that the term "financial institutions," as defined in Section 3401, excludes money transfer businesses. That section provides the relevant definition that generally applies across the RFPA. But in Section 3414, Congress sets forth "special procedures" that, *inter alia*, govern "[a]ccess to financial records for certain intelligence and protective purposes." 12 U.S.C. § 3414, (a). These special procedures apply "only when the government is seeking the customer records of a financial institution in connection with a counterintelligence, terrorism, or Secret Service investigation." *Worth Bullion*, 717 F.3d at 552–53. In that context, where the requirements of Section 3402 expressly *do not* apply, *see* 12 U.S.C. § 3414 (a)(1), Congress incorporates by reference the Bank Secrecy Act's much broader definition of "financial institutions." *Id.* § 3414 (cross-referencing 31 U.S.C. §5312(e)). That definition includes "a dealer in precious metals, stones, or jewels," "a pawnbroker," and, as relevant here:

> a licensed sender of money or any other person who engages as a business in the transmission of currency, funds, or value that substitutes for currency, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system.

31 U.S.C. § 5312. In *Worth Bullion*, the Seventh Circuit reasoned that because the RFPA incorporated this broader definition from the Bank Secrecy Act only in the limited context of

Section 3414, there was no reason to conclude that Congress intended the broader definition to apply outside of that context. 717 F.3d at 552–53. The *Sterling* court agreed. 2013 WL 1442180, at *4 (declining to substitute the broader Bank Secrecy Act definition where Congress had supplied a narrower one as the default definition for the RFPA).

These precedents' conclusions are not only logical, but explicit in the RFPA. Congress provided a narrow definition of "financial institution" to apply across the RFPA, and a broader definition, borrowed from the Bank Secrecy Act, to apply in the specific context of counterintelligence, terrorism, or Secret Service investigations. 12 U.S.C. § 3401 (stating that its definition is operative for the RFPA "except as provided in [12 U.S.C. § 3414]."). The provision on which Plaintiffs rely here—Section 3402— tracks expressly to the narrower, generally applicable definition. And that definition, as explained, excludes money transfer businesses from the meaning of "financial institutions." Under well-settled canons of construction, the result is beyond dispute. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (observing that "where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion")

Indeed, Senator Ron Wyden, whose recent public comments regarding TRAC Plaintiffs incorporate by reference into the Complaint, *see* Compl., ¶ 44 (discussing Senator Wyden's having "raised concerns" about the program in 2022), acknowledged that "money transfer businesses are not subject to the same protections as bank-based transactions under the Right to Financial Privacy Act." *See* Letter from Sen. Ron Wyden, to Joseph V. Cuffari, Inspector General, Department of Homeland Security (Mar. 8, 2022) *available at* https://www.wyden.senate.gov/imo/media/doc/DHS%20IG%20ICE_HSI%20data%20complaint%20final.pdf; *see supra* at 4; *Van Buskirk*, 284 F.3d at 980 (a court may consider documents incorporated by reference into a complaint on a 12(b)(6) motion without converting it into a motion for summary judgment). Senator Wyden's comment confirms what is apparent from the plain language of Section 3401 as well as its broader statutory context: Section 3402 of the RFPA has no application to the facts pled in the Complaint.

* * *

In sum, Plaintiffs claim that the Federal Defendants have improperly obtained or accessed records about Plaintiffs' transactions from money transfer businesses, in violation of the RFPA. *See* Compl., ¶¶ 63–73. In order for that claim to have merit, money transfer businesses must be "financial institutions" as defined in Sections 3401 and 3402. They are not. Plaintiff's claim against the Federal Defendants therefore fails.

## III. CONCLUSION

For the reasons explained herein, the Court should grant the Federal Defendants' motion and dismiss Count I of Plaintiffs' Complaint.

Dated: March 3, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Julia A. Heiman*
JULIA A. HEIMAN, Bar No. 241415
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-8480
Facsimile: (202) 616-8470
julia.heiman@usdoj.gov

*Attorneys for Federal Defendants*