1  SIDLEY AUSTIN LLP
   Sheila A.G. Armbrust (SBN 265998)
2  sarmbrust@sidley.com
   Stephen Chang (SBN 312580)
3  stephen.chang@sidley.com
   555 California Street, Suite 2000
4  San Francisco, CA 94104
   Telephone: (415) 772-1200
5  Facsimile: (415) 772-7400

6  SIDLEY AUSTIN LLP
   Hille R. Sheppard (*pro hac vice*)
7  hsheppard@sidley.com
   One South Dearborn
8  Chicago, IL  60603
   Telephone: (312) 853-7000
9  Facsimile: (312) 853-7036

10 *Attorneys for Defendant*
   *Western Union Financial Services, Inc.*
11

12              **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14                   **OAKLAND DIVISION**

15
   NELSON SEQUEIRA, ORSAY ALEGRIA, and
16 ISMAEL CORDERO,
   individually and on behalf of all others
17 similarly situated,
                                    Plaintiffs,
18
        v.
19
   U.S. DEPARTMENT OF HOMELAND
20 SECURITY; U.S. IMMIGRATION &
   CUSTOMS ENFORCEMENT; WESTERN
21 UNION FINANCIAL SERVICES, INC., a
   Colorado corporation; CONTINENTAL
22 EXCHANGE SOLUTIONS, INC., a Kansas
   corporation, d/b/a RIA FINANCIAL
23 SERVICES and AFEX MONEY EXPRESS;
   VIAMERICAS CORPORATION, a Delaware
24 Corporation; and DOLEX DOLLAR EXPRESS,
   INC., a Texas corporation,
25                                  Defendants.

26

27

28

Civil Case No. 4:22-cv-07996-HSG

**DEFENDANT WESTERN UNION FINANCIAL SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS AS TO WESTERN UNION FINANCIAL SERVICES, INC. PURSUANT TO SECTION 3 OF THE FEDERAL ARBITRATION ACT**

Date:  June 6, 2024
Time: 2:00 PM
Place: Courtroom 2, 4th Floor, Oakland
Judge: Honorable Haywood S. Gilliam, Jr.

Amended Complaint Filed: January 24, 2023

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on June 6, 2024 at 2:00 PM or as soon thereafter as it may be heard, Defendant Western Union Financial Services, Inc.'s ("Western Union") Motion to Stay Proceedings as to Western Union Financial Services, Inc. Pursuant to Section 3 of the Federal Arbitration Act (the "Motion") will be heard by the Honorable Haywood S. Gilliam, Jr. of the U.S. District Court for the Northern District of California in Courtroom No. 2 of the Oakland courthouse, located at 1301 Clay Street, Oakland, California 94612.

Through this Motion, Western Union seeks an order from the Court staying proceedings as to Western Union pending the results of the Plaintiffs' individual arbitrations.

Dated: April 15, 2024

Respectfully submitted,

/s/ Sheila A.G. Armbrust
Sheila A.G. Armbrust
Hille R. Sheppard (*pro hac vice*)
Stephen Chang
SIDLEY AUSTIN LLP

*Attorneys for Defendant*
*Western Union Financial Services, Inc.*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND ............................................................................................................1

    A.   Defendant Western Union.................................................................................1

    B.   Plaintiffs Sequeira and Cordero .......................................................................2

    C.   All Money Transfers Sent From the United States Are Sent Subject to
        Western Union's Terms and Conditions..........................................................3

    D.   This Lawsuit......................................................................................................5

III.  ARGUMENT .................................................................................................................6

    A.   The FAA Embodies the Strong National Policy in Favor of Arbitration. ...............6

    B.   Plaintiffs Agreed to the Terms and Conditions, Which Included an Agreement
        to Arbitrate Disputes. .......................................................................................8

    C.   The Arbitration Agreement Encompasses Plaintiffs' Claims.................................12

IV.   CONCLUSION.............................................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5
*AT&T Mobility v. Concepcion,*
   563 U.S. 333 (2011)..........................................................................................6

6
7
*Bischoff v. DirecTV, Inc.,*
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ...........................................................9

8
*Blanco v. Comcast Cable Commc'ns. Mgmt., LLC,*
   2023 WL 2330685 (D. Colo. Mar. 2, 2023) ...................................................10

9
10
*Blau v. AT & T Mobility,*
   2012 WL 566565 (N.D. Cal. Feb. 21, 2012) ....................................................6

11
12
*Brown v. Dillard's, Inc.,*
   430 F.3d 1004 (9th Cir. 2005) ..........................................................................6

13
*Capital Grp. Commc's Inc. v. Xedar Corp.,*
   2013 WL 4013711 (N.D. Cal. Aug. 5, 2013) .................................................13

14
15
*Carnival Cruise Lines, Inc. v. Shute,*
   499 U.S. 585 (1991).........................................................................................10

16
17
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
   207 F.3d 1126 (9th Cir. 2000) ..........................................................................7

18
*City and County of Denver v. District Court,*
   939 P.2d 1353 (Colo. 1997) ............................................................................13

19
20
*Cordas v. Uber Techs, Inc.,*
   228 F. Supp. 3d 985 (N.D. Cal. 2017) ..............................................................8

21
22
*Cuadras v. MetroPCS Wireless, Inc.,*
   2011 WL 11077125 (C.D. Cal. Aug. 8, 2011)..............................................9, 11

23
*Cummings v. FedEx Ground Package Sys., Inc.,*
   404 F.3d 1258 (10th Cir. 2005) ......................................................................13

24
25
*Doe v George Street Photo & Video, LLC,*
   2016 WL 7337400 (N.D. Cal. Dec. 18, 2016)............................................8, 13

26
*Dominguez v. T-Mobile USA, Inc.,*
   2017 WL 8220598 (C.D. Cal. Jan. 18, 2017) .................................................11

27
28
*E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.,*
   252 P.3d 36 (Colo. App. 2010) .......................................................................10

ii

*Enviro Petroleum, Inc. v. Kondur Petroleum, S.A.*,
  91 F. Supp. 2d 1031 (S.D. Tex. 2000) ........................................................................1

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ...............................................................................................6

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ...................................................................................................7

*Flores v. Coinbase, Inc.*,
  2023 WL 3564756 (C.D. Cal. Apr. 6, 2023) ...........................................................10

*Frazier v. Western Union Co.*,
  377 F. Supp. 3d 1248 (D. Colo. 2019) .....................................................1, 9, 10, 12

*Fuentes v. Dish Network, L.L.C.*,
  2016 WL 11752207 (N.D. Cal. Oct. 13, 2016) .........................................................8

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000) .....................................................................................................7

*Han v. Samsung Telecommunications Am., LLC*,
  2013 WL 7158044 (C.D. Cal. Dec. 16, 2013) ...........................................................8

*Hickerson v. Pool Corp.*,
  2020 WL 5016938 (D. Colo. Aug. 25, 2020) ............................................................8

*Hill v. Gateway 2000, Inc.*,
  105 F.3d 1147 (7th Cir. 1997) .................................................................................10

*Informatech Consulting, Inc. v. Bank of Am. Corp.*,
  2021 WL 242888 (N.D. Cal. Jan. 25, 2021) ...........................................................11

*Johnson v. Clair R. Couturier*,
  2007 WL 3151883 (E.D. Cal. Oct. 26, 2007) ...........................................................6

*Key Brand Ent. Inc. v. Dancap Prods., Inc.*,
  2008 WL 11411725 (C.D. Cal. Sept. 9, 2008) .......................................................13

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011) (*per curiam*) ..............................................................................6

*Krulee v. Receivables Performance Mgmt., LLC*,
  2015 WL 3638546 (N.D. Cal. June 11, 2015) ........................................................11

*LeBoeuf v. NVIDIA Corp.*,
  2019 WL 13210428 (N.D. Cal. Nov. 18, 2019) ......................................................13

*Lee v. Ticketmaster LLC*,
  817 F. App'x 393 (9th Cir. 2020) ............................................................................10

*Loden v. Drake,*
  881 P.2d 467 (Colo. App. 1994) .................................................................................11

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,*
  89 Cal. App. 4th 1042 (2001) ....................................................................................11

*Maxtor Corp. v. Read-Rite (Thailand) Co., Ltd.,*
  2003 WL 24902406 (N.D. Cal. Dec. 4, 2003) ............................................................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614 (1985) ................................................................................................6, 7

*Mohamed v. Uber Tech, Inc.,*
  109 F. Supp. 3d 1185 (N.D. Cal. June 9, 2015) .......................................................11

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992) ..................................................................................................13

*Mortensen v. Bresnan Commc'ns.,*
  722 F.3d 1151 (9th Cir. 2013) ....................................................................................7

*Moses H. Cohen Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ....................................................................................................6, 7

*Mundi v. Union Sec. Life Ins. Co.,*
  555 F.3d 1042 (9th Cir. 2009) ....................................................................................7

*Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.,*
  615 F.3d 1268 (10th Cir. 2010) ................................................................................13

*Oberstein v. Live Nation Entm't Inc.,*
  60 F.4th 505 (9th Cir. 2023) ...................................................................................7, 8

*Paulsen v. CNF Inc.,*
  559 F.3d 1061 (9th Cir. 2009) ....................................................................................8

*Rojas v. Bosch Solar Energy Corp.,*
  443 F. Supp. 3d 1060 (N.D. Cal. 2020) .....................................................................8

*Sharif v. Wellness Int'l Network, Ltd.,*
  376 F.3d 720 (7th Cir. 2004) ......................................................................................6

*Simula, Inc. v. Autoliv, Inc.,*
  175 F.3d 716 (9th Cir. 1999) ......................................................................................6

*Simulados Software Ltd. v. Photon Infotech Private, Ltd.,*
  40 F. Supp. 3d 1191 (N.D. Cal. 2014) ......................................................................13

*Smith v. Multi-Fin. Sec. Corp.,*
  171 P.3d 1267 (Colo. App. 2007) .............................................................................13

iv

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) .............................................................................6

*Vernon v. Qwest Commc'ns. Int'l, Inc.*,
   857 F. Supp. 2d 1135 (D. Colo. 2012) ..................................................................................8, 11

*Wagner v. Stratton Oakmont, Inc.*,
   83 F.3d 1046 (9th Cir. 1996) .................................................................................................7

*Wash. Mut. Bank, F.A. v. Superior Court*,
   24 Cal. 4th 906 (2001) ............................................................................................................8


**Statutes**

9 U.S.C. § 2 ...........................................................................................................................................6

9 U.S.C. § 3 ...........................................................................................................................................1

9 U.S.C. § 4 ...........................................................................................................................................1


**Rules**

Fed. R. Evid. 406 ................................................................................................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

When Plaintiffs Nelson Sequeira and Ismael Cordero (the "Plaintiffs")[1] sent money transfers from Western Union Financial Services, Inc. ("Western Union") agent locations, they agreed to do so pursuant to Western Union's Terms and Conditions. The Terms and Conditions include an agreement to arbitrate any disputes relating to or arising out of their Western Union money transfers. As a result, Plaintiffs' claims against Western Union must be arbitrated. Notably, Western Union's arbitration agreement has been upheld and enforced previously. In *Frazier v. Western Union Co.*, the United States District Court for the District of Colorado held that Western Union's customers agreed to Western Union's Terms and Conditions when they sent money transfers from Western Union agent locations, and that the arbitration agreement included in the Terms and Conditions barred customers from pursuing claims against Western Union in court. 377 F. Supp. 3d 1248 (D. Colo. 2019).

Because Plaintiffs' claims are subject to binding arbitration, this Court should stay this action as to Western Union pursuant to Section 3 of the Federal Arbitration Act ("FAA") until Plaintiffs' individual arbitrations have been completed.[2]

## II.   BACKGROUND

### A.   Defendant Western Union

Western Union is incorporated and headquartered in the State of Colorado. Dkt. 38, First Am. Compl. ("FAC") ¶ 6. Western Union operates the "Western Union Money Transfer System,"

---

[1] Plaintiff Orsay Alegria alleges that he transacted with Defendant money transfer companies other than Western Union, *see* Dkt. 38, First Am. Class Action Compl. ¶ 54.

[2] Western Union is not moving to compel arbitration pursuant to Section 4 of the FAA because Section 4 provides that when the court compels arbitration, such proceedings "shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Here, under the arbitration agreements, the location of the arbitration is a decision for the arbitrator under NAM rules. *See infra* Section II.C. In such a situation, the appropriate course is to stay this action pursuant to Section 3 of the FAA and leave it to Plaintiffs to initiate arbitration in the appropriate forum. *See Enviro Petroleum, Inc. v. Kondur Petroleum, S.A.*, 91 F. Supp. 2d 1031, 1036 (S.D. Tex. 2000) (staying proceedings pursuant to Section 3 of the FAA and stating "it is the duty of Plaintiff to initiate the arbitration proceedings if it wishes to further prosecute its claims against Defendants").

1

DEFENDANT WESTERN UNION FINANCIAL SERVICES, INC.'S MOTION TO STAY PROCEEDINGS PURSUANT TO SECTION 3 OF THE FEDERAL ARBITRATION ACT, CASE NO. 4:22-CV-07996-HSG

which "enable[s] people to send and receive money across borders." *Id.* ¶ 22. As Plaintiffs allege, money transfers involve transfers of money between two individuals:

> To effectuate a money transfer, a sender typically brings cash to a money transfer business's brick and mortar location. A business representative will receive the cash and arrange for a transfer to the location specified by the sender. Once the transaction is processed, the beneficiary or recipient of the transfer need only visit the appropriate branch of a money transfer business, where the money is delivered to them.

*Id.* ¶ 23.

## B. Plaintiffs Sequeira and Cordero

Plaintiffs Sequeira and Cordero each allege that they regularly used Western Union to send money transfers from California to family abroad. *Id.* ¶¶ 53, 55. They allege that they were never informed that information concerning certain of their transactions (*i.e.*, those in amounts greater than or equal to $500) would be produced to the federal government and become part of a searchable database accessible to government agencies. *Id.*

Sequeira sent money transfers in amounts greater than or equal to $500 from Western Union agent locations on 11 occasions between August 2, 2019, and November 15, 2021. *See* Declaration of William Mackintosh ("Mackintosh Dec.," attached as Exhibit A), ¶ 5. Each of these transactions was sent from the Western Union agent location at California Check Cashing Store, 1855 Willow Pass Road, Concord, California. *Id.*

Cordero sent money transfers in amounts greater than or equal to $500 from Western Union agent locations on nine occasions between March 19, 2019, and November 9, 2022. *Id.* ¶ 8. The first of these transactions was sent from the Western Union agent location at 4 S T Wireless, 615 Woodside Road, Redwood City, California; seven of the transactions were sent from the Western Union agent location at Newark Wireless (San Jose), 414 East William Street, San Jose, California; and the ninth transaction was sent from the Western Union agent location at Chavez Supermarket, 2670 Monterey Highway, San Jose, California. *Id.*

**C.  All Money Transfers Sent From the United States Are Sent Subject to Western Union's Terms and Conditions.**

All customers who send money transfers through the Western Union Money Transfer System from Western Union agent locations in the United States, including those sent from the agent locations visited by Sequeira and Cordero, do so subject to Western Union's contractual Terms and Conditions. Declaration of Gabriel Torres ("Torres Dec.," attached as Exhibit B), ¶ 9. For any money transfer sent from a Western Union agent location in the United States between 2019 and 2022—the period during which Plaintiffs sent money transfers in amounts greater than or equal to $500—the customer checked in with a clerk at the agent location in order to initiate the transaction. *Id.* ¶ 6. The clerk inputted information that the customer provided regarding both the sender and the receiver, provided the customer information concerning foreign exchange rates, if applicable, and collected the payment due (including the principal amount to be transferred and any fees). *Id.*

The clerk then printed two copies of a receipt, one that was retained by the Western Union agent location and one for the customer to keep. *Id.* ¶ 7. The receipts included important information concerning the money transfer, such as the recipient's name, which needed to be accurate for the recipient to be able to pick up the money at another Western Union agent location. *Id.* ¶ 8. The receipt also included the Money Transfer Control Number, a 10-digit number that the sender needed to provide to the recipient in order for the recipient to pick up the money. *Id.*

During this same period, Western Union's Terms and Conditions were printed on the backs of the receipts at each of the Western Union agent locations Plaintiffs visited. *See id.* ¶ 9; Declaration of Lisa Sherman ("Sherman Dec.," attached as Exhibit C), ¶ 4.[3] In the first paragraph, in bold and all capital letters, the Terms and Conditions state: "**ALL PORTIONS OF THE SERVICES (U.S. AND NON-U.S.) ARE SUBJECT TO THESE TERMS AND CONDITIONS ("AGREEMENT") AND APPLICABLE LAW.**" Sherman Dec. ¶ 9 & Ex. 2, ¶ 1 (emphasis in original); *see also id.* ¶ 6 & Ex. 1, ¶ 1; *id.* ¶ 12 & Ex. 3, ¶ 1. In Paragraph 4, the

---

[3] In addition, Western Union's website included the Terms and Conditions, and agent locations also displayed signage referencing the Terms and Conditions. Torres Dec. ¶ 10.

3

DEFENDANT WESTERN UNION FINANCIAL SERVICES, INC.'S MOTION TO STAY PROCEEDINGS PURSUANT TO SECTION 3 OF THE FEDERAL ARBITRATION ACT, CASE NO. 4:22-CV-07996-HSG

Terms and Conditions include an arbitration agreement, requiring the parties to arbitrate any

disputes:

> **RESOLUTION OF DISPUTES**: Unless You opt out as set forth below, any dispute arising from or relating to this transaction shall be resolved by final and binding arbitration. The arbitrator shall also decide what is subject to arbitration. The arbitration will be administered by National Arbitration and Mediation ("NAM") under its Comprehensive Dispute Resolution Rules and Procedures, which are available at www.namadr.com/downloads.cfm or by writing to 990 Stewart Ave., 1st Fl., Garden City, NY, 11530, and explain how to initiate arbitration. You will be responsible for up to $125 of the administration fees. Western Union may reduce this amount if you demonstrate hardship. This agreement is governed by the Federal Arbitration Act, and any award shall be subject to judicial confirmation. **Any arbitration shall take place on an individual basis; class actions or arbitrations are not permitted.** If any part of this paragraph is deemed invalid, it shall not invalidate the other parts. If NAM is unavailable, the parties or a court will select another arbitrator. You may opt out of arbitration within 30 days after initiating a transaction by calling 1-800-325-6000 (WU) 1-866-519-0433 (Vigo) or 1-800-515-5505 (OV). IF YOU DO NOT OPT OUT, YOU WILL WAIVE ANY RIGHT TO A TRIAL BY JURY OR JUDGE IN COURT AND ANY RIGHT TO PARTICIPATE IN A CLASS ACTION.

*Id.* ¶ 10 & Ex. 2, ¶ 4 (emphases in original); *see also id.* ¶ 7 & Ex. 1, ¶ 4; *id.* ¶ 13 & Ex. 3, ¶ 4. The

Terms and Conditions also provide that the agreements are "governed by Colorado law without

regard to conflicts of law rules." *Id.* ¶ 15 & Ex. 1, ¶ 8, Ex. 2, ¶ 8, Ex. 3, ¶ 8. They also contain a

severability provision stating that, "[i]f an Agreement provision [were held to be] invalid,

remaining provisions [would] be valid." *Id.*

Sequeira produced copies of certain of his Western Union receipts, which confirm he

received all of the above information. *See* Declaration of Sheila Armbrust ("Armbrust Dec.,"

attached as Exhibit D), Exs. 1–5 (copies of receipts produced by Sequeira).[4] These receipts each

include the sender's name, the recipient's name, and the Money Transfer Control Number. *Id.*

They also include Western Union's Terms and Conditions, including the Resolutions of Disputes

clause and arbitration provision. *Id.*

---

[4] Cordero produced only copies of the front side of certain receipts; he did not produce copies of the back sides of any receipts. Western Union has requested that Cordero also produce copies of the back sides of his receipts.

4

DEFENDANT WESTERN UNION FINANCIAL SERVICES, INC.'S MOTION TO STAY PROCEEDINGS PURSUANT TO SECTION 3 OF THE FEDERAL ARBITRATION ACT, CASE NO. 4:22-CV-07996-HSG

1    The Western Union Money Transfer System is set up so that money transfers sent from

2    Western Union agent locations in the United States are finalized only after the clerk first prints a

3    receipt for the money transfer and provides it to the sender. Sherman Dec. ¶ 4. The receipt is the

4    only mechanism by which a sender receives the Money Transfer Control Number that the sender

5    must provide to the recipient to pick up the transferred money. Torres Dec. ¶ 8. It is also Western

6    Union's standard required business practice that a sender must review and sign a copy of his

7    receipt. *Id.* ¶ 7. Agent locations obtain the signature as proof that the sender authorized the money

8    transfer in that amount. *Id.* If the sender does not agree to the Terms and Conditions, he can cancel

9    the money transfer rather than sign the receipt. *Id.* ¶ 9.

10         **D.    This Lawsuit**

11         Plaintiffs filed this lawsuit on December 12, 2022, Dkt. 1, and filed the operative First

12   Amended Complaint on January 24, 2023, Dkt. 38. Plaintiffs allege that Western Union, three

13   other money transfer businesses, and two federal government Defendants produced money

14   transfer records to law enforcement without advance notice to customers in violation of the federal

15   Right to Financial Privacy Act ("RFPA") and the California Financial Information Privacy Act

16   ("Cal. FIPA").

17         On March 3, 2023, Western Union moved to dismiss with prejudice both the federal and

18   state law claims for failure to state a claim upon which relief can be granted. Dkt. 69. Western

19   Union stated in its motion to dismiss that it was "evaluating bringing a motion to compel

20   arbitration because the terms and conditions governing its money transfer services contain an

21   arbitration clause." *Id.* at 2 n.1. Western Union explained that, at the time, it "lack[ed] key

22   identifying information about Plaintiffs Sequeira and Cordero, the two Plaintiffs who allege they

23   sent money via Western Union." *Id.* Western Union has since obtained the necessary identification

24   information in discovery and has identified the date and location of each instance when Sequeira

25   and Cordero sent money transfers equal to or greater than $500 from Western Union agent

26   locations. *See* Mackintosh Dec. ¶¶ 3–8 & Exs. 1–2.[5]

27   _____

28   [5] Western Union did not waive its right to arbitrate by moving to dismiss Plaintiffs' claims. "[I]t
     is well established that a party does not waive its right to arbitrate merely by filing a motion to

5

DEFENDANT WESTERN UNION FINANCIAL SERVICES, INC.'S MOTION TO STAY PROCEEDINGS PURSUANT TO
SECTION 3 OF THE FEDERAL ARBITRATION ACT, CASE NO. 4:22-CV-07996-HSG

On March 21, 2024, this Court granted Western Union's motion to dismiss Plaintiffs' RFPA claim and denied Western Union's motion to dismiss Plaintiffs' Cal. FIPA claim. Dkt. 116.

## III.  ARGUMENT

### A.  The FAA Embodies the Strong National Policy in Favor of Arbitration.

Under the FAA, a contractual agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This reflects, as the Supreme Court has reiterated time and time again, the "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cohen Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also*, *e.g.*, *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (*per curiam*) ("The [FAA] reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *AT&T Mobility v. Concepcion*, 563 U.S. 333, 344 (2011) ("The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms.") (internal quotation marks omitted). Accordingly, "[t]he standard for demonstrating arbitrability is not high," and agreements to arbitrate "are to be rigorously enforced." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues

---

dismiss." *Blau v. AT & T Mobility*, 2012 WL 566565, at *2 (N.D. Cal. Feb. 21, 2012) (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4017961, at *5 (N.D. Cal. Sept. 9, 2011) ("Nor is the fact that defendants filed motions to dismiss inconsistent with their right to arbitrate."); *Johnson v. Clair R. Couturier*, 2007 WL 3151883, at *6 (E.D. Cal. Oct. 26, 2007) ("[C]ourts are reluctant to find prejudice to the plaintiff who has chosen to litigate, simply because the defendant litigated briefly (*e.g.*, by filing a motion to dismiss or requesting limited discovery) before moving to compel arbitration.") (quoting *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005)). This is especially true here because Western Union specified in its Motion to Dismiss that it "might move to compel arbitration." *Blau*, 2012 WL 566565, at *3; *see* Dkt. 69 at 2 n.1; *see also* Dkt. 102, Joint Initial Case Management Statement and Rule 26(f) Report ("Case Management Statement") at 5 ("Defendant Western Union anticipates filing a motion to compel arbitration."). In addition, Western Union needed discovery in order to identify Plaintiffs and their transactions. *See* Case Management Statement at 6 ("Western Union has propounded limited requests for discovery to identify whether Plaintiffs were customers of Western Union and to evaluate a motion to compel arbitration"). Sequeira made a supplemental production, including copies of the back sides of certain receipts that include Western Union's Terms and Conditions, on March 22, 2024. Armbrust Dec. ¶ 3. As of April 15, 2024, Cordero had not made a supplemental production including copies of the back sides of receipts. *Id.* ¶ 11.

should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

To determine if a dispute is subject to arbitration, the court must decide two issues: (1) "whether a valid arbitration agreement exists" between the parties; and (2) "whether the agreement encompasses the dispute at issue." *Oberstein v. Live Nation Entm't Inc*., 60 F.4th 505, 509–10 (9th Cir. 2023). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

In determining whether the parties agreed to arbitrate, the court applies both the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]," *Mitsubishi Motors Corp.*, 473 U.S. at 626 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24), as well as "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter … , courts generally … should apply ordinary state-law principles that govern the formation of contracts."). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626.

Plaintiffs, as the parties resisting arbitration, "bear[] the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Commc'ns.*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

7

DEFENDANT WESTERN UNION FINANCIAL SERVICES, INC.'S MOTION TO STAY PROCEEDINGS PURSUANT TO SECTION 3 OF THE FEDERAL ARBITRATION ACT, CASE NO. 4:22-CV-07996-HSG

### B. Plaintiffs Agreed to the Terms and Conditions, Which Included an Agreement to Arbitrate Disputes.

Under both California and Colorado law, Plaintiffs assented to Western Union's Terms and Conditions, including the arbitration agreement, before finalizing any money transfer.[6] California and Colorado both apply ordinary state-law contract formation principles to evaluate arbitration agreements, and under California and Colorado law, the key to contract formation is the manifestation of mutual assent. *Cordas v. Uber Techs, Inc.*, 228 F. Supp. 3d 985, 989 (N.D. Cal. 2017) (California law); *Vernon v. Qwest Commc'ns. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012) (Colorado law); *see also Fuentes v. Dish Network, L.L.C.*, 2016 WL 11752207, at *5–6 (N.D. Cal. Oct. 13, 2016) (declining to "resolve the choice of law dispute on questions of formation, because under either California or Colorado law, the outcome is the same," and emphasizing the requirement of the manifestation of mutual consent); *Hickerson v. Pool Corp.*, 2020 WL 5016938, at *5–6 (D. Colo. Aug. 25, 2020) (similar).

Each time Plaintiffs initiated a money transfer of $500 or more through the Western Union Money Transfer System, they received a receipt that contained information regarding the money transfer, including the recipient's name and a 10-digit Money Transfer Control Number. Sherman Dec. ¶ 4; Torres Dec. ¶ 8. At all relevant times, the receipts contained Western Union's Terms and Conditions, including the arbitration agreement, along with the statement that all portions of Western Union money transfer services "are subject to these Terms and Conditions." Sherman

---

[6] Because this case is "a federal question action that involves supplemental jurisdiction over state law claims," the court applies "the choice of law rules of the forum state." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009). Although Western Union's Terms and Conditions specify that the agreements are governed by Colorado law, "the Court must first determine whether Plaintiffs actually agreed to be bound to the choice-of-law provision." *Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1072–73 (N.D. Cal. 2020) (quoting *Han v. Samsung Telecommunications Am., LLC*, 2013 WL 7158044, at *3 (C.D. Cal. Dec. 16, 2013)). In such situations, under California law, "courts apply the three-step governmental interest test, 'analyz[ing] the government interests of the various jurisdictions involved to select the appropriate law.'" *Doe v George Street Photo & Video, LLC*, 2016 WL 7337400, at *3 (N.D. Cal. Dec. 18, 2016) (quoting *Wash. Mut. Bank, F.A. v. Superior Court*, 24 Cal. 4th 906, 914 (2001)). The first step of this test is to analyze "whether the relevant laws of the competing jurisdictions differ"; if they do not, as here, the inquiry ends there. *Maxtor Corp. v. Read-Rite (Thailand) Co., Ltd.*, 2003 WL 24902406, at *4 (N.D. Cal. Dec. 4, 2003); *see also Oberstein*, 60 F.4th at 515 (where competing jurisdictions apply substantially similar rules, courts "need not engage in a detailed choice-of-law analysis").

8

DEFENDANT WESTERN UNION FINANCIAL SERVICES, INC.'S MOTION TO STAY PROCEEDINGS PURSUANT TO SECTION 3 OF THE FEDERAL ARBITRATION ACT, CASE NO. 4:22-CV-07996-HSG

Dec. ¶¶ 4–14 & Ex. 1, ¶¶ 1, 4, Ex. 2, ¶¶ 1, 4, Ex. 3, ¶¶ 1, 4; *see also* Armbrust Dec. ¶ 9 (collecting

citations to the relevant language in Exs. 1–5). Before any money transfer sent could be picked up

by a recipient at another Western Union agent location, Plaintiffs were required to both sign a

copy of the receipt and take the additional step of communicating to the recipient the Money

Transfer Control Number printed on the receipt. Torres Dec. ¶¶ 7–8. In other words, a copy of the

receipt is provided to the Sender before any money transfer is finalized. Sherman Dec. ¶ 4. And

Plaintiffs had the option *not* to go through with the transaction by canceling the money transfer

rather than signing the receipt if they did not assent to Western Union's Terms and Conditions.

Torres Dec. ¶ 9. Plaintiffs also had the option not to provide the recipient the Money Transfer

Control Number necessary for picking up the transferred funds. *See id.* ¶ 8. Simply put, no money

transfer could be sent without Plaintiffs receiving the Terms and Conditions, including the

arbitration agreement, and then afterward taking actions required to allow the recipient to pick up

the transferred money.

These steps manifest Plaintiffs' acceptance of the Terms and Conditions through their

conduct. In *Frazier v. Western Union Co.*, the United States District Court for the District of

Colorado granted a motion to stay in favor of arbitration in similar circumstances as here, holding

that the plaintiffs had assented to Western Union's Terms and Conditions, including the arbitration

agreement, when they received, upon initiating a money transfer transaction, copies of receipts

that included the Terms and Conditions. 377 F. Supp. 3d at 1260–61. Courts applying California

law similarly hold that plaintiffs are contractually bound to arbitrate where they are presented with

terms and conditions in connection with a purchase. *See*, *e.g.*, *Cuadras v. MetroPCS Wireless,

Inc.*, 2011 WL 11077125, at *6 (C.D. Cal. Aug. 8, 2011) (holding that the plaintiff agreed to an

arbitration clause where she received terms and conditions upon initiating service); *Bischoff v.

DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103 (C.D. Cal. 2002) (arbitration agreement enforceable

even though television provider "only provided the arbitration provision … after the parties had

9

DEFENDANT WESTERN UNION FINANCIAL SERVICES, INC.'S MOTION TO STAY PROCEEDINGS PURSUANT TO
SECTION 3 OF THE FEDERAL ARBITRATION ACT, CASE NO. 4:22-CV-07996-HSG

1   already entered into their agreement" and "after [the plaintiff] had purchased the … equipment

2   and after [the defendant] had activated the service" ).[7]

3       Notably, it does not matter whether Plaintiffs actually signed the receipts (even though, per

4   Western Union's standard business practice, they did, *see* Torres Dec. ¶ 7). Under both California

5   and Colorado law, an arbitration agreement need not be signed by either party to find the requisite

6   mutual assent. *Flores v. Coinbase, Inc.*, 2023 WL 3564756, at *3 (C.D. Cal. Apr. 6, 2023) ("An

7   arbitration agreement need only be in writing, and no signature by either party is necessary.");

8   *Blanco v. Comcast Cable Commc'ns. Mgmt., LLC*, 2023 WL 2330685, at *4 (D. Colo. Mar. 2,

9   2023) ("[U]nder Colorado law, 'the lack of signature in and of itself does not invalidate an

10  otherwise enforceable agreement to arbitrate.'") (quoting *E-21 Eng'g, Inc. v. Steve Stock &*

11  *Assocs., Inc.*, 252 P.3d 36, 39 (Colo. App. 2010)). Indeed, in *Frazier*, the fact that some plaintiffs

12  did not recall whether they signed Western Union's receipts was "not material" to whether they

13  were bound by the arbitration agreement; because the plaintiffs *received receipts*, "their conduct

14  evidences assent to [Western Union's] Terms and Conditions." 377 F. Supp. 3d at 1260.

15      Nor does it matter whether Plaintiffs read the Terms and Conditions. Plaintiffs were

16  presented with the Terms and Conditions, including the arbitration agreement, in writing on the

17  back of the receipts provided to them at the time of purchase. *See* Torres Dec. ¶¶ 7, 9; Sherman

18  Dec. ¶¶ 4–14; Armbrust Dec. ¶ 9 & Exs. 1–5. Plaintiffs manifested their assent both by making an

19  affirmative decision to finalize the transaction by telling the recipient the Money Transfer Control

20  Number and by signing the receipt. *See* Torres Dec. ¶¶ 7–9. Plaintiffs therefore are bound by the

21  arbitration agreement therein. *See Lee v. Ticketmaster LLC*, 817 F. App'x 393, 395 (9th Cir. 2020)

22  (enforcing arbitration agreement and holding plaintiff "'cannot avoid the terms of [the] contract on

23  the ground that he … failed to read it before signing,' especially where he 'had a legitimate

24

25  _____

      [7] *See also*, *e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587–88, 593–95 (1991)
26  (enforcing forum selection clause where ticket indicated it was "subject to condition of contract"
    and forum selection clause was in contract's terms and conditions); *Hill v. Gateway 2000, Inc.*, 105
27  F.3d 1147, 1148–49 (7th Cir. 1997) (enforcing arbitration agreement that was part of terms and
    conditions included inside a box, noting that "[w]riting provides benefits for both sides of
28  commercial transactions" and "[c]ashiers cannot be expected to read legal documents to customers
    before ringing up sales").

1  *opportunity* to review it'") (first quoting *Marin Storage & Trucking, Inc. v. Benco Contracting &*

2  *Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001), then quoting *Mohamed v. Uber Tech, Inc.*, 109

3  F. Supp. 3d 1185, 1198 (N.D. Cal. June 9, 2015)); *Vernon*, 857 F. Supp. 2d at 1152 (enforcing

4  arbitration agreement, noting one "cannot demonstrate a lack of mutual assent" and "'avoid

5  contractual obligations by claiming that he or she did not read the agreement'") (quoting *Loden v.*

6  *Drake*, 881 P.2d 467, 469 (Colo. App. 1994)).

7       While Western Union does not have in its possession the signed copies of the receipts

8  executed by Plaintiffs in connection with their money transfers, that is neither surprising nor of

9  legal moment. Western Union agent locations in the United States are typically required to retain

10  signed receipts for six months, and, even then, those documents are generally maintained by the

11  agent locations, not Western Union. Torres Dec. ¶ 11. And, as discussed above, it was Western

12  Union's standard required business practice to ensure disclosure and acceptance of the Terms and

13  Conditions. Again, no money transfer could be finalized, consistent with this standard required

14  business practice, without the sender receiving the Terms and Conditions (including the arbitration

15  agreement) on the receipt. *Id.* ¶¶ 7–9; Sherman Dec. ¶ 4. Evidence that a consumer is required, as

16  a matter of "routine business practice," to accept terms and conditions containing an agreement to

17  arbitrate in connection with a transaction is sufficient on its own to establish a customer's assent to

18  that agreement. *Informatech Consulting, Inc. v. Bank of Am. Corp.*, 2021 WL 242888, at *1 (N.D.

19  Cal. Jan. 25, 2021) (citing Fed. R. Evid. 406); *see also Krulee v. Receivables Performance Mgmt.,*

20  *LLC*, 2015 WL 3638546, at *5 (N.D. Cal. June 11, 2015) (finding the "plaintiff entered into an

21  agreement to arbitrate" based on a declaration attesting company mailed the terms and conditions

22  to all customers); *Dominguez v. T-Mobile USA, Inc.*, 2017 WL 8220598, at *4–5 & n.3 (C.D. Cal.

23  Jan. 18, 2017) (holding the plaintiff assented to arbitration clause where company declarant

24  averred that it was the company's "regular practice and procedure" to, amongst other things,

25  provide customers the service agreement, including the terms and conditions, and require a

26  signature); *Cuadras*, 2011 WL 11077125, at *5–6 (enforcing arbitration agreement, crediting

27  defendant's evidence that "its standard business practice is to provide consumers with a copy of

28  the T & Cs upon initiating service").

In *Frazier*, in support of its motion to stay in favor of arbitration, Western Union submitted declarations from Lisa Sherman, the Western Union employee responsible for overseeing the vendor that prepares receipts (who also submitted a declaration in connection with this Motion), and a Western Union employee familiar with Western Union's procedures that agents follow when they process money transfers. 377 F. Supp. 3d at 1258 & nn. 5–6, 1260. These declarations, like those accompanying this Motion, detailed Western Union's standard business practices and the nature of the receipts at the relevant times, including "that a copy of the Terms and Conditions is included on all receipts given to customers" and that a money transfer would not be finalized unless the customer signed the receipt. *Id.* at 1260. Relying on the declarations, the court held that Western Union presented sufficient evidence of notice of, and the plaintiffs' assent to, Western Union's Terms and Conditions and arbitration agreement, even as to plaintiffs where there was no evidence of actual receipts and where those plaintiffs testified that they did not remember whether they signed receipts. *Id.* 1259–61.

In sum, Western Union has established, both pursuant to Western Union's standard required business practices and via Sequeira's actual receipts, that Plaintiffs were provided Western Union's standard Terms and Conditions, including the arbitration agreement, before proceeding with the money transfers at issue. By signing the receipts to finalize the money transfers and providing recipients the Money Transfer Control Numbers necessary for picking up the transferred funds, Plaintiffs manifested their assent to those Terms and Conditions, including the arbitration agreement contained therein, and a valid contract was formed.

**C.      The Arbitration Agreement Encompasses Plaintiffs' Claims.**

Having established that Plaintiffs agreed to the Terms and Conditions and Western Union's arbitration agreement, the Court must determine whether the dispute at issue falls within the scope of that agreement.[8] To make that determination, the Court "must initially determine

---

[8] Colorado law applies to this question. As noted above, Western Union's Terms and Conditions state that they, including the arbitration agreement, are governed by Colorado law. Sherman Dec. ¶ 15 & Ex. 1, ¶ 8, Ex. 2, ¶ 8, Ex. 3, ¶ 8. "[W]here, as here, the parties have entered into an agreement containing a choice of law provision, California courts [] follow the Restatement" approach, which provides that courts should apply the law of the parties' chosen forum unless (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other

1   whether the arbitration provision is broad or narrow." *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*,

2   615 F.3d 1268, 1274 (10th Cir. 2010) (arbitration agreement governed by Colorado law). Where

3   an arbitration agreement is "broad," there exists "a presumption of arbitrability." *Id.* at 1274

4   (quoting *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005));

5   *see also Key Brand Ent. Inc. v. Dancap Prods.*, Inc., 2008 WL 11411725, at *4 (C.D. Cal. Sept. 9,

6   2008) ("[T]he strong presumption in favor of arbitration is particularly applicable when the

7   arbitration clause is broad.").

8       The arbitration agreement here provides that "*any* dispute *arising from* or *relating to* this

9   transaction shall be resolved by final and binding arbitration." Sherman Dec. ¶¶ 7, 10, 13 & Ex. 1,

10  ¶ 4, Ex. 2, ¶ 4, Ex. 3, ¶ 4 (emphases added). The "ordinary meaning" of the phrase "relating to" is

11  "a broad one." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383–84 (1992); *see also*

12  *Smith v. Multi-Fin. Sec. Corp.*, 171 P.3d 1267, 1270 (Colo. App. 2007) ("When an arbitration

13  clause uses the phrase 'arising out of' or 'relating to,' it is broad in scope. Any doubts regarding

14  the scope of an arbitration clause must be resolved in favor of arbitration.") (citing *City and*

15  *County of Denver v. District Court*, 939 P.2d 1353, 1364 (Colo. 1997)); *Key Brand Entm't*, 2008

16  WL 11411725, at *4 ("The arbitration clause in question here is broad, as evidenced by the use of

17  the terms 'any' and 'arising out of or relating to.'").

18      Here, Plaintiffs' claims relate to and arise from the money transfers that were the subject of

19  the arbitration agreement between Plaintiffs and Western Union because those money transfers

20  form the very core of their claims. Both Sequeira and Cordero allege that Western Union violated

---

21  reasonable basis for the parties' choice," or (2) honoring the parties' choice "would be contrary to

22  a fundamental policy of a state which has a materially greater interest than the chosen state" in the

    issue at dispute. *Doe*, 2016 WL 7337400, at *4 (quoting Restatement (Second) of Conflicts of Law

23  § 187(2)). Here, Western Union has a substantial relationship with Colorado because Western Union

    is incorporated, headquartered, and has its principal place of business in Colorado. FAC ¶ 6; *see*

24  *LeBoeuf v. NVIDIA Corp.*, 2019 WL 13210428, at *7 (N.D. Cal. Nov. 18, 2019) ("A substantial

    relationship exists in a state where a party is domiciled, resides, or is incorporated.") (quoting

25  *Simulados Software Ltd. v. Photon Infotech Private, Ltd.*, 40 F. Supp. 3d 1191, 1197 (N.D. Cal.

    2014)). And Plaintiffs cannot demonstrate that Colorado law conflicts with a fundamental policy of

26  California because "California law and Colorado law, like federal law, strongly favor enforcement

    of arbitration provisions," and under both states' laws, arbitration agreements are to be interpreted

27  liberally, and any doubt is to be resolved in favor of arbitration. *Capital Grp. Commc's Inc. v. Xedar*

    *Corp.*, 2013 WL 4013711, at *3 (N.D. Cal. Aug. 5, 2013) (citing California and Colorado cases). In

28  any event, the result is the same whether Colorado or California law is applied.

13

DEFENDANT WESTERN UNION FINANCIAL SERVICES, INC.'S MOTION TO STAY PROCEEDINGS PURSUANT TO
SECTION 3 OF THE FEDERAL ARBITRATION ACT, CASE NO. 4:22-CV-07996-HSG

the RFPA and Cal. FIPA because Western Union shared the records of these money transfers with the federal government. *See* FAC ¶¶ 53, 55. Therefore, each of the Plaintiffs' claims are subject to binding arbitration.

## IV.     CONCLUSION

For the foregoing reasons, Western Union respectfully requests that this Court grant its Motion to Stay Proceedings as to Western Union pending the results of their individual arbitrations.

Dated: April 15, 2024                                              Respectfully submitted,


                                                                  */s/ Sheila A.G. Armbrust*
                                                                  Sheila A.G. Armbrust
                                                                  Hille R. Sheppard (*pro hac vice*)
                                                                  Stephen Chang
                                                                  SIDLEY AUSTIN LLP

                                                                  *Attorneys for Defendant*
                                                                  *Western Union Financial Services, Inc.*