Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
J. Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Julian Zhu (SBN 342744)
jzhu@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Sejal Zota (*pro hac vice*)
sejal@justfutureslaw.org
Dinesh McCoy (*pro hac vice*)
dinesh@justfutureslaw.org
Daniel Werner (SBN 322310)
daniel@justfutureslaw.org
JUST FUTURES LAW
95 Washington Street, Suite 104-149
Canton, MA 02021
Tel: 617.812.2822

*Attorneys for Plaintiffs and the proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| NELSON SEQUEIRA, ORSAY ALEGRIA, and ISMAEL CORDERO, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>  *v.*<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION & CUSTOMS ENFORCEMENT; WESTERN UNION FINANCIAL SERVICES, INC., a Colorado corporation; CONTINENTAL EXCHANGE SOLUTIONS, INC., a Kansas corporation, d/b/a RIA FINANCIAL SERVICES and AFEX MONEY EXPRESS; VIAMERICAS CORPORATION, a Delaware Corporation; and DOLEX DOLLAR EXPRESS, INC., a Texas corporation,<br><br>    *Defendants*. | Case No. 4:22-cv-07996-HSG<br><br>**PLAINTIFFS NELSON SEQUEIRA AND ISMAEL CORDERO'S OPPOSITION TO DEFENDANT WESTERN UNION'S MOTION TO STAY**<br><br>Hearing Date: June 6, 2024<br>Time: 2:00 PM<br>Place: Courtroom 2, 4th Floor, Oakland<br>Judge: Hon. Haywood S. Gilliam, Jr. |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

III.    ARGUMENT ........................................................................................................ 5

        A.      Western Union Waived Any Right to Arbitration. ................................... 6

                1.      Western Union Had Knowledge of its Arbitration Clause................... 7

                2.      Western Union Acted Inconsistently with Its Purported Arbitration Rights. ......... 9

        B.      Western Union Has Failed to Establish Plaintiffs' Manifestation of Assent to the
                Arbitration Clause. ................................................................................... 11

IV.     CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ajamian v. CantorCO2e, L.P.*,
      203 Cal. App. 4th 771 (2012) ............................................................................ 13

*Anderson v. Starbucks Corp.*,
      No. 20-cv-01178-JD, 2022 WL 797014 (N.D. Cal. Mar. 16, 2022)................................ 7, 10

*Apple Inc. v. Samsung Elecs. Co.*,
      888 F. Supp. 2d 976 (N.D. Cal. 2012) ............................................................... 14

*Armstrong v. Michaels Stores, Inc.*,
      59 F.4th 1011 (9th Cir. 2023) ...................................................................... 6, 7, 9

*Attia v. Oura Ring, Inc.*,
      No. 23-cv-03433-HSG, 2024 WL 1382464 (N.D. Cal. Apr. 1, 2024).............................. 6, 12

*Beeman v. Anthem Prescription Mgmt., LLC*,
      689 F.3d 1002 (9th Cir. 2012)........................................................................ 14

*Blau v. AT&T Mobility*,
      No. C 11-00541 CRB, 2012 WL 566565 (N.D. Cal. Feb. 21, 2012).............................. 10

*Casola v. Dexcom, Inc.*,
      98 F.4th 947 (9th Cir. 2024) ......................................................................... 14

*City of Big Bear Lake v. Cohen*,
      12 Cal. App. 5th 922 (2017) ......................................................................... 13

*Com. Factors Corp. v. Kurtzman Bros.*,
      131 Cal. App. 2d 133 (1955)......................................................................... 12

*Doan v. Nhan Hoa Comprehensive Health Care Clinic, Inc.*,
      No. G055323, 2018 WL 6166628 (Cal. Ct. App. Nov. 26, 2018) ......................... 13

*Domestic Linen Supply Co. v. LJT Flowers, Inc.*,
      58 Cal. App. 5th 180 (2020) ......................................................................... 13

*FBC Mortg., LLC v. Skarg*,
      No. 23-cv-00143-CRB, 2023 WL 6933359 (N.D. Cal. Oct. 19, 2023) ............................. 9, 10

*Flores v. Coinbase, Inc.*,
      No. 22-cv-8274-MWF(KS), 2023 WL 3564756 (C.D. Cal. Apr. 6, 2023)........................... 14

*Green Tree Fin. Corp.-Ala. v. Randolph*,
      531 U.S. 79 (2000) .................................................................................... 6

*Gutierrez v. Autowest, Inc.*,
    114 Cal. App. 4th 77 (2003) ................................................................................ 12

*Hansen v. LMB Mortg. Servs., Inc.*,
    1 F.4th 667 (9th Cir. 2021) ........................................................................... 12, 15

*Hill v. Xerox Bus. Servs., LLC*,
    59 F.4th 457 (9th Cir. 2023) ........................................................................ 6, 7, 9

*Homedics, Inc. v. Valley Forge Ins. Co.*,
    315 F.3d 1135 (9th Cir. 2003) ............................................................................. 11

*In re Google Assistant Priv. Litig.*,
    No. 19-CV-04286-BLF, 2024 WL 251407 (N.D. Cal. Jan. 23, 2024) ..................................... 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. C 11-0058 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) ........................................ 10

*Johnson v. Clair R. Couturier*,
    No. 2:05-cv-02046-RRBKJM, 2007 WL 3151883 (E.D. Cal. Oct. 26, 2007) ...................... 10

*Klink v. ABC Phones of N.C., Inc.*,
    No. 20-cv-06276-EMC, 2021 WL 3709167 (N.D. Cal. Aug. 20, 2021) ............................. 15

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) ................................................................... 11, 12, 15

*Mani v. ADT Sec. Sys. W., Inc.*,
    No. 07-cv-0587-JAH(BLM), 2008 WL 11336912 (S.D. Cal. Sept. 3, 2008) ....................... 15

*Martin v. Wells Fargo Bank, N.A.*, No. C 12-06030 SI, 2013 WL 6236762 (N.D. Cal.
    Dec. 2, 2013) ...................................................................................................... 14

*Martin v. Yasuda*,
    829 F.3d 1118 (9th Cir. 2016) ..................................................................... 9, 10, 11

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022) .............................................................................................. 6

*Mortensen v. Bresnan Commc'ns, LLC*,
    722 F.3d 1151 (9th Cir. 2013) ............................................................................... 6

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ............................................................................. 11

*Norcia v. Samsung Telecomms. Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017) ......................................................................... 6, 12

*Romo v. Y-3 Holdings, Inc.*,
   87 Cal. App. 4th 1153 (2001) ............................................................. 13

*Sellers v. JustAnswer LLC*,
   73 Cal. App. 5th 444 (2021) ............................................................... 13

*Sequoia Benefits & Ins. Servs., LLC v. Constantini*,
   553 F. Supp. 3d 752 (N.D. Cal. 2021) ............................................. 9, 10

*Stickles v. Atria Senior Living, Inc.*,
   No. C 20-09220 WHA, 2023 WL 2062949 (N.D. Cal. Feb. 16, 2023) ............................ 9, 10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ........................................................................... 11

*Turpin v. Learning With a Difference, Inc.*,
   No. B314732, 2022 WL 17413396 (Cal. Ct. App. Dec. 5, 2022) ......................... 13

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
   871 F.3d 791 (9th Cir. 2017) ............................................................. 11

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
   25 Cal. App. 3d 987 (1972) .................................................................. 12

1

## I.     __INTRODUCTION__

2       After sixteen months of litigation—including a merits determination on a motion to dismiss—

3   Defendant Western Union Financial Services, Inc. ("Western Union"), now moves to stay this

4   litigation based on arbitration agreements it purportedly entered with Plaintiffs Nelson Sequeira and

5   Ismael Cordero.[1] A defendant may not wait and see how litigation goes, however, before asserting a

6   right to arbitration. Based on its mistaken belief that it would prevail in full on a motion to dismiss,

7   Western Union asked Plaintiffs to consent to sequence a motion to dismiss before a motion to compel

8   arbitration. Plaintiffs declined, and, despite Western Union's prognostications, the Court ultimately

9   allowed Plaintiffs' claims to proceed against it in part. Now that its tactical decision did not go

10  according to plan, Western Union wishes to seek refuge from this Court's rulings in private

11  arbitration. By choosing this course of action, Western Union waived its right to enforce the

12  purported arbitration agreements now.

13      Additionally, even if Western Union had not waived its right to enforce the purported

14  arbitration agreements, it has failed to establish that Plaintiffs ever agreed to arbitration. Western

15  Union points to an arbitration clause contained in the Terms and Conditions printed on the back of

16  transaction receipts given to Western Union customers. But the receipts are unsigned (despite

17  containing blank lines for signatures), and even if they had been signed, nobody expects the

18  receipts—which are provided only after a transaction is completed—to be contracts in disguise. In

19  such circumstances, California courts require a showing of conspicuousness before hidden

20  contractual terms may be enforced, and the arbitration clause here is inconspicuous. Consequently,

21  Western Union has failed to show that Plaintiffs manifested their assent to be bound by the arbitration

22  clause.

23      Whether for waiver or for failure to establish the existence of an agreement to arbitrate,

24  Western Union's motion to stay should be denied.[2]

25

---

26  [1]     Western Union's motion seeks to stay this litigation only as between itself and Plaintiffs
    Sequeira and Cordero; it does not seek to stay the litigation as to any other defendant or plaintiff. Dkt.
27  119 at 1 & n.1. As used in this brief, "Plaintiffs" refers only to Mr. Sequeira and Mr. Cordero.
    [2]     Alternatively, and as explained below, in the event this Court finds that resolution of Western
28  Union's motion depends on the determination of disputed fact questions, the motion should be held in
    abeyance pending a trial on arbitrability. Plaintiffs demand a jury for any such trial.

1

## II.   **BACKGROUND**

2        Plaintiffs used Western Union to send money from California to their families abroad. *See*

3   dkt. 38 ¶¶ 53, 55. In December 2022, they filed a two-count complaint alleging that Western Union

4   violated state and federal law by disclosing details of their transactions to various government

5   agencies without consent. Dkt. 1. In March 2023, Western Union moved to dismiss Plaintiffs' claims

6   against it on the merits. Dkt. 69. Specifically, Western Union argued (1) that it was not a "financial

7   institution" and the state of Arizona was not a "government authority" under the federal Right to

8   Financial Privacy Act, (2) that its disclosures were protected by a safe harbor in the federal Bank

9   Secrecy Act, and (3) that Plaintiffs' lacked standing under the California Unfair Competition Law

10  and that Western Union's disclosures fell within various exceptions in the California Financial

11  Information Privacy Act. Western Union sought dismissal with prejudice. *Id*. at 6–14.

12       The motion to dismiss was fully briefed and argued, and this Court entered an 18-page order

13  granting the motion in part with leave to amend and denying the motion in part. Dkt. 116. Now,

14  sixteen months after this litigation began, and more than a year after filing its motion to dismiss on

15  the merits, Western Union seeks to stay this litigation in favor of arbitration. In support of its motion,

16  Western Union points to an arbitration clause contained in Terms and Conditions on the back of

17  receipts provided to Plaintiffs after their money transfer transactions were completed. As an example,

18  here is a copy of the front of one receipt for a money transfer by Plaintiff Sequeira:

19

20

21

22

23

24

25

26

27

28

1  Dkt. 119-4 at 1–5.

2  And here's a copy of the Terms and Conditions on the back, with the arbitration clause magnified:

Dkt. 119-4 at 6–9 (magnification added). Western Union asserts that it requires its agents to have

customers sign these receipts, dkt. 119-14 at ¶ 7, but it presents no evidence that this requirement

was followed in practice, with Plaintiffs or otherwise.

## III.  ARGUMENT

Western Union begins its argument by invoking a supposed "strong national policy in favor

of arbitration." Dkt. 119 at 6 (cleaned up). But as the Supreme Court recently made clear, there is no

national policy—strong or otherwise—favoring arbitration. *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014–15 (9th Cir. 2023) (discussing *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)). Rather, "[t]he Court in *Morgan* clarified that the pro-arbitration 'federal policy is about treating arbitration contracts like all others, not about fostering arbitration.'" *Id*. at 1014 (quoting *Morgan*, 596 U.S. at 418). "Put differently, the pro-arbitration federal policy is to make arbitration agreements as enforceable as other contracts, but not more so." *Id*. (quotations omitted).

Here, Western Union's attempt to stay this litigation based on purported arbitration agreements with Plaintiffs fails for two reasons equally applicable to any kind of contract: waiver and lack of assent. First, Western Union waived any right it may have had to rely on the arbitration clause in its Terms and Conditions by acting inconsistently with that right—most notably by seeking judicial resolution of the merits through a motion to dismiss based on its belief it would more efficiently dispose of the litigation that way. Second, even if Western Union had not waived its right to rely on the arbitration clause in the Terms and Conditions, it has failed to establish that Plaintiffs manifested their assent to be bound by those terms. Either way, Western Union's motion to stay should be denied.[3]

### A.    Western Union Waived Any Right to Arbitration.

A party waives its right to arbitration—as with any contractual right—when "(1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023). The Ninth Circuit previously required a third element to waive

---

[3]    Western Union also asserts that "Plaintiffs, as the parties resisting arbitration, bear the burden of proving that the provision is unenforceable." Dkt. 119 at 7 (quotations and citation omitted). But in contrast to the cases cited by Western Union, Plaintiffs here aren't resisting arbitration on the grounds that something about the arbitration clause renders it unenforceable. *Cf. Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1156–57 (9th Cir. 2013) (evaluating whether arbitration clause was unconscionable or void); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90–92 (2000) (evaluating whether arbitration clause was unenforceable because of large arbitration costs). Rather Plaintiffs are resisting arbitration on the grounds of waiver and/or lack of assent. As to the former, Plaintiffs bear the burden of establishing that Western Union waived its right to rely on the purported arbitration agreements. *See Armstrong*, 59 F.4th at 1014–15. But as to the latter, Western Union bears the burden of establishing the existence of an agreement to arbitrate. *See Attia v. Oura Ring, Inc.*, No. 23-cv-03433-HSG, 2024 WL 1382464, at *2 (N.D. Cal. Apr. 1, 2024) (citing *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017)).

1  arbitration rights: prejudice to the person opposing arbitration. *Id*. at 468. The Supreme Court in

2  *Morgan*, however, eliminated the prejudice requirement as an inappropriate "'special' rule favoring

3  arbitration." *Armstrong*, 59 F.4th at 1014. Consequently, Ninth Circuit precedent applying the first

4  two elements (knowledge and inconsistent acts) remains good law but is abrogated by *Morgan* to the

5  extent it requires a showing of prejudice. *Hill*, 59 F.4th at 460; *Armstrong*, 59 F.4th at 1015. Western

6  Union's brief fails to acknowledge *Morgan*, and, as explained below, relies exclusively on now-

7  abrogated authority.

8      Here, the two elements of waiver are present: Western Union had knowledge of its purported

9  right to have this dispute arbitrated rather than litigated, but it acted inconsistently with that right.

10              **1.      Western Union Had Knowledge of its Arbitration Clause.**

11      It cannot seriously be contended that Western Union lacked knowledge of the right to

12  arbitration contained in its Terms and Conditions. As Western Union contends, "[a]ll customers who

13  send money transfers through the Western Union Money Transfer System from Western Union

14  agent locations in the United States . . . do so subject to Western Union's contractual Terms and

15  Conditions," which contain the arbitration clause on which Western Union now relies. Dkt. 119 at 3.

16  There's no reason why Western Union wouldn't have been aware of its own arbitration clause—to

17  which it asserts all customers are bound—from the very start of this litigation. *See Anderson v.

18  Starbucks Corp.*, No. 20-cv-01178-JD, 2022 WL 797014, at *3 (N.D. Cal. Mar. 16, 2022)

19  ("Starbucks does not suggest that it was unaware of its own arbitration agreements with the named

20  plaintiffs, which pre-dated the filing of the original complaint[.]"). Indeed, Western Union drafted

21  the Terms and Conditions, and "[k]nowledge of a contractual right to arbitrate is imputed to the

22  contract's drafter." *In re Google Assistant Priv. Litig.*, No. 19-CV-04286-BLF, 2024 WL 251407, at

23  *4 (N.D. Cal. Jan. 23, 2024) (quotations omitted).

24      Western Union claims in a footnote that it "needed discovery in order to identify Plaintiffs

25  and their transactions." Dkt. 119 at 5–6 n.5. But that doesn't make sense—Plaintiffs were identified

26  in the original and First Amended Complaints as customers of Western Union, dkt. 1 ¶¶ 50, 52; dkt.

27  38 ¶¶ 53, 55, and, according to Western Union, all customers are subject to its arbitration clause.

28  There's no reason to think it did not or could not know from the outset of its purported right to seek

1   to stay this litigation in favor of arbitration.

2          To the contrary, it certainly knew. Western Union's counsel requested to meet and confer

3   with Plaintiffs' counsel on February 3, 2023 to convey its belief that Plaintiffs were bound by

4   arbitration agreements.  Declaration of Yaman Salahi ("Salahi Decl.") ¶ 2.  However, counsel stated

5   that, in Western Union's view, it would be more efficient to simply have the court adjudicate a

6   motion to dismiss before attempting to compel arbitration, given its stated confidence that Western

7   Union's arguments would prevail in their entirety.  *Id.*  Plaintiffs responded stating they would

8   consider that proposal, subject to certain conditions. Plaintiffs told Western Union's lawyers that

9   "[i]f something along these lines [of the proposed conditions] is not acceptable, then your client

10  should decide what forum it wishes to litigate in."  *Id.*  Western Union would not agree to the

11  conditions, and renewed its request for Plaintiffs to consider phasing a motion to dismiss before a

12  motion to compel arbitration during a Rule 26(f) conference convened on February 10, 2023.  *Id.* ¶

13  3.  On February 13, 2023, Plaintiffs rejected Western Union's proposal, explaining that it would

14  "cause inordinate delay to the proceedings, if, for example, the case is held up for an appeal related

15  to a merits decision, only to be followed by appeals related to an arbitration motion."  *Id.*  Thus,

16  Western Union believed that Plaintiffs were subject to arbitration agreements no later than early

17  February 2023, and could (and should) have moved to compel at that time.

18         Even if Western Union needed further information from Plaintiffs (such as their addresses

19  and phone numbers) to confirm that they were customers, *see* dkt. 119-7 at ¶¶ 3, 6, 7 (declaration

20  reporting search of Western Union databases for transactions by name, address, and phone number),

21  Plaintiffs provided that information on March 16, 2023 in response to Western Union's February 24,

22  2023 interrogatory requests. Salahi Decl. ¶ 4. That was over a year before Western Union filed the

23  present motion to stay pending arbitration, and only two weeks after it filed its motion to dismiss—

24  plenty of time to assert its right to arbitration instead of first seeking to adjudicate its motion to

25  dismiss.

26         The first element of waiver—Western Union's knowledge of its purported arbitration

27  agreement with Plaintiffs—is met.

28

### 2. Western Union Acted Inconsistently with Its Purported Arbitration Rights.

The other element of waiver is also satisfied. Western Union acted inconsistently with its purported arbitration rights, most notably by filing a motion to dismiss Plaintiffs' claims on the merits. "There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitration; rather [courts] consider the totality of the parties' actions." *Hill*, 59 F.4th at 471. That said, this element is satisfied "when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Id.* Here, Western Union did precisely that. It sought judicial resolution of the merits of Plaintiffs' claims through a motion to dismiss, and did so specifically because it believed it would win—and that it would therefore be more efficient to bank on a motion to dismiss, rather than divert resources to litigating a motion to compel arbitration. Salahi Decl. ¶ 2–3. Only now—more than a year after filing its motion to dismiss and after this Court's ruling on the merits of Plaintiffs' claims upset Western Union's gamble—does Western Union seek to enforce its arbitration clause.

"When defendants move for dismissal with prejudice on a key merits issue that would preclude relief as to one or more of plaintiffs' claims, as they did here, they are seeking a ruling on the merits." *Martin v. Yasuda*, 829 F.3d 1118, 1126 n.4 (9th Cir. 2016); *Hill*, 59 F.4th at 476 (quoting *Martin*). Taking a stab in court at "the legal heart" of a case is an act inconsistent with a right to arbitrate. *Hill*, 59 F.4th at 473; *see also Armstrong*, 59 F.4th at 1015 ("Obviously, seeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum.") (quotations and alterations omitted); *FBC Mortg., LLC v. Skarg*, No. 23-cv-00143-CRB, 2023 WL 6933359, at *3–4 (N.D. Cal. Oct. 19, 2023) (defendants' filing "a motion to dismiss central claims in this case" was an intentional act inconsistent with their right to arbitrate); *Sequoia Benefits & Ins. Servs., LLC v. Constantini*, 553 F. Supp. 3d 752, 759 (N.D. Cal. 2021) (motion to dismiss going to the merits of plaintiff's claims "demonstrate[d] that defendants acted inconsistently with their arbitration right"). If Western Union had won the motion to dismiss, "the idea of arbitration would have sunk without trace." *Stickles v. Atria Senior Living, Inc.*, No. C 20-09220 WHA, 2023 WL 2062949, at *2 (N.D. Cal. Feb. 16, 2023). "Defendants may not wait to

see how the judicial winds blow before reversing course towards arbitration." *Id*. Here, Western

Union "waited to see the outcome and availed [itself] of a potential favorable judicial ruling. This

was inconsistent with asserting the right to arbitrate." *Id*.

Western Union argues—again, in a footnote—that a party does not waive its right to arbitrate

simply by filing a motion to dismiss. Dkt. 119 at 5–6 n.5. All the cases on which Western Union

relies, however, were decided before *Morgan* and invoked the prejudice prong that *Morgan*

eliminated. *See Blau v. AT&T Mobility*, No. C 11-00541 CRB, 2012 WL 566565, at *3 (N.D. Cal.

Feb. 21, 2012) ("[A]lthough [plaintiff] participated in this litigation for 'nearly a year' before

Defendants moved to arbitrate, … the Court concludes that he has not been prejudiced by the

delay."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-0058 SI, 2011 WL 4017961, at *5

(N.D. Cal. Sept. 9, 2011) ("The Court also finds that [plaintiff] will not be prejudiced by proceeding

to arbitration after having engaged in limited substantive engagement with this case."); *Johnson v.

Clair R. Couturier*, No. 2:05-cv-02046-RRBKJM, 2007 WL 3151883, at *6 (E.D. Cal. Oct. 26,

2007) ("The minimal activity engaged in by [defendant] hardly reaches the level that has been found

to be prejudicial."). In any case, even if *some* motions to dismiss aren't inconsistent with a right to

arbitration, the motion here—seeking dismissal with prejudice on the merits of Plaintiffs' claims—

was. *See Martin*, 829 F.3d at 1125 ("[A]lthough filing a motion to dismiss that does not address the

merits of the case is not sufficient to constitute an inconsistent act, seeking a decision on the merits

of an issue may satisfy this element."); *Sequoia*, 553 F. Supp. 3d at 759 (same, quoting *Martin*).

Western Union fails to recognize or disclose that this line of cases has been overruled by *Morgan*.

Nor, contrary to Western Union's assertion, does it matter that Western Union noted in its

motion to dismiss that it was "evaluating bringing a motion to compel arbitration." Dkt. 69 at 2 n.1.

As the Ninth Circuit has repeatedly explained, "[a] statement by a party that it has a right to

arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Hill*, 59 F.4th at 471

(quoting *Martin*, 829 F.3d at 1125); *see also Anderson*, 2022 WL 797014, at *3 (finding it

insufficient to "sprinkle[] a few references to arbitration in some docket filings," citing *Martin*).

Simply put, "[n]othing prevented [Western Union] from filing a motion to compel arbitration

immediately," when this action was filed at the end of 2022. *FBC Mortg.*, 2023 WL 6933359, at *3.

1    "A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision

2    on the merits before the district court." *Martin*, 829 F.3d at 1125 (quotation omitted). Yet that is

3    exactly what Western Union did. It admitted as much in the parties' Joint Initial Case Management

4    Statement and Rule 26(f) Report in May of 2023:

> Defendant Western Union anticipates filing a motion to compel arbitration. ***Western Union has requested that Plaintiffs agree to a schedule to brief any motion to compel arbitration with deadlines after the Court rules on the Defendants' pending motions to dismiss.*** Western Union made this request in order to avoid unnecessary briefing should the Court grant the motions to dismiss.

Dkt. 102 at 5–6 (emphasis added). That admission in May 2023 is consistent with what Western

Union had already told Plaintiffs in February of that year about its tactical approach. *See* Salahi

Decl. ¶¶ 2–3. Western Union's knowing decision to seek dismissal of Plaintiffs' claims on the merits

before seeking to enforce its arbitration clause waived its right to do so now. For this reason alone,

the motion to stay should be denied.

### B. Western Union Has Failed to Establish Plaintiffs' Manifestation of Assent to the Arbitration Clause.

Waiver aside, Western Union's motion to stay should be denied because it has failed to

establish that Plaintiffs manifested their assent to arbitration. It is a "basic precept that arbitration is a

matter of consent, not coercion." *United States ex rel. Welch v. My Left Foot Children's Therapy,*

*LLC*, 871 F.3d 791, 796 (9th Cir. 2017) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559

U.S. 662, 681 (2010)). In other words, litigants cannot be compelled to arbitrate disputes where there

was no agreement to arbitrate. Whether parties have formed an agreement to arbitrate is controlled

by state contract law. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). The

state whose law governs the contract formation questions here is California.[4]

---

[4]    Western Union notes that there is no relevant difference between California and Colorado law. *See* dkt. 119 at 8 n.6. Consequently, California law applies. *See Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003). Western Union is also correct that the Terms and Conditions' invocation of Colorado law does not change that. *See* Dkt. 119 at 8 n.6; *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("[W]hether the choice of law provision applies depends on whether the parties agreed to be bound by [defendant's] Terms of Use in the first place…. [W]e need not engage in this circular inquiry because both California and [foreign] law dictate the same outcome.").

"[U]nder California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565. "This principle of knowing consent applies with particular force to provisions for arbitration." *Id.* at 566 (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972). Thus, "[i]f a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto." *Id.* (quoting *Com. Factors Corp. v. Kurtzman Bros.*, 131 Cal. App. 2d 133, 136 (1955)).

As noted above, *supra* note 3, Western Union bears the burden of establishing the existence of an agreement to arbitrate. *See Attia*, 2024 WL 1382464, at *2 (citing *Norcia*, 845 F.3d at 1283). Whether Western Union has satisfied its burden is resolved on a summary judgment standard, because granting its motion to stay litigation in deference to an arbitration agreement would be "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Here, Western Union points to an arbitration clause in the Terms and Conditions printed on the back of money transfer receipts, dkts. 119-2 at 4–7, 119-3 at 5–8, 119-4 at 6–9, 119-5 at 6–9, 119-6 at 6–9, and—though the copies it presents to this Court are unsigned—asserts that it requires its third-party agents to have customers sign the receipts, dkt. 119-14 ¶ 7. This evidence is insufficient to satisfy Western Union's burden of establishing that Plaintiffs agreed to arbitration.

"[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Knutson*, 771 F.3d at 566 (quoting *Windsor Mills*, 25 Cal. App. 3d at 993). Here, the Terms and Conditions containing the arbitration clause were "particularly inconspicuous," printed on the back of receipts in small-point, densely-packed type. *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 89 (2003) ("The arbitration clause was particularly inconspicuous, printed in eight-point typeface on the opposite side of the signature page of the lease."). Where—as here—an arbitration clause is "hidden in a thicket of fine print" "on the back of [an] agreement . . . filled from top to bottom with closely spaced lines of small type," even a party's signature on the front side of the document does not create an agreement to arbitrate. *Domestic Linen*

1    *Supply Co. v. LJT Flowers, Inc.*, 58 Cal. App. 5th 180, 185 (2020).

2          Additionally, the receipts themselves were not obviously contractual documents. Indeed,

3    rather than being labelled a "Contract" or an "Agreement," they were titled simply

4    "RECEIPT/RECIBO" (followed by the words "Thank you/Gracias"). Dkts. 119-2, 119-3 at 1, 119-4

5    at 1, 119-5 at 1, 119-6 at 1. They are handed to customers after the typical consumer would

6    understand the transaction to be complete, with no further action necessary. There's no reason why a

7    Western Union customer presented with a receipt for a money transfer, after completing the

8    transaction, would expect that the receipt was actually a contract—especially when, as Western

9    Union asserts—customers were asked for their signature simply "as proof that the sender authorized

10   the money transfer in that amount." Dkt. 119-14 ¶ 7. Like purchasing flowers or a pair of socks, a

11   money transfer is "a transaction in which most consumers would not expect to be bound by

12   contractual terms." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 464–65 (2021).

13         Regardless, even if the receipts were more obviously contracts and the arbitration clause in

14   the Terms and Conditions more conspicuous, Western Union has failed to establish that Plaintiffs

15   did anything to manifest their assent to be bound by those terms. Notably, Western Union has failed

16   to produce any signed copies of the receipts. "The general rule is that a contract is not binding until

17   both parties sign it." *City of Big Bear Lake v. Cohen*, 12 Cal. App. 5th 922, 931 (2017). Here, while

18   the receipts Western Union submitted with its motion contain lines for signatures from both Western

19   Union and the customer, those lines are blank. Dkts. 119-2 at 2, 119-3 at 3, 119-4 at 3–4, 119-5 at 3,

20   119-6 at 3. Where a document contemplates that the parties will sign it (by, for example, including

21   blank lines for signatures), it lacks mutual assent—and therefore forms no contract—if it remains

22   unsigned. *See, e.g., Romo v. Y-3 Holdings, Inc.*, 87 Cal. App. 4th 1153, 1155–60 (2001) (no

23   agreement to arbitrate where employee's signature line in arbitration clause was left blank); *Ajamian

24   v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 776, 804–05 (2012) (same); *Doan v. Nhan Hoa

25   Comprehensive Health Care Clinic, Inc.*, No. G055323, 2018 WL 6166628, at *2 (Cal. Ct. App.

26   Nov. 26, 2018) (same); *Turpin v. Learning With a Difference, Inc.*, No. B314732, 2022 WL

27   17413396, at *3–4 (Cal. Ct. App. Dec. 5, 2022) (no assent where arbitration agreement called for but

28

did not contain signatures).[5]

Rather than producing copies of signed arbitration agreements, Western Union presents only the declaration of Gabriel Torres, a Western Union Manager for Product and Platform Delivery, who states that "Western Union requires its agent locations in the United States to have the sender review and sign the receipt." Dkt. 119-14 ¶¶ 2, 7. But even if that general policy exists, Western Union presents no evidence that it took any steps to enforce it with respect to the third-party agent locations at which Plaintiffs transacted, or that its agents actually followed it with respect to Plaintiffs.  *See Martin v. Wells Fargo Bank, N.A.*, No. C 12-06030 SI, 2013 WL 6236762, at *3 (N.D. Cal. Dec. 2, 2013) (denying motion to compel arbitration where defendant introduced evidence of its standard practices, but none demonstrating that the policy was "actually" undertaken with respect to the plaintiff). Furthermore, to the extent Western Union lacks direct evidence of Plaintiffs' having signed receipts, it has only itself to blame. For whatever reason, Western Union apparently destroys receipts after only six months. Dkt. 119-14 ¶ 11.[6]

Western Union asserts that "an arbitration agreement need not be signed by either party to find the requisite mutual assent." Dkt. 119 at 10. But, as noted above, that's not the case where the agreement contemplates party signatures by—as here—including blank signature lines. In any case, even if signatures aren't required, there still must be *some* sort of objective manifestation of assent, as even the cases cited by Western Union show. *See*, *e.g.*, *Flores v. Coinbase, Inc.*, No. 22-cv-8274-MWF(KS), 2023 WL 3564756, at *3 (C.D. Cal. Apr. 6, 2023) ("[I]t is undisputed that Plaintiff assented to the 2022 User Agreement by affirmatively clicking the blue button indicating his acceptance of the agreement."). Here, the only action that Western Union suggests could constitute

---

[5]    Federal courts may consider unpublished California Court of Appeal decisions as persuasive authority, even though they are not precedential within the state system. *See Casola v. Dexcom, Inc.*, 98 F.4th 947, 958 n.12 (9th Cir. 2024); *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1007–08 n.2 (9th Cir. 2012).

[6]    Even under this questionable document retention policy, Western Union should have had access to at least one of Plaintiff Cordero's receipts, because he sent money through Western Union on November 9, 2022, less than two months before Western Union was served in this case. Dkts. 12, 119-9. If Western Union's destruction of that receipt was improper, an adverse inference can be drawn that the receipt was not signed. *See*, *generally*, *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989–90 (N.D. Cal. 2012).

manifestation of assent to the Terms and Conditions other than signing the receipt is "finaliz[ing] the transaction by telling the recipient the Money Transfer Control Number." Dkt. 119 at 10. But "continued use of [a] service" after receiving a purported agreement governing that service does not manifest assent to the agreement where there was no effective notice that some affirmative action was required. *Knutson*, 771 F.3d at 566. Here, there was nothing notifying Plaintiffs that failing to cancel their transactions and giving Money Transfer Control Numbers to the money transfer recipients would manifest Plaintiffs' assent to the inconspicuous provisions on the back side of the not-obviously-a-contract receipts.

Ultimately, Western Union has failed to meet its burden of establishing that Plaintiffs agreed to arbitration. At best, there are disputed issues of material fact as to Plaintiffs' manifestation of assent to the arbitration clauses on the back their receipts. *See*, *e.g.*, *Mani v. ADT Sec. Sys. W., Inc.*, No. 07-cv-0587-JAH(BLM), 2008 WL 11336912, at *5 (S.D. Cal. Sept. 3, 2008) ("A reasonable juror could conclude the form looks like an invoice and not a contract and, as such, a signature on the signature line does not establish mutual assent to the … terms contained on the back."). Consequently, if this Court finds that determining "whether the parties formed an arbitration agreement" depends on the resolution of disputed facts (and if it does not simply deny Western Union's motion as waived), it should "proceed without delay to a trial on arbitrability" and hold the motion to stay "in abeyance until the factual issues have been resolved." *Hansen*, 1 F.4th at 672. In the event this Court sets such a trial on arbitrability, Plaintiffs demand a jury. *See Klink v. ABC Phones of N.C., Inc.*, No. 20-cv-06276-EMC, 2021 WL 3709167, at *7 (N.D. Cal. Aug. 20, 2021) ("District courts in California, including this district, … require a specific demand for a jury trial on the issue of arbitration before or at the time of opposing a motion to compel arbitration").

## IV.   <u>CONCLUSION</u>

Because Western Union waived any right it may have had to arbitrate this dispute and, in any event, it has failed to establish that Plaintiffs manifested their assent to any arbitration agreements, Western Union's motion to stay should be denied. Alternatively, if this Court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement (and

1   that Western Union has not waived its right to enforce any such arbitration right), this Court should

2   hold the motion to stay in abeyance pending a jury trial on arbitrability.

3

4   Dated: May 9, 2024                    By:     */s/ Yaman Salahi*

5                                                  Rafey S. Balabanian (SBN 315962)
                                                   rbalabanian@edelson.com
6                                                  Yaman Salahi (SBN 288752)
                                                   ysalahi@edelson.com
7                                                  J. Aaron Lawson (SBN 319306)
                                                   alawson@edelson.com
8                                                  EDELSON PC
                                                   150 California Street, 18th Floor
9                                                  San Francisco, California 94111
                                                   Tel: 415.212.9300
10                                                 Fax: 415.373.9435

11

12                                                 Julian Zhu (SBN 342744)
                                                   jzhu@edelson.com
13                                                 EDELSON PC
                                                   350 North LaSalle Street, 14th Floor
14                                                 Chicago, Illinois 60654
                                                   Tel: 312.589.6370
15                                                 Fax: 312.589.6378

16                                                 Sejal Zota (*pro hac vice*)
                                                   sejal@justfutureslaw.org
17                                                 Dinesh McCoy (*pro hac vice*)
                                                   dinesh@justfutureslaw.org
18                                                 Daniel Werner (SBN 322310)
                                                   daniel@justfutureslaw.org
19                                                 JUST FUTURES LAW
                                                   95 Washington Street, Suite 104-149
20                                                 Canton, MA 02021
                                                   Tel: 617.812.2822
21

22
                                                   *Attorneys for Individual and Representative*
23                                                 *Plaintiffs Nelson Sequeira and Ismael*
                                                   *Cordero*
24

25

26

27

28