BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
JULIA A. HEIMAN
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-8480
Fax: (202) 616-8470
Email: julia.heiman@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NELSON SEQUEIRA, *et al.*, | Case No.: 4:22-cv-07996-HSG |
| Plaintiffs, | |
| v. | **FEDERAL DEFENDANTS'** |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | **MEMORANDUM OF POINTS AND AUTHORITIES SUBMITTED IN SUPPORT OF THEIR MOTION TO DISMISS THE** |
| Defendants. | **SECOND AMENDED COMPLAINT** |
| | Date: September 5, 2024 |
| | Time:  02:00 pm |

## I. INTRODUCTION

The Department of Homeland Security and U.S. Immigration and Customs Enforcement (together the "Federal Defendants"), respectfully submit this memorandum in support of their motion to dismiss the Second Amended Class Action Complaint, ECF No. 138 ("Second Amended Complaint" or "SAC").

Plaintiffs' Second Amended Complaint reasserts against the Federal Defendants a claim under Section 3402 of the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422 (the "RFPA"). That claim is based, first, in Plaintiff Jose Antonio Manjarrez's and putative class members' use of money transfer services provided by DolEx Dollar Express, Inc. ("DolEx"), alleging that data pertaining to their money transfers were collected for the Transaction Record Analysis Center ("TRAC"). As before, Plaintiffs acknowledge that Section 3402 applies only to "financial institutions" as defined in Section 3401(1). Yet, as before, Plaintiffs have failed to plead adequately that DolEx is such a financial institution. Moreover, materials incorporated by reference into the Second Amended Complaint demonstrate that it is not.

Second, Plaintiffs also appear to allege their use of money transfer services supplied by "another money transfer company that offers lending or credit services," unidentified in their pleading. To the extent Plaintiffs seek to ground their RFPA claim in transactions with unspecified "other" companies, the allegations concerning those unnamed money transfer companies fail to include the minimal factual matter required to state a claim under the RFPA.[1]

For all of these reasons, explained further herein, the Federal Defendants respectfully ask that the Court dismiss Count I of the Second Amended Complaint.

## II. BACKGROUND

In 2010, the Arizona Attorney General and Western Union Financial Services, Inc. ("Western Union") entered into a Settlement Agreement stipulating that "the Southwest Border

---

[1] The Federal Defendants maintain that Plaintiffs' previously-dismissed RFPA claims, *see* SAC ¶ 88, lack merit for the reasons identified in the Court's March 21, 2024, Order. However, Federal Defendants do not separately address those claims herein based on their understanding that Plaintiffs have realleged those claims only to preserve them for appeal, and not to seek relief on those claims before this Court. *See* SAC ¶ 90.

Area poses special money laundering risks associated with criminal activity by drug, human, and weapons smuggling organizations. The problems associated with this criminal activity are regional in nature and are not confined to any single U.S. or Mexican border state." Settlement Agreement, *State of Arizona v. Western Union Financial Serv., Inc.*, ¶ 10.[2] They further agreed that "an effective and cooperative working relationship between financial services providers and law enforcement agencies [would] play an important role in enabling law enforcement to successfully combat money laundering and other criminal activity in the Southwest Border Area." *Id.* A 2014 Amendment to that Settlement Agreement created the TRAC, a web-accessible database available to law enforcement officers that began with a set of data about money transfers only from Western Union, but now includes data regarding money transfers over a certain threshold dollar amount from numerous additional money transfer businesses. Law enforcement uses TRAC to investigate money laundering related to human trafficking, human smuggling, narcotics trafficking, and terrorism. *See United States v. Escobedo*, 2019 WL 6493943, at *1 (D. Mont. Dec. 3, 2019).

Plaintiffs include individuals who allege that they regularly use money transfers to send money to family or others abroad, and that they are distressed that data about those transactions was allegedly collected and can be accessed by government agencies via the TRAC. *See* SAC ¶¶ 52–55.[3] Presuming such transactions have taken place, Plaintiffs allege that, "by gaining access to or obtaining copies of the financial information in the TRAC database," SAC ¶ 73, the Federal Defendants violated Section 3402 of the RFPA.

### III. DISCUSSION

#### A. Legal Standard

"A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6)." *Rutter v. Apple Inc.*, 2022 WL 1443336, at *1 (N.D. Cal.

---

[2] Plaintiffs incorporate this Settlement Agreement by reference in the Second Amended Complaint, *see* SAC ¶ 27, and the Court may therefore consider the Settlement Agreement on this motion to dismiss without converting it into a summary judgment motion. *See infra* (discussing case law concerning incorporation by reference).

[3] For purposes of the instant motion, Federal Defendants take no position as to whether any records pertaining money transfers by individual Plaintiffs were collected for the TRAC, and whether any government entity has accessed any such records.

May 6, 2022). On such a motion, dismissal is appropriate "only where the complaint 'lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Id.* (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). In assessing a Rule 12(b)(6) motion, the Court must consider all well-pled allegations in a complaint as true and view the complaint in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994). "Nevertheless, courts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Rutter,* 2022 WL 1443336, at *1 (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do.") Rather, to survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

"Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, "[u]nder the 'incorporation by reference' rule of this Circuit, a court may look beyond the pleadings" to documents incorporated into the complaint by reference "without converting the Rule 12(b)(6) motion into one for summary judgment." *Id.* "The incorporation-by-reference doctrine 'applies with equal force to internet pages as it does to printed material.'" *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1004 (N.D. Cal. 2021) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). "Courts thus routinely consider the 'full page [of a] website' where, as here, '[a] portion of the page'" is quoted or relied on in the complaint. *Id.* (quoting *Emeco Indus., Inc. v. Restoration Hardware, Inc.*, 2012 WL 6087329, at *1 n.2 (N.D. Cal. Dec. 6, 2012)). "[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). "The defendant may offer such a document, and the

district court may treat such a document as part of the complaint" on a motion to dismiss under Rule 12(b)(6).  *Id.*

### B. The Court Should Dismiss Plaintiffs' Claim Under the Right to Financial Privacy Act.

Section 3402 of the RFPA provides that with certain specific exceptions, "no Government authority may have access to or obtain copies of, or the information contained in the financial records *of any customer from a financial institution*" unless the requirements of Section 3402 are fulfilled.  12 U.S.C. § 3402 (emphasis added).

The Supreme Court has observed that "the most salient feature of the [RFPA] is the narrow scope of entitlements that it creates."  *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984).  Consistent with the observation, the RFPA defines, with some precision, both "customer" and "financial institutions" as those terms are used in Section 3402.

A "customer" under the RFPA is "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in that person's name." 12 U.S.C. § 3401(5).  In its March 21, 2024, Order, ECF No. 116, this Court examined whether the phrase "'in relation to an account maintained in that person's name' modifies both preceding clauses of Section 3401(5), or only the immediately preceding clause 'for whom a financial institution is acting or has acted as a fiduciary.'"  Mar. 21, 2024, Order at 10.  Relying on a "an express statement of legislative intent, combined with the weight of authority and the Third Circuit's persuasive reasoning in *Chao* [*v. City. Tr. Co.*, 474 F.3d 74 (3d Cir. 2007), as amended (Mar. 7, 2007)]" the Court "conclude[d] that the term 'customer,' as defined in the RFPA, was meant to exclude persons who 'utilized or [are] utilizing any service of a financial institution' but not 'in relation to an account maintained in the person's name.'"  Mar. 21, 2024, Order at 11–12.  Thus, to state a claim under Section 3402, a plaintiff must allege that he utilized or is utilizing the services of a financial institution *in relation to an account maintained in his name*.

The Court likewise addressed the definition of "financial institution" in its March 21, 2024, Order.  *See* Mar. 21, 2024, Order at 4-9.  The Court began with the RFPA's definition of a

4

"financial institution," for purposes of Section 3402, as set forth in Section 3401(1). *Id.* at 4. That provision states, in relevant part, that a financial institution is

> any office of a bank, savings bank, card issuer as defined in section 1602(n) of Title 15, industrial loan company, trust company, savings association, building and loan, or homestead association (including cooperative banks), credit union, or *consumer finance institution*, located in any State or territory of the United States, the District of Columbia, Puerto Rico, Guam, American Samoa, or the Virgin Islands.

*Id.* (quoting 12 U.S.C. § 3401(1)) (emphasis the Court's). Plaintiffs contended that money transfer businesses are "consumer finance institutions," as that term is used in Section 3401(1), while Defendants responded that only a company that provides financing and cash loans as a core function and purpose is a consumer finance institution. Following extensive analysis, the Court concluded that "the overwhelming weight of authority presented to this Court supports Defendants' position that the ordinary and common meaning of 'consumer finance institution' is a company that provides financing and cash loans to consumers as a core function and purpose of its business." Mar. 21, 2024, Order, at 7. The Court further found this definition consistent with Congressional intent expressed in the legislative history of the RFPA. *See id.* at 7–8. Thus, the Court "interpret[ed] the term 'consumer finance institution' to mean a company for which the provision of financing and cash loans to consumers is a core function and purpose of its business." *Id.* at 9.

In sum, to state a claim under Section 3402, a plaintiff must plausibly allege both that (1) he is "customer" who uses or used services "in relation to an account maintained in his name," and that (2) the company at which he used those services is a "financial institution" as defined by Section 3401(1). As discussed below, and as before, Plaintiffs' Section 3402 claim fails to satisfy these requirements.

1. **The Court Should Dismiss Plaintiffs' Claim Based on Transactions with DolEx.**

    a. **Plaintiffs' RFPA Claim based on their Use of DolEx's Services is Facially Inadequate.**

Plaintiffs base their Section 3402 claim, first, in their alleged transactions "utiliz[ing] the services of DolEx." SAC ¶ 66. To fall within the ambit of Section 3402, Plaintiffs must plausibly allege that DolEx is a financial institution, as defined by Section 3401(1). *See supra* at 4–5. Plaintiffs attempt to satisfy this requirement in asserting that "DolEx is a financial institution under 12 USC § 3401(1) because it is a consumer finance institution located in the United States." SAC ¶ 67. To support that contention—*i.e.* to demonstrate that DolEx is a consumer finance institution— Plaintiffs assert that the services DolEx provides "include . . . personal lending," and that "[i]t advertises its 'quick and easy personal loans.'" SAC ¶ 10. But such allegations are facially insufficient to bring DolEx within the ambit of the statutory definition. Moreover, an examination of DolEx's website from which Plaintiffs draw those quotations, demonstrates that it is not DolEx but another company altogether that provides the advertised lending services. Thus, in incorporating by reference DolEx's website, Plaintiffs have pled themselves out of an RFPA claim.

Turning first to the face of the Second Amended Complaint, Plaintiffs allege only that DolEx provides lending services. Even if that were so, it would not be sufficient to transform DolEx into a "consumer finance institution." As discussed above, this Court found that the overwhelming weight of authority supports the conclusion that a "consumer finance institution" is "a company for which the provision of financing and cash loans to consumers is a *core function and purpose of its business*." Mar. 21, 2024, Order at 9 (emphasis added). Plaintiffs have not alleged in the Second Amended Complaint that lending is a core function and purpose of DolEx's business; rather, the allegations are limited to Plaintiffs' contention that DolEx offers such services at all. That, in itself, cannot satisfy the definition that this Court adopted.

Indeed, the two decisions in which other federal courts considered the definition of "consumer finance institution" in "closely related contexts," Mar. 21, 2024, Order at 4, demonstrate that a company does not become a "consumer finance institution" simply by dint of

offering or connecting consumers with lending services.  In *Commodity Futures Trading Comm'n v. Worth Bullion Group, Inc. (*"*Worth Bullion*"), 717 F.3d 545 (7th Cir. 2013), the Seventh Circuit considered whether a precious metals wholesaler was a consumer finance institution, where "[a] significant portion of [its] business include[d] financing customers' purchases of precious metals." *Id.* at 547.  Indeed, the Seventh Circuit noted that "[f]inancing generates approximately 80% of Worth's . . . business and revenues." *Id.* at 548.  Mintco, also examined by the Seventh Circuit in that case, was a precious metals dealer and retailer, that derived 90% of its business and revenues from financing.  *See id.*  Both companies identified financing consumers' purchases of metals as "an essential part of their businesses." *Id.* at 549.  Nonetheless, the Seventh Circuit concluded neither company was a "consumer finance institution" because "the provision of financing is not a defining characteristic of [its] business; rather it is merely a means to an end, the real or primary goal of the transaction being the sale of precious metals." *Id.* at 551.  The Seventh Circuit reasoned "[g]iven these facts, it is clear that neither Worth nor Mintco qualifies as a 'consumer finance institution,' and thus they are not 'financial institutions' under the RFPA." *Id.*

In *FTC v. Sterling Precious Metals, LLC* ("*Sterling*"), 2023 WL 1442180 (S.D. Fl. Apr. 9, 2013), another federal court addressed whether Sterling, a precious metals dealer that connected its customers with financing through another company, was a "consumer finance institution." *Id.* at *2–5.  There, approximately 65-80% of customers used that financing to complete their purchases, *id.* at *4, but the court likened that arrangement to Ford Motor Company making consumer loans through a subsidiary to facilitate the sales of its automobiles.  *See id.*  The court reasoned that, just as Ford's provision of financing did not transform it into a "consumer finance institution," likewise, Sterling's connection of its customers with financing did not render Sterling a "consumer finance institution." *See id.*  This Court relied on the *Sterling* court's analysis in its March 21, 2024, Order when addressing the meaning of the word "institution" as part of "consumer finance institution"; the Court concluded:  "institution means an established organization that is dedicated to or primarily established for a particular cause or purpose [and] . . . a company can come within

7

the definition of 'an established organization,' and . . . can be an institution." Mar. 21, 2024, Order at 6 n.2 (quoting *Sterling*, 2013 WL 1442180, at *3).

In light of this Court's analysis, and the persuasive analysis of other federal courts that have considered similar questions, Plaintiffs' allegation that DolEx offers "personal lending," and "advertises its 'quick and easy personal loans,'" SAC ¶ 10, does not state a claim under Section 3402. Rather, Plaintiffs must also plausibly plead that lending is a "core function and purpose" of DolEx's business. They have not done so, and, for this reason alone, the Court should dismiss Plaintiffs' RFPA claim.

> **b.     Materials Incorporated by Reference into the Second Amended Complaint Demonstrate that Plaintiffs Cannot State an RFPA Claim as to Transactions with DolEx.**

As discussed above, *see supra* at 3, "[c]ourts thus routinely consider the 'full page [of a] website' where, as here, '[a] portion of the page'" is quoted or relied on in the complaint. *Browning*, 549 F. Supp. 3d at 1004. "[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* (quotation omitted). In the instant case, Plaintiffs quoted without citation from a page on DolEx's website, a printout of which is attached hereto as Exhibit 1 to the Declaration of Julia A. Heiman. Plaintiffs rely on those quotations to plead DolEx has lending as a core function or purpose of its business. Given that it is the sole support Plaintiffs proffer for a necessary element of their RFPA claim, *see supra* at 6, this webpage is indeed central to Plaintiffs' claim, and, thus, is incorporated by reference into the Second Amended Complaint.

Specifically, Plaintiffs quoted DolEx as advertising "quick and easy personal loans" as well as other services described on its website. *See* SAC ¶ 10 (quoting, without citation, https://www.dolex.com/loans/). Yet, the same page of that website states plainly that it is advertising "personal loans *through Oportun*," and further states: "Oportun (a service provider) partners with DolEx in certain states to bring you personal loans, issued by Pathward®, N.A. a national bank headquartered in South Dakota. Neither Oportun or Parthward participates in any other DolEx product or service." Heiman Decl., Ex. 1 at 1 (emphasis added). DolEx's website

invites customers to "Visit https://oportun.com/licenses/ for more information," and further cautions that "Oportun's website terms, privacy, and security policies apply to anyone who visits that site, which may be different than DolEx website policies." *Id.* In other words, the webpage incorporated into the Second Amended Complaint establishes that DolEx does not itself provide lending services, but connects its customers desiring such services with Oportun, another company. Far from a "core function and purpose" of DolEx's business; lending is not a part of DolEx's business at all.

For this additional reason, the Court should dismiss Plaintiffs' RFPA claim predicated on their use of DolEx's services.

### 2. The Court Should Dismiss Plaintiffs' Claim Based on Transactions with Other Unnamed Money Transfer Businesses.

Plaintiffs mention no other specific money transfer business in asserting their RFPA claim, but allege they have "transacted with DolEx, or another money transfer company that offers lending or credit services." SAC ¶ 69; *see also id.* ¶¶ 70–71 (pleading regarding "DolEx or other money transfer companies"). Plaintiffs further assert that "transaction information that DolEx and other money transfer companies that offer lending or credit services store are financial records under 12 U.S.C. § 3401(2) because it is information pertaining to a customer's relationship with the financial institution." *Id.* at ¶ 71. Plaintiffs' claims as to DolEx fail for the reasons addressed above.

As to any unnamed "other" companies: the Court explained in its March 21, 2024 Order, that the "courts do not accept as true allegations that are merely conclusory." Mar. 21, 2024, Order at 3 (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055 (quotation omitted)). Rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Dismissal is appropriate "where the complaint lacks . . . sufficient facts to support a cognizable legal theory." *Id.* at 2–3 (quoting *Mendiondo*, 521 F.3d at 1104). Just so with respect to Plaintiffs' allegations concerning the unnamed "other" companies.

The allegations regarding the unnamed companies lack necessary factual matter in at least two respects. First, as to the requirement that a plaintiff allege he is a "customer" who uses or used services "in relation to an account maintained in his name," *see supra* at 4, the Second Amended Complaint contains no such averment as to the unnamed "other" companies.[4] Nor do Plaintiffs adequately plead that these unnamed other companies are "financial institutions" as defined by Section 3401(1), because they do not plead that lending is a core function and purpose of those companies. Each of these deficiencies dooms Plaintiffs' RFPA claim as to any unnamed "other" companies.[5]

## CONCLUSION

For the reasons explained herein, the Court should grant the Federal Defendants' motion and dismiss Count I of the Second Amended Complaint.

Dated: June 6, 2024                                      Respectfully submitted,

                                                         BRIAN M. BOYNTON
                                                         Principal Deputy Assistant Attorney General

                                                         BRIGHAM J. BOWEN
                                                         Assistant Branch Director

                                                         */s/ Julia A. Heiman*
                                                         JULIA A. HEIMAN, Bar No. 241415
                                                         Senior Counsel
                                                         United States Department of Justice
                                                         Civil Division, Federal Programs Branch
                                                         1100 L Street, N.W.
                                                         Washington, D.C. 20005

---

[4] Notably, this is in contrast to Plaintiffs' allegations regarding DolEx, which Plaintiffs allege "on information and belief," "assigns each customer a unique customer id and tracks their names and transactions over time." SAC ¶ 10. There are no analogous allegations, even on information and belief, in the Second Amended Complaint, regarding the unnamed "other" companies.

[5] It is worth noting—given that this Court has already once dismissed all of Plaintiffs' RFPA claims asserted as to specific money transfer businesses in the First Amended Complaint, and the bases identified above for dismissal of the Second Amended Complaint's renewed RFPA claim against DolEx—there is no non-speculative basis on which to conclude that there are, in fact, any unnamed "other" companies of the sort contemplated in paragraphs 69–71 of the Second Amended Complaint as to which Plaintiffs could state a cognizable claim under the RFPA.

Telephone: (202) 616-8480
Facsimile:  (202) 616-8470
julia.heiman@usdoj.gov

*Attorneys for Federal Defendants*