1  ROBERT L. WALLAN (SBN 126480)
   robert.wallan@pillsburylaw.com
2  NATHAN M. SPATZ (SBN 204769)
   nathan.spatz@pillsburylaw.com
3  CHRISTOPHER M. BUTLER (SBN 318219)
   christopher.butler@pillsburylaw.com
4  PILLSBURY SHAW WINTHROP PITTMAN LLP
   725 South Figueroa Street, 36th Floor
5  Los Angeles, CA 90017-5524
   Telephone:      213.488.7100
6  Facsimile:      213.629.1033

7  Attorneys for Defendant *Continental Exchange Solutions, Inc.,*
   *d/b/a Ria Financial Services and AFEX Money Express*

8  [additional counsel listed at signature page]

9

10                    **UNITED STATES DISTRICT COURT**

11                    **NORTHERN DISTRICT OF CALIFORNIA**

12                         **OAKLAND DIVISION**

13  NELSON SEQUEIRA, ISMAEL CORDERO,      Case No. 4:22-cv-07996-HSG
    MARIA HERNANDEZ, and JOSE ANTONIO
14  MANJARREZ individually and on behalf of all   Assigned to Hon. Haywood S. Gilliam, Jr.
    others similarly situated,
15                                                 **MONEY TRANSFER BUSINESS**
                                                   **DEFENDANTS':**
16                        *Plaintiffs*,

17            *v.*                                 **(1) NOTICE OF MOTION AND**
                                                   **MOTION TO DISMISS**
18  U.S. DEPARTMENT OF HOMELAND                    **PLAINTIFFS' SECOND AMENDED**
    SECURITY; U.S. IMMIGRATION &                   **COMPLAINT**
19  CUSTOMS ENFORCEMENT; WESTERN
    UNION FINANCIAL SERVICES, INC., a             **(2) MEMORANDUM OF POINTS AND**
20  Colorado corporation; CONTINENTAL             **AUTHORITIES**
    EXCHANGE SOLUTIONS, INC., a Kansas
21  corporation, d/b/a RIA FINANCIAL              Date:   September 5, 2024
    SERVICES and AFEX MONEY EXPRESS;             Time:   2:00 p.m.
22  and DOLEX DOLLAR EXPRESS, INC., a            Crtrm: 2
    Texas corporation,                            Judge: Hon. Haywood S. Gilliam, Jr.
23
                          *Defendants*.           Second Amended Complaint Filed: May 9,
24                                                2024
                                                  Trial Date: None Set
25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 5, 2024, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 – 4th floor of the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Defendants CONTINENTAL EXCHANGE SOLUTIONS, INC., a Kansas corporation, d/b/a RIA FINANCIAL SERVICES and AFEX MONEY EXPRESS ("Continental"), DOLEX DOLLAR EXPRESS, a Texas Corporation, ("DolEx"), and WESTERN UNION FINANCIAL SERVICES, INC., a Colorado corporation ("Western Union" and, collectively, the "Money Transfer Business Defendants" or "MTB Defendants"), will move the Court for an order dismissing the action with prejudice.

The MTB Defendants' motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the MTB Defendants' previous Requests for Judicial Notice and Consideration of Documents Incorporated by Reference and the exhibits attached thereto (Dkts. 66, 70, 114), previously granted by the Court (Dkt. 116 at 17:12–20), Western Union's additional Request for Judicial Notice and Consideration of Documents Incorporated by Reference and the exhibits attached thereto, DolEx's additional Request for Judicial Notice ("RJN") and the exhibits attached thereto, the proposed Order, any documents the MTB Defendants may subsequently file, all other pleadings and papers on file, and any oral argument or other matter that may be considered by the Court.

Dated:  June 13, 2024                                    PILLSBURY WINTHROP SHAW PITTMAN LLP


                                          By:    _____
                                                        */s/ Robert L. Wallan*
                                                     ROBERT L. WALLAN
                                                     NATHAN M. SPATZ
                                                     CHRISTOPHER M. BUTLER
                                                 Attorneys for Defendant CONTINENTAL
                                                 EXCHANGE SOLUTIONS, INC., d/b/a RIA
                                                 FINANCIAL SERVICES AND AFEX MONEY
                                                 EXPRESS

SIDLEY AUSTIN LLP

By: _/s/ Sheila A.G. Armbrust_____
Sheila A.G. Armbrust
Hille R. Sheppard (pro hac vice)
Stephen Chang

*Attorneys for Defendant*
*Western Union Financial Services, Inc.*


KAUFMAN DOLOWICH, LLP


By:_/s/ Katherine Alphonso_____
Tad A Devlin
Marcus Dong
Katherine Alphonso

*Attorneys for Defendant Dolex Dollar Express, Inc.*

4879-3433-3384.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ..................................................................................................2

     A.     The Arizona Attorney General Subpoenas To Continental And DolEx.........................2

     B.     Western Union's Settlement With The Arizona Attorney General And Corresponding Arizona Court Orders ..............................................3

     C.     The HSI Customs Summonses To Western Union ................................................4

     D.     Procedural History ................................................................................5

III.    LEGAL STANDARD.............................................................................................5

IV.    ARGUMENT .......................................................................................................6

     A.     The Action Should Be Dismissed Under Rule 12(b)(7) Because The State of Arizona And The Arizona Attorney General Are Required Parties Who Cannot Be Joined. ........................................6

           1.     Plaintiffs' Central Allegations Highlight The Necessity Of Joining The State Of Arizona And Arizona Attorney General To This Action. ..........................................6

           2.     The State Of Arizona And The Arizona Attorney General Are Required Parties. ..........................................8

           3.     The State Of Arizona And The Arizona Attorney General Cannot Be Joined In This Case. ..........................................10

     B.     Count II of the Complaint Should Be Dismissed Under Rule 12(b)(6) Because Both  The Annunzio-Wiley Act And Cal. FIPA Expressly Preclude Civil Liability For Productions Of Money Transfer Records Made Pursuant To Legal Authority. ..............................................12

           1.     Continental's And DolEx's Productions Of Money Transfer Records Pursuant To Subpoenas Are Exempt From Liability. ..............................14

           2.     Western Union's Productions Of Money Transfer Records Pursuant To Court Orders And HSI Summonses Are Exempt From Liability. ...................16

     C.     Plaintiffs' Second Amended Complaint Fails To Allege Economic Injury Caused By A Violation Of Law Necessary To Maintain A Cal. FIPA Claim. ..........................................19

V.      CONCLUSION....................................................................................................21

## TABLE OF AUTHORITIES

Page(s)

Cases

*Ali v. Carnegie Inst. Of Washington*,
   967 F. Supp. 2d 1367 (D. Or. 2013) ............................................................10

*Am. Greyhound Racing, Inc. v. Hull*,
   305 F.3d 1015 (9th Cir. 2002) ....................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .....................................................................................5

*Budowich v. Pelosi*,
   610 F. Supp. 3d 1 (D.D.C. 2022) ......................................................13, 14, 18

*Camacho v. Major League Baseball*,
   297 F.R.D. 457 (S.D. Cal. 2013) ..................................................................5

*Cole v. Trustees of Columbia University*,
   300 F. Supp. 1026 (S.D.N.Y. 1969) ..............................................................9

*College Savings Bank v. Fla. Prepaid Postsecondary Edu. Expense Bd.*,
   527 U.S. 666 (1999), *aff'd* 684 F.App'x 985 (Fed. Cir. 2017) .......................10

*Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*,
   928 F.2d 1496 (9th Cir. 1991) ......................................................................8

*Coronado v. Bank Atl. Bancorp, Inc.*,
   222 F.3d 1315 (11th Cir. 2000) ........................................................12, 13, 18

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) ...................................................................5, 8

*Deanco Healthcare, LLC v. Becerra*,
   806 F. App'x 581 (9th Cir. 2020) ...............................................................10

*Dittman v. California*,
   191 F.3d 1020 (9th Cir. 1999) ....................................................................10

*dotStrategy Co. v. Facebook Inc.*,
   482 F. Supp. 3d 994 (N.D. Cal. 2020) .........................................................20

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) .............................................................19, 20

*Ellsworth v. U.S. Bank, NA.*,
   908 F. Supp. 2d 1063 (N.D. Cal. 2012) ........................................................18

*Franchise Tax Board of California v. Hyatt*,
   578 U.S. 171 (2016) ...................................................................................10

*Friends of Amador County v. Salazar*,
   554 F. App'x 562 (9th Cir. 2014) .............................................................11

*Gilbreath v. Cutter Biological, Inc.*,
   931 F.2d 1320 (9th Cir. 1991) ..................................................................10

*Goddard v. Google Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ...................................................18

*State ex rel. Goddard v. W. Union Fin. Servs., Inc.*,
   166 P.3d 916 (Ariz. Ct. App. 2007) ..........................................................17

*Gonzalez v. Planned Parenthood of L.A.*,
   759 F.3d 1112 (9th Cir. 2014) ..............................................................6, 17

*Jones v. Bock*,
   549 U.S. 199 (2007) ...................................................................................18

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ..............................................................................19

*Lee v. Bankers Trust Co.*,
   166 F.3d 540 (2d Cir. 1999) ......................................................................15

*Loeffler v. Target Corp.*,
   58 Cal.4th 1081 (2014) ..............................................................................12

*Lopez v. First Union Nat. Bank of Fla.*,
   129 F.3d 1186 (11th Cir. 1997) ...............................................12, 13, 18, 19

*Martinez-Rodriguez v. Bank of Am.*,
   No. C 11-06572 CRB, 2012 WL 967030 (N.D. Cal. Mar. 21, 2012)...........15

*Nguyen v. Stephens Institute*,
   529 F. Supp. 3d 1047 (N.D. Cal. 2021) ....................................................18

*Oneok v. Learjet, Inc.*,
   575 U.S. 373 (2015) ...................................................................................13

*Parks Sch. of Bus. v. Symington*,
   51 F.3d 1480 (9th Cir. 1995) ......................................................................5

*Pennhurst State School & Hosp. v. Halderman*,
   465 U.S. 89 (1984) .....................................................................................10

*Sams v. Yahoo! Inc.*,
   713 F.3d 1175 (9th Cir. 2013) ...................................................................18

*Slater v. A.G. Edwards & Sons, Inc.*,
   719 F.3d 1190 (10th Cir. 2013) ...................................................................................6

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ...................................................................................5, 6

*State Contracting & Eng'g Corp. v. State of Fla.*,
   258 F.3d 1329 (Fed. Cir. 2001)..................................................................................10

*Stoutt v. Banco Popular de Puerto Rico*,
   320 F.3d 26 (1st Cir. 2003)........................................................................................15

*Tatung Co., Ltd. v. Shu Tze Hsu*,
   43 F. Supp. 3d 1036 (C.D. Cal. 2014) ......................................................................17

*State of Arizona v. W. Union Fin. Servs., Inc.*,
   208 P.3d 218 (Ariz. 2009) (en banc)............................................................2, 3, 16, 17

<u>Constitutions</u>

United States Constitution,
   Amendment XI............................................................................................1, 9, 10

<u>Statutes and Codes</u>

United States Code,
   Title 19, Section 1509(a)(2) .........................................................................................5
   Title 31, Section 5312(a)(2) .......................................................................................12
   Title 31, Section 5318(g) ......................................................................................14, 15
   Title 31, Section 5318(g)(3)(A) .............................................................................12, 13

Arizona Revised Statutes,
   Section 13-2312 ............................................................................................................7
   Section 13-2315(A).......................................................................................................7
   Section 13-2315(B)....................................................................................................2, 7

California Financial Code,
   Section 4052.5.............................................................................................................13
   Section 4053................................................................................................................13
   Section 4054................................................................................................................13
   Section 4054.6.............................................................................................................13
   Section 4056(b)...........................................................................................................13
   Section 4056(b)(5).......................................................................................................13
   Section 4056(b)(7)...................................................................................................13, 18
   Section 4056.5.............................................................................................................13

MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 4:22-cv-07996-HSG

4879-3433-3384.v1

## Rules and Regulations

Federal Rules of Civil Procedure,
    Rule 12(b)(6)...................................................................................................5, 18
    Rule 12(b)(7).............................................................................................5, 6, 10
    Rule 19.................................................................................................1, 5, 6, 8
    Rule 19(a)(1)(A) ..................................................................................................8
    Rule 19(a)(1)(B)..............................................................................................8, 9
    Rule 19(b) ...........................................................................................................11

## Other Authorities

California Business Law Deskbook, Section 33:5.............................................................19

MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 4:22-cv-07996-HSG

4879-3433-3384.v1

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.     INTRODUCTION**

3

This case involves the production of money transfer records to law enforcement pursuant to

4 compulsory subpoenas, customs summonses, and court orders. The Second Amended Complaint (Dkt.

5 138, the "Complaint" or "SAC") asserts two counts: Count I, against the federal government

6 defendants and DolEx for violations of the federal Right to Financial Privacy Act; and Count II, against

7 all of the Money Transfer Business Defendants ("MTB Defendants") for violations of the California

8 Financial Information Privacy Act ("Cal. FIPA") and California's Unfair Competition Law. Per the

9 Court's direction, this joint brief addresses Count II.

10

The case should be dismissed because the State of Arizona and the Arizona Attorney General

11 are required parties under Federal Rule of Civil Procedure 19. Plaintiffs accuse the MTB Defendants

12 of violating the law by producing consumer transaction data in response to subpoenas issued by the

13 Arizona Attorney General pursuant to Arizona law, and pursuant to Arizona court orders resulting

14 from a settlement between the Arizona Attorney General and Western Union. Plaintiffs seek a ruling

15 from this Court enjoining the MTB Defendants from complying with the Arizona subpoenas, or to

16 provide notice under Cal. FIPA to consumers in violation of the express terms of the subpoenas. They

17 also seek a declaration that Western Union's production of transaction records pursuant to Arizona

18 court orders following Western Union's settlement with the Arizona Attorney General was unlawful.

19 Any such rulings could not accord Plaintiffs complete relief because they would not bind the State of

20 Arizona or the Arizona Attorney General—leaving them free to enforce the subpoenas or issue new

21 subpoenas. They would also be a direct assault on the core sovereign police powers of the State of

22 Arizona and the Arizona Attorney General and would subject the MTB Defendants to felony

23 prosecution in Arizona, unless the MTB Defendants defy this Court's authority. To obtain the relief

24 they seek, then, Plaintiffs must include the State of Arizona and the Arizona Attorney General as

25 defendants in this case. However, unless the State of Arizona consents to jurisdiction in California,

26 Eleventh Amendment sovereign immunity requires that this Court dismiss this case.

27

Plaintiffs' claims should also be dismissed because both Cal. FIPA and the Annunzio-Wylie

28 Anti-Money Laundering Act of 1992 ("Annunzio-Wylie Act") authorize the production of documents

4879-3433-3384.v1

in response to compulsory process from law enforcement. Indeed, the text of Cal. FIPA expressly authorizes disclosures in response to law enforcement subpoenas. But even if these arguments are considered affirmative defenses, they are still sufficient to grant this Motion; that the MTB Defendants produced documents only in response to compulsory subpoenas, customs summonses, and court orders is clear both from the face of the Complaint and from documents this Court has already judicially noticed. And while the Court previously held that there was an issue of fact with respect to the Arizona court orders, the basis for that holding is Plaintiffs' false allegation concerning an Arizona Supreme Court decision. Dkt. 142 at 3:7–14 (citing Dkt. 38 ¶¶ 27–28). Contrary to Plaintiff's allegation that the Arizona Supreme Court held that a "warrant for out-of-state Western Union *transaction records* was unconstitutional," SAC ¶ 26 (emphasis added), the Arizona Supreme Court held instead that Arizona could not issue a warrant "authoriz[ing] *the seizure of the money transfers*." *State of Arizona v. W. Union Fin. Servs., Inc.*, 208 P.3d 218, 219–20 (Ariz. 2009) (en banc) (emphasis added). Plaintiffs' false allegation cannot create an issue of fact here.

## II. BACKGROUND

Plaintiffs' Complaint challenges the MTB Defendants' productions of money transfer records, which Plaintiffs allege were shared with the Transaction Record Analysis Center ("TRAC"). SAC ¶¶ 52–55. Plaintiffs acknowledge that the MTB Defendants produced the records "in response to requests from federal agencies, as well as state law enforcement agencies acting on behalf of TRAC and its membership." *Id.* ¶¶ 44, 47. This Court has already taken judicial notice of "subpoenas, court orders, and other publicly available documents relating to the production of financial records to the Arizona state government and/or TRAC." Dkt. 116 at 17:12–20 (citing Dkts. 66, 70, 114).

### A. The Arizona Attorney General Subpoenas To Continental And DolEx

The records produced by Continental and DolEx were produced in response to compulsory subpoenas from the Arizona Attorney General. *See* SAC ¶ 31. These subpoenas are signed and issued by the Arizona Assistant Attorney General "in order to investigate racketeering" and in support of "a felony investigation," and "failure to comply in full with this request will subject [Continental and DolEx] to the proceedings provided by A.R.S. § 13-2315(B)." Continental RJN, Exh. D-F, H; DolEx RJN, Exh. 1.

1

2

### B.  Western Union's Settlement With The Arizona Attorney General And Corresponding Arizona Court Orders

3

4

Western Union began producing money transfer records after it entered into a lengthy settlement agreement with the State of Arizona. *See* SAC ¶ 27; Dkt. 70-2, Armbrust Decl. Ex. A (the "Arizona Settlement Agreement"). Plaintiffs allege that Western Union "acquiesced to this unlawful arrangement" because the Arizona Supreme Court held that a 2006 warrant issued by the Arizona Attorney General to Western Union "for out-of-state Western Union transaction records was unconstitutional." SAC ¶¶ 26–27. This allegation is contradicted by the Arizona Supreme Court opinion to which Plaintiffs refer—*State of Arizona v. Western Union Financial Services, Inc.*, 208 P.3d 218—which the Court can consider at the motion to dismiss stage, either by taking judicial notice of it or under the doctrine of incorporation by reference.[1] The Arizona Supreme Court did not consider or address whether the Arizona Attorney General could constitutionally seek out-of-state Western Union transaction records. *Id. at* 220 n.3 ("We [] do not today address the power of the Attorney General, upon an appropriate showing, to obtain information from Western Union concerning wires transfers allegedly arising from racketeering activities."). Rather, the court addressed only "whether an Arizona court can issue a warrant *seizing Western Union money transfers* sent from other states to Mexico," and held that an Arizona court lacks jurisdiction under the Due Process Clause to issue such a warrant. *Id.* at 218–19 (emphasis added).

19

20

The Arizona Settlement Agreement was approved in 2010 by the Superior Court of the State of Arizona in and for the County of Maricopa (the "Arizona Court"). Dkt. 70-3, Armbrust Decl., Ex.

21

22

---

23

[1] The Court can take judicial notice of what issues the Arizona Supreme Court considered (and did not consider), as well as the scope of the court's holding. *See* Defendant Western Union Financial Services, Inc.'s Request for Judicial Notice and Consideration of Documents Incorporated by Reference in Support of Motion to Dismiss Second Amended Complaint, filed concurrently herewith. Further, the decision is incorporated by reference because the Complaint refers directly to the case, purports to describe the court's holding, which forms the basis for Plaintiffs' claim that Western Union "acquiesced to [an] unlawful arrangement" when it agreed to produce money transfer records to the Arizona Attorney General pursuant to a court order, SAC ¶ 27, and is thus central to whether there are factual issues precluding Western Union from establishing that it is immune from liability under the Annunzio-Wylie Act and Cal. FIPA. *See infra* at Part IV.B.2.

24

25

26

27

28

B at 6–9. In the Arizona Settlement Agreement, Western Union agreed to a make a lump sum payment to the State of Arizona, acknowledged responsibility for certain conduct as set forth in a Statement of Admitted Facts, and agreed to the appointment of an independent Monitor. Dkt. 70-2, Armbrust Decl., Ex. A at 3–4, 9–10 (Arizona Settlement Agreement, ¶¶ 6, 9, 20–22). Additionally, the Arizona Court ordered Western Union to turn over certain money transfer records to the State of Arizona and certain other states in the southwest border area, and to do so in an ongoing manner through the term of the Monitor's engagement. Dkt. 70-2, Armbrust Decl., Ex. A at 7.[2]

In 2014, the Arizona Court approved two amendments to the Arizona Settlement Agreement and ordered Western Union to continue producing the specified money transfer records to Arizona for another five years. *See* SAC ¶ 28; Dkt. 70-4, Armbrust Decl., Ex. C at 4 (Jan. 2014 Arizona Court Order); Dkt. 70-5, Armbrust Decl., Ex. D at 19 (Jan. 2014 Settlement Amendment, ¶ 17.1.6); Dkt. 70-6, Armbrust Decl., Ex. E (Oct. 2014 Arizona Court Order). In June 2019, the Arizona Court held that Western Union's obligations to produce money transfer records to Arizona had ended. *See* SAC ¶ 33; Dkt. 70-7 Armbrust Decl., Ex. F (2019 Arizona Court Order).

### C. The HSI Customs Summonses To Western Union

After the Arizona court orders expired, "the HSI Special Agent in charge of Phoenix began issuing a series of requests to Western Union every six months directing the company to continue

---

[2] Specifically, the 2010 Arizona Court Order required:

> TURN OVER TO MONITOR AND STATES. IT IS FURTHER ORDERED that Western Union, upon service of this Order upon them, shall deliver to the Monitor … and to the State, the materials described in … the Agreement and the data described in … the Monitor Engagement Letter implementing the Agreement, which includes full transaction data relating to all person-to-person transactions sent to or from authorized delegate/Agent locations within the Southwest Border Area from January 1, 2005, to the present and throughout the term of the Monitor's Engagement involving transactions in amounts of $500 or more.

Dkt. 70-2, Armbrust Decl., Ex. A at 7; *see also* SAC ¶ 27 (discussing settlement agreement and Arizona Attorney General's "inten[t] to share the data produced by Western Union with other state and federal law enforcement officials").

1  transmitting records of money transfers to TRAC." SAC ¶ 34. Plaintiffs acknowledge that the

2  "requests" that HSI "issued" were "customs summons." SAC ¶¶ 34, 45; *see also* Dkts. 70-8, 70-9,

3  Armbrust Decl., Exs. G–H (describing HSI issuance of "customs summons"); 19 U.S.C. § 1509(a)(2)

4  (providing authority for customs summons).

### D.   Procedural History

6  Plaintiffs filed their First Amended Complaint on January 24, 2023. The MTB Defendants

7  each filed Motions to Dismiss. The Court granted the Motions to Dismiss in part on March 21, 2024,

8  resulting in dismissal of all Defendants except Western Union.

9  Plaintiffs filed a Second Amended Complaint on May 9, 2024. Count I asserts a claim for

10  violations of the federal Right to Financial Privacy Act against DolEx and the government defendants.

11  Count II asserts a Cal. FIPA and UCL claim against all of the MTB Defendants.

## III.   LEGAL STANDARD

13  A motion to dismiss under Rule 12(b)(7) of the Federal Rules of Civil Procedure is premised

14  on the failure to join a party under Rule 19. A court should grant a motion to dismiss for failure to join

15  an indispensable party where an absent party is necessary to the action but cannot be joined, so that in

16  equity and good conscience the suit should be dismissed. Fed. R. Civ. P. 19; *see also Dawavendewa*

17  *v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1154–55 (9th Cir. 2002); *Camacho v.*

18  *Major League Baseball*, 297 F.R.D. 457 (S.D. Cal. 2013).

19  A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests for legal

20  sufficiency of claims alleged in the complaint. *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484

21  (9th Cir. 1995). Courts are not bound to accept as true "a legal conclusion couched as a factual

22  allegation," and the claim in the complaint must be factually supported and plausible on its face to

23  survive a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility

24  standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If facts

25  alleged in a complaint are equally consistent with lawful behavior, the pleading fails to state a plausible

26  claim and should be dismissed. *Id.* at 663. A court need not accept conclusory allegations, unwarranted

27  fact deductions, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

28  (9th Cir. 2001). Nor must the court accept as true allegations that "contradict matters properly subject

-5-

1   to judicial notice" or that are "incorporated by reference into the complaint." *Gonzalez v. Planned*

2   *Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (first quoting *Sprewell*, 266 F.3d at 988, then

3   citing *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013)).

4   **IV.    ARGUMENT**

5       **A.    The Action Should Be Dismissed Under Rule 12(b)(7) Because The State of
            Arizona And The Arizona Attorney General Are Required Parties Who Cannot
6            Be Joined.**

7       The State of Arizona and the Arizona Attorney General are required parties to this action under

8   Rule 19 for two reasons. First, the court cannot accord complete relief in their absence. That is, the

9   State of Arizona and the Arizona Attorney General may seek to enforce any pending and future

10  subpoenas for information because they would not be bound by any judgment entered in this action.

11  This leaves the MTB Defendants between a rock and a hard place—they may abide by any judgment

12  entered in this case and face criminal prosecution for failing to respond to a subpoena, or they may

13  produce information in response to a subpoena but face a contempt action. Second, disposing of the

14  action in the absence of the State of Arizona and the Arizona Attorney General would impede their

15  ability to protect their interests in exercising their police and investigatory authority and would leave

16  the MTB defendants with inconsistent obligations. Though both the State of Arizona and the Arizona

17  Attorney General are required parties, their joinder is not feasible. The outcome of this case could

18  prejudice Arizona and the Arizona Attorney General's interests in enforcing any pending subpoenas

19  and issuing future subpoenas, and this prejudice cannot be mitigated by shaping the relief sought or

20  any other measures. Moreover, no form of partial relief could adequately resolve the dispute.

21          **1.    Plaintiffs' Central Allegations Highlight The Necessity Of Joining The
                State Of Arizona And Arizona Attorney General To This Action.**
22

23      Key allegations in this case concern the validity of the Arizona Attorney General's law

24  enforcement investigation, subpoenas issued under Arizona law, Arizona court orders resulting from

25  an allegedly "unlawful" settlement between Western Union, the State of Arizona, and the Arizona

26  Attorney General, and the lawfulness of TRAC (with which Arizona and the Arizona Attorney

27  General's office have been intimately involved from the outset of its existence). *See* SAC ¶¶ 26–32.

28

Plaintiffs seek to litigate the validity of the subpoenas, court orders, and TRAC generally in the absence of the State of Arizona and the Arizona Attorney General.

The Complaint accuses the MTB Defendants of violating the RFPA (DolEx only) and Cal. FIPA and the UCL by producing consumer transaction data in response to subpoenas issued by the Arizona Attorney General pursuant to Arizona law. These subpoenas were signed and issued by the Arizona Assistant AG "in order to investigate racketeering" and in support of "a felony investigation," and warn that "failure to comply in full with this request will subject [respondent] to the proceedings provided by A.R.S. § 13-2315(B)." Continental RJN, Exh. D-F, H; DolEx RJN, Exh. 1.  The subpoenas indicate that the Arizona Attorney General's "request [was] made in connection with the lawful performance of [his] official duties." *See*, *e.g.* Continental RJN, Exh. D-F, H; DolEx RJN, Exh. 1. Under Arizona law, when a records request such as a subpoena contains a sworn statement "that the request is made in order to investigate racketeering ... or a violation of § 13-2312," the party producing documents has no civil or criminal liability "in any action brought alleging violation of the confidentiality of such records." A.R.S. § 13-2315(A). The Complaint also broadly challenges TRAC as an "unlawful dragnet surveillance program," and asserts that the Arizona court orders resulting from the settlement between Western Union and the Arizona Attorney General were invalid. SAC ¶¶ 1, 28.

Although a subpoena response is expressly authorized by Cal. FIPA, *see infra* at Part IV.B, Plaintiffs appear to contend that the subpoenas in question are not valid and, therefore, do not qualify for immunity; they likewise challenge the Arizona court orders that resulted from Western Union's settlement with the Arizona Attorney General. On that basis, Plaintiffs seek a ruling from this Court enjoining the MTB Defendants from complying with the subpoenas, to claw back records previously produced to TRAC, to provide notice under Cal. FIPA to consumers, and to not turn over the subpoenaed records. Simultaneously, the MTB Defendants have continued to receive subpoenas since 2022 from the Arizona Attorney General under Arizona law, and the Arizona Attorney General may choose to continue issuing them in the future. *See, e.g.*, Continental RJN, Exh. D-F, H; DolEx RJN, Exh. 1.  Under Arizona law, as cited on the face of the subpoenas, the MTB Defendants will be subject to criminal prosecution for failing to comply with the subpoenas, or for complying with an order from

this Court requiring the MTB Defendants to provide notice to consumers whose data is sought by the subpoenas.

### 2. The State Of Arizona And The Arizona Attorney General Are Required Parties.

Under Rule 19, a party is required under two circumstances. First, in that person's absence, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Second, the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action may" either "as a practical matter impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). The State of Arizona and the Arizona Attorney General are required parties under either provision.

The Ninth Circuit has explained that joinder is required under Rule 19(a)(1)(A) where an absent party that is not bound by the judgment could take action that is in tension with the ordered relief. *See Dewavendewa*, 276 F.3d at 1155–56. In *Dewavendewa*, the Ninth Circuit held that the Navajo Nation was a necessary party to the plaintiff's Title VII action challenging the defendant's hiring preference policy. *Id.* It reasoned that complete relief could not be accorded without the Nation because the Nation was a party to a lease with the defendant that required the challenged hiring policy. *Id.* Thus, even if plaintiff's requested relief were ordered, the Nation might still seek to enforce the lease, since it would not be bound by the judgment. *Id.* That would place the defendant "between the proverbial rock and a hard place—comply with the injunction prohibiting the hiring preference policy or comply with the lease requiring it." *Id.* In the event the defendant did not abide by the order, the plaintiff would not be accorded complete relief. *Id.*; *see also Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991) (dismissing action where non-party Indian Nation ("Nation") was indispensable in action brought by various other groups of Indians against federal officials challenging United States' continuing recognition of non-party Indian nation as sole governing authority to reservation, as Nation had legal interest in litigation and complete relief could not be afforded plaintiffs without Nation). The same dilemma is presented here. If the court were to order Plaintiffs' requested relief, the State of Arizona or the Arizona Attorney General may still seek

1    to issue future subpoenas or enforce pending subpoenas. The MTB Defendants would therefore be in

2    the same situation as the defendants in *Dewavendewa*, and if they were to abide by the subpoenas,

3    Plaintiffs would not be accorded complete relief.

4            The State of Arizona and the Arizona Attorney General are also required parties under Rule

5    19(a)(1)(B). The MTB Defendants will unavoidably be subject to inconsistent legal obligations if the

6    Court were to order relief in this case, as illustrated above. Burdening a subpoena recipient with the

7    impossible task of complying with inconsistent legal obligations is precisely the scenario the Court

8    sought to avoid in *Cole v. Trustees of Columbia University*, 300 F. Supp. 1026 (S.D.N.Y. 1969). There,

9    a student group filed suit against Columbia University in New York district court seeking an injunction

10   to prevent the university from complying with a subpoena issued by a subcommittee of the United

11   States Senate. *Id.* at 1029. The district court dismissed the case recognizing that it could not enjoin the

12   subpoena without joining the Congressional Committee or its members, and that in any event, even if

13   there were jurisdiction, the proper venue would be Washington D.C. *Id.* The court explained that the

14   issuer of the subpoenas at the core of this case must be a party. *Id.* ("It, therefore, boggles the

15   imagination to think that plaintiffs herein could reasonably expect this Court to quash a Congressional

16   subpoena when not one member of the Committee was served with a copy of the motion, nor when

17   the Committee was not present or represented in court of the purpose of conferring jurisdiction."),

18   Further, an order from this Court invalidating the Arizona Attorney General's pending and future

19   subpoenas and the Arizona court orders and commanding the MTB Defendants not to comply with

20   them would necessarily impair the State of Arizona and the Arizona Attorney General's ability to

21   protect their current and future investigatory interests and in operating TRAC more broadly.

22           Both to avoid holding the MTB Defendants to inconsistent legal obligations and to protect the

23   core sovereign police powers of the State of Arizona and Arizona Attorney General, this case cannot

24   proceed in its current form. For these reasons, the State of Arizona and Arizona Attorney General are

25   required parties.

26

27

28

1

2

### 3. The State Of Arizona And The Arizona Attorney General Cannot Be Joined In This Case.

Neither the State of Arizona nor the Arizona Attorney General is subject to joinder. The Eleventh Amendment provides sovereign immunity from being sued in Federal Court to both the State of Arizona and the Arizona Attorney General. "The Judicial power … shall not … extend to any suit in law or equity … against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amend. XI; *see Gilbreath v. Cutter Biological, Inc*., 931 F.2d 1320, 1327 (9th Cir. 1991). In other words, a state is "immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) (citation omitted). "[A] state waives sovereign immunity in only two instances: (1) a state's voluntarily invocation of the jurisdiction of a federal court; or (2) a state's 'clear declaration' that it intends to submit itself to the jurisdiction of a federal court." *Ali v. Carnegie Inst. Of Washington*, 967 F. Supp. 2d 1367, 1374 (D. Or. 2013) (citing *College Savings Bank v. Fla. Prepaid Postsecondary Edu. Expense Bd.*, 527 U.S. 666, 675–76 (1999), *aff'd* 684 F.App'x 985 (Fed. Cir. 2017)). Any waiver of Eleventh Amendment sovereign immunity by a state must be express and voluntary. U.S. Const., Amend. XI; *State Contracting & Eng'g Corp. v. State of Fla*., 258 F.3d 1329, 1336 (Fed. Cir. 2001) (citing *Coll. Sav. Bank*, 527 U.S. at 682). And state immunity extends to the Arizona Attorney General's Office. *See Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) (holding that "under the Eleventh Amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court"); *Deanco Healthcare, LLC v. Becerra*, 806 F. App'x 581, 583 (9th Cir. 2020) (holding that California Office of Attorney General was entitled to immunity under Eleventh Amendment).

Plaintiffs have no viable basis for joining the State of Arizona or the Arizona Attorney General in a case that Plaintiffs elected to bring in California Federal Court. *See Ali*, 967 F. Supp. 2d at 1372–76 (granting 12(b)(7) motion to dismiss University of Massachusetts from lawsuit in Oregon Federal Court on the basis of sovereign immunity under the Eleventh Amendment). *See also Franchise Tax Board of California v. Hyatt*, 578 U.S. 171 (2016) (holding that a state's sovereign immunity protects a state from being sued without its consent by a private party in the courts of a different state). This

-10-

1   Court cannot join the State of Arizona or the Arizona Attorney General as defendants in this

2   proceeding.

3         This case therefore should be dismissed because it cannot proceed in equity and good

4   conscience in the absence of the State of Arizona and the Arizona Attorney General. The Court

5   evaluates the following Rule 19(b) factors to determine whether the action should proceed among the

6   existing parties or be dismissed:

> (1) the extent to which a judgment rendered in the person's absence
>       might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided
>       by:
>
> (A) protective provisions in the judgment;
>
> (B) shaping the relief; or
>
> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be
>       adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action
>       were dismissed for nonjoinder.

Any attempt to claim that the State of Arizona and the Arizona Attorney General are not essential is a

non-starter. Both would be prejudiced by a judgment in this action for the same reasons that they are

required parties: they have an interest in exercising their investigatory and police authority and in the

continued operation of TRAC. No relief mitigates that prejudice, as any decision in Plaintiffs' favor

would impair the absent parties' investigatory power and interest in TRAC. Nor would judgment in

their absence be adequate. As stated above, any scenario besides a complete rejection of Plaintiffs'

claims will result in inconsistent obligations for the MTB Defendants and run roughshod over core

sovereign police power interests of the State of Arizona and the Arizona Attorney General. Plaintiffs

are seeking to force the MTB Defendants to claw back data from TRAC, provide notice to consumers

when the Arizona Attorney General issues further subpoenas, and refuse to comply with the Arizona

Attorney General's subpoenas issued under Arizona law in furtherance of a racketeering investigation

and to declare invalid Arizona court orders resulting from a settlement with the Arizona Attorney

General. If this Court grants Plaintiffs' demands, the MTB Defendants will be subject to felony

prosecution by the State of Arizona and the Arizona Attorney General for complying with this Court's order. Relief cannot be shaped to avoid this inevitable result. Further, the absence of an adequate remedy does not preclude dismissal, since this "result is a common consequence of sovereign immunity." *Friends of Amador County v. Salazar*, 554 F. App'x 562, 566 (9th Cir. 2014) (quoting *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002)). This Court should dismiss this case.

### B.   Count II of the Complaint Should Be Dismissed Under Rule 12(b)(6) Because Both The Annunzio-Wiley Act And Cal. FIPA Expressly Preclude Civil Liability For Productions Of Money Transfer Records Made Pursuant To Legal Authority.

Count II of the Complaint also fails because the MTB Defendants' productions of money transfer records are protected by the safe harbor established by the Annunzio-Wylie Act and expressly authorized by Cal. FIPA.

***The Annunzio-Wiley Act.*** The California Supreme Court has held that "the reach of the UCL is broad, but it is not without limit and may not be used to invade 'safe harbors' provided by other statutes." *Loeffler v. Target Corp.*, 58 Cal.4th 1081, 1125 (2014). The Annunzio-Wiley Act immunizes financial institutions—including money transmitters such as the MTB Defendants, 31 U.S.C. §5312(a)(2)—from liability for disclosures made pursuant to legal authority, including court orders and subpoenas. In relevant part, it provides:

> Any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency ***or makes a disclosure pursuant to this subsection or any other authority***, … ***shall not be liable*** to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State … for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure.

31 U.S.C. § 5318(g)(3)(A) (emphasis added). Courts have clarified that "other authority" (which they refer to as the Annunzio-Wylie Act's "third safe harbor") extends to disclosures made pursuant to "legal authority," including any "statute, regulation, court order, or other source of law." *Lopez v. First Union Nat. Bank of Fla.*, 129 F.3d 1186, 1193–94 (11th Cir. 1997) (holding, at the motion to dismiss stage, that a seizure warrant represents a "judicial determination"); *see also, e.g.*, *Coronado v. Bank Atl. Bancorp, Inc.*, 222 F.3d 1315, 1320 (11th Cir. 2000) (concluding that a valid grand jury

subpoena—unlike "a mere verbal request from a government agent"—is considered "other authority," as subpoenas "possess the 'force of law' because they are issued under the authority of a federal district court, and disobedience can lead to a legal sanction").

Annunzio-Wiley Act immunity reflects the understanding that a "financial institution" is not "required []or permitted to sit in review of [a] court's" or government agency's "legal determination." *Lopez*, 129 F.3d at 1193–94; *see also Coronado*, 222 F.3d at 1321 ("Forcing a bank to challenge a facially valid grand jury subpoena in order to avoid liability to one (or more) of its customers would fly in the face of ... the Annunzio-Wiley Act's clear intent to encourage cooperation" with government investigations). The broad protections provided by the Annunzio-Wiley Act apply to Plaintiffs' California law UCL claim based on Cal. FIPA, because the Annunzio-Wiley Act expressly provides that financial institutions cannot be liable under state law for disclosures made pursuant to legal authority. *See* 31 U.S.C. § 5318(g)(3)(A).[3]

**Cal. FIPA**. Cal. FIPA expressly authorizes disclosure of nonpublic personal information without prior consent of the consumer.[4] Of particular relevance to this case, Cal. FIPA expressly authorizes financial institutions to release nonpublic personal information "to comply with federal, state ... and other applicable legal requirements"; "to comply with a properly authorized civil, criminal, administration, or regulatory investigation or subpoena or summons by federal state, or local

---

[3] In this way, the Annunzio-Wiley act expressly preempts any state law that would allow civil liability for the MTB Defendants' disclosures. And, even in the absence of this express provision, the Annunzio-Wiley Act would still preempt such a state law because "compliance with both state and federal law [would be] impossible," and "the state law [would] stand[] as an obstacle to the accomplishment and execution of the full purposes of Congress." *Oneok v. Learjet, Inc.*, 575 U.S. 373, 373, 377 (2015) (cleaned up).

[4] The Cal. FIPA provision permitting a financial institution to share information with government authorities is not an exemption but rather an affirmative authorization to do so. For comparison, Section 4056.5 states, "The provisions of this division do not apply to any person or entity that meets the requirements of paragraph (1) or (2) below." That section provides an exemption for licensed insurance companies. By contrast, Section 4056(b), rather than providing that the statute does not apply to certain persons or disclosures, broadly grants permission to release nonpublic personal information in certain circumstances and specifies that this authorization supersedes the general prohibitions against disclosure: "Notwithstanding Sections 4052.5, 4053, 4054, and 4054.6, a financial institution may release nonpublic personal information under the following circumstances." Cal. Fin. Code § 4056(b).

-13-

authorities"; or "to respond to judicial process." Cal. Fin. Code § 4056(b)(5), (7); *see, e.g.*, *Budowich v. Pelosi*, 610 F. Supp. 3d 1, 25–27 (D.D.C. 2022) (applying Cal. FIPA's "plain language" and holding, at the motion-to-dismiss stage, that a bank's disclosures pursuant to congressional subpoenas was authorized by Cal. FIPA). Through each of these exceptions, California law "[w]isely" avoids interfering with the orders of state courts or the investigative powers of the federal government "by excepting from [Cal. FIPA's] coverage disclosures made pursuant to legitimate government investigations or subpoenas, such as the one[s] at issue here." *Budowich*, 610 F. Supp. 3d at 27. In *Budowich*, the court held that a bank's production of plaintiff's financial records in response to a subpoena relating to a criminal investigation did not violate Cal. FIPA, and thus an alleged violation could not create liability under California's UCL. *Id.* at 26–27 Because the bank was required by law to comply with a subpoena, its disclosure of the plaintiff's financial records fell within Cal. FIPA's express authorization allowing financial institutions to disclose nonpublic personal information when necessary to comply with legal requirements. *Id.*

### 1. Continental's And DolEx's Productions Of Money Transfer Records Pursuant To Subpoenas Are Exempt From Liability.

The subpoenas issued to Continental and DolEx fall within the "other authority" provision of the Annunzio-Wiley Act, as they were based on "legal authority," and failure to comply could result in legal action against Continental and DolEx. They also fall within Cal. FIPA's exclusion for compliance with subpoenas. Like a grand jury subpoena—which is issued based on the authority of the court and grand jury—the subpoenas in the present case were issued by the Arizona Attorney General. In the years following TRAC's creation in 2014, TRAC functioned as an extension of the government and, as *Plaintiffs note,* federal involvement in TRAC "has a long history." SAC ¶ 18. And, although Plaintiffs have claimed—without citation to any legal authority or precedent—that TRAC's requests were "made without and in excess of any lawful authority," they have neglected to argue that the Arizona Attorney General lacked the authority to issue these subpoenas. *Id.* ¶ 47. Plaintiffs' claim that Arizona Attorney General issued subpoenas "on behalf of TRAC and its membership" is immaterial to the question of whether the MTB Defendants breached Cal. FIPA. *Id.* 47. Continental and DolEx face the threat of legal action for failing to comply with the subpoenas.

The subpoenas themselves state that they were issued pursuant to state law and advise that "*warning another person of impending felony* prosecution" or "suppressing physical evidence by concealment, alteration or destruction in a felony investigation" are each felony crimes. Continental RJN, Ex. F; DolEx RJN, Exh. 1. Because Continental and DolEx disclosed information pursuant to "other authority" under Section 5318(g), they cannot be held liable for the acts alleged in the complaint.

Plaintiffs' argument that the subpoenas are invalid does not create an exception to the express disclosure authorization under Cal. FIPA, or the safe harbor under the Annunzio-Wiley Act, for compliance with the subpoenas. Plaintiffs' Complaint does not argue that the Arizona Attorney General lacked the authority to issue these subpoenas. And, as explained in Part IV.A above, there is a process and a forum for Plaintiffs to attack the Arizona subpoenas—they may file a state action in Arizona against the Arizona Attorney General to seek to quash the subpoenas. Neither the Annunzio-Wiley Act nor Cal. FIPA contains a requirement that the target of a subpoena first challenge the validity of the subpoena before complying or before the safe harbor comes into play.

Plaintiffs seek to graft onto these statutes a requirement that targets of subpoenas not respond to those subpoenas unless they have verified that the subpoenas will be valid and enforceable if tested in court. But several courts have explicitly held that under Section 5318(g), there is no "good faith" requirement when financial institutions voluntarily disclose information. *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) ("We decline to import a good faith requirement into the statute.... We conclude that the safe harbor provision does not limit protection to disclosures based on a good faith belief that a violation has occurred."); *see also Stoutt v. Banco Popular de Puerto Rico*, 320 F.3d 26, 30–32 (1st Cir. 2003) (holding that that the language and legislative history of the Annunzio Act caution against imposing an implied "good faith" requirement). The Northern District specifically has also taken a similar view with respect to Section 5318(g). *See Martinez-Rodriguez v. Bank of Am.*, No. C 11-06572 CRB, 2012 WL 967030, at *12 (N.D. Cal. Mar. 21, 2012) ("[t]he plain language of the Act provides immunity for a 'voluntary disclosure of any possible violation of law,' and to impose a good faith requirement on top of this clear statutory text would result in a far narrower preemption provision"). Because Section 5318(g) does not contain a good faith requirement, motive for complying with the subpoenas is irrelevant. The MTB Defendants cannot be held liable for disclosing financial

information when Section 5318(g) provides complete immunity for such disclosures.

**2.      Western Union's Productions Of Money Transfer Records Pursuant To Court Orders And HSI Summonses Are Exempt From Liability.**

There are no "factual issues" that this Court needs to resolve with respect to the Arizona court orders or HSI custom summonses. Dkt. 142 at 3:7–14. Plaintiffs' allegation that Western Union "acquiesced" to an "unlawful" settlement concerning transaction records in violation of an Arizona Supreme Court decision, SAC ¶¶ 26–27, is false and contradicted by the decision itself.

In considering Western Union's prior motion to dismiss, the Court held that it did "not have an adequate factual record to resolve" Western Union's arguments at the motion to dismiss stage, because the Arizona court orders reflect a settlement, and "[t]he factual circumstances of that settlement, and Western Union's subsequent disclosures, are thus material to whether it is entitled to immunity." Dkt. 116 at 16:2–6 & n.6. Citing two paragraphs from the complaint regarding the Arizona Supreme Court's opinion in *State of Arizona v. Western Union*, the Court clarified its decision, explaining that Plaintiffs' allegation that "Western Union entered into a settlement agreement with the Arizona Attorney General *after* the Arizona Supreme Court ruled that the original warrant requesting those documents was unconstitutional ... raise[d] factual issues" that the Court could not resolve at the motion to dismiss stage. Dkt. 142 at 3:7–14 (citing Dkt. 38 ¶¶ 27–28).

Plaintiffs repeat these allegations in the Second Amended Complaint. SAC ¶¶ 26–27. Plaintiffs allege that "the Arizona Supreme Court h[eld] that the warrant for out-of-state Western Union transaction records was unconstitutional," and that the Arizona Attorney General and Western Union thereafter "reached an agreement whereby Western Union would turn over bulk transaction data." *Id.* Plaintiffs further allege that "Western Union acquiesced to this unlawful arrangement even though it had successfully established that the Arizona Attorney General lacked the authority to obtain out-of-state records *en masse* in prior litigation." *Id.* ¶ 27.

These allegations are false. The Arizona Supreme Court never made such a holding. As noted above, the Arizona Supreme Court decision to which Plaintiffs refer is *State of Arizona v. Western Union Financial Services, Inc.*, 208 P.3d 218. There, the Arizona Supreme Court addressed "whether an Arizona court can issue a warrant *seizing* Western Union money transfers sent from other states to

Mexico." *Id.* at 218–19 (emphasis added); *see also id.* at 220 ("[B]ecause the issue is whether the warrant could constitutionally authorize seizure of the money transfers, the case before us involves only the exercise of in rem jurisdiction."); *id.* at 222 ("the warrant at issue ... authorizes the seizure of specific property"). The court held narrowly that "an Arizona court lacks jurisdiction under the Due Process Clause of the United States Constitution to issue such a warrant." *Id.* at 219. In other words, the court held that the Arizona Attorney General could not seize the *actual money* that out-of-state Western Union consumers sent to Mexico.

Contrary to Plaintiffs' allegation, the Arizona Supreme Court did not hold that a "warrant for out-of-state Western Union *transactions records* was unconstitutional." SAC ¶ 26 (emphasis added). Indeed, the court did not address whether the Arizona Attorney General could constitutionally seek out-of-state Western Union transaction records at all. *See Western Union*, 208 P.3d at 220 n.3 ("We also do not today address the power of the Attorney General, upon an appropriate showing, to obtain information from Western Union concerning wires transfers allegedly arising from racketeering activities."). This Court therefore should not accept Plaintiffs' allegations regarding the Arizona Supreme Court's opinion as true, because Plaintiffs' allegations are contradicted by the court's actual holding. *See Gonzalez*, 759 F.3d at 1115 (courts need not accept as true allegations that are contradicted by documents subject to judicial notice or incorporate by reference); *Tatung Co., Ltd. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1057 (C.D. Cal. 2014) ("[A] motion to dismiss may be granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice.").[5]

---

[5] In an earlier case, the Arizona Court of Appeals similarly declined to address the constitutionality of the Arizona Attorney General's request that Western Union produce certain out-of-state money transfer records. *State ex rel. Goddard v. W. Union Fin. Servs., Inc.*, 166 P.3d 916, 920 (Ariz. Ct. App. 2007) ("we do not reach Western Union's constitutional arguments"). In that case, the appellate court held only that the Arizona Attorney General had "failed to identify any facts that would justify a request of the breadth he seeks to enforce" under an Arizona statute, rejecting as "overstated" Western Union's argument "that the Attorney General has no right to investigate wire transactions that occur entirely outside" of Arizona. *Id.* at 923, 929.

With Plaintiffs' false allegations about *State of Arizona v. Western Union* properly disregarded, there are no factual issues for the Court to resolve. The Annunzio-Wiley Act's safe harbor and Cal. FIPA's express authorization immunize Western Union from civil liability for its production of transaction records pursuant to Arizona court orders. *See Lopez*, 129 F.3d at 1193 (considering court orders as legal authority protected by the Annunzio-Wiley Act); Cal. Fin. Code. § 4056(b)(7) (authorizing disclosures made to comply with "legal requirements" or "to respond to judicial process"). Likewise, the Annunzio-Wiley Act's safe harbor and Cal. FIPA's express authorization also immunize Western Union from civil liability for its productions in response to HSI Summonses. *See Coronado*, 222 F.3d at 130 (considering subpoenas as legal authority protected by the Annunzio-Wiley Act); Cal. Fin. Code. § 4056(b)(7) (authorizing disclosures made to comply with a "subpoena or summons"); *Budowich*, 610 F. Supp. 3d at 26–27 (holding that Section § 4056(b)(7) of Cal. FIPA covered state and federal subpoenas).

In declining to dismiss Plaintiffs' First Amended Complaint as to Western Union based on the Annunzio-Wiley Act's safe harbor or Cal. FIPA's express authorization, the Court characterized these arguments as "affirmative defenses." Dkt. 116 at 16:3–5. But "the assertion of an affirmative defense may be considered properly on a motion dismiss where the 'allegations in the complaint sufficed to establish' the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 217 (2007)) (interpreting provision of the Stored Communications Act that immunizes service providers from liability for disclosing information in reliance on a subpoena and affirming district court's 12(b)(6) dismissal). Indeed, "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the [c]omplaint." *Id.* (quoting *Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1199 n.5 (N.D. Cal. 2009)). Courts can also consider an affirmative defense on a motion to dismiss "if the basis for the argument" is on the face of "materials the court takes judicial notice of." *Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021) (quoting *Ellsworth v. U.S. Bank, NA.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012)).

Western Union's affirmative defenses are apparent on the face of the Complaint as well as in documents that the Court has judicially noticed. Plaintiffs do not dispute, and in fact affirmatively

allege, that Western Union produced money transfer records in response to Arizona court orders and HSI custom summonses. SAC ¶ 34 (HSI customs summonses); *id.* ¶¶ 26–27 (Arizona court orders).[6] Western Union was "neither required nor permitted to sit in review" of the Arizona court's orders or the HSI summonses. *See Lopez*, 129 F.3d at 1194. Western Union should therefore be dismissed from this case.

### C. Plaintiffs' Second Amended Complaint Fails To Allege Economic Injury Caused By A Violation Of Law Necessary To Maintain A Cal. FIPA Claim.

Assuming Plaintiffs properly alleged a violation of Cal. FIPA (which they do not), they nevertheless do not have standing under the UCL because they fail to allege proximately caused economic injury. "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) *show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim*." California Unfair Competition Law ("UCL")--Standing, Cal. Bus. Law Deskbook § 33:5 (emphasis added). Plaintiffs allege that, in hindsight, they would not have used the MTB Defendants' services and paid the money transfer fees had they known that, in the future, those defendants would have produced transfer records in compliance with subpoenas, customs summonses, and court orders. Plaintiffs' allegations fall short of showing economic injury caused by a UCL violation.

*First*, Plaintiffs cannot draw the required causal connection between the MTB Defendants' subpoena responses to the Arizona Attorney General and a violation of Cal. FIPA. "Proposition 64 requires that a plaintiff's economic injury come 'as a result of' the unfair competition.'" *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011). "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.*; *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1364

---

[6] As noted above, this Court has already taken judicial notice of these HSI custom summonses and court orders. *See supra* at Part II; *see* Dkt. 70, Armbrust Decl. Exs. G–H (letters re: HSI customs summonses), Exs. B–C, E–F (Arizona court orders).

1   (2010) (affirming grant of demurrer where complaint under "unlawful" prong of the UCL failed to

2   allege causation tied to economic harm). Here, productions of money transfer records for each Plaintiff

3   necessarily followed their money transfer transaction. Plaintiffs sent money transfers, and paid for the

4   money transfer services, before the alleged breach of Cal. FIPA. Plaintiffs did not pay for the MTB

5   Defendants' money transfer services as a result of subsequent productions of transaction records. In

6   other words, the MTB Defendants did not, and could not, violate Cal. FIPA prior to, or in the course

7   of, Plaintiffs' consumer transactions. Rather, Plaintiffs' alleged harm, and the only alleged unlawful

8   breach of Cal. FIPA, is the MTB Defendants' separate subsequent production of transaction records

9   pursuant to the Arizona subpoenas, the Arizona court orders, and HSI custom summonses.

10       *Second*, Plaintiffs' claim fails for the additional reason that Plaintiffs do not allege any

11   misrepresentation by MTB Defendants that Plaintiffs relied upon in deciding to use the MTB

12   Defendants' money transfer services. Even if the allegedly unlawful productions of money transfer

13   records had predated the money transfer transaction, which they did not, Plaintiffs' claim would still

14   rest on the illogical theory that the disclosures caused Plaintiffs to pay the money transfer fee. The

15   failure to identify a misrepresentation that Plaintiffs relied upon that caused economic loss dooms

16   Plaintiffs' theory of economic injury. *See Durell*, 183 Cal. App. 4th at 1364 (affirming grant of

17   demurrer where complaint under "unlawful" prong of the UCL failed to allege reliance on a

18   misrepresentation that caused economic harm); *dotStrategy Co. v. Facebook Inc.*, 482 F. Supp. 3d 994,

19   1000 (N.D. Cal. 2020) (granting motion to dismiss "unlawful" UCL claim for failure to identify a

20   misrepresentation that plaintiff relied upon that caused economic loss). Plaintiffs only allege UCL

21   liability for the allegedly unlawful act of providing Plaintiffs' personal information in response to a

22   subpoena, court order, or HSI custom summons, an act that took place well after they paid their money

23   transfer fees.

24       Plaintiffs' claim seeks a dramatic expansion of UCL liability disguised as a routine request for

25   restitution following a purportedly unlawful act in the course of a consumer transaction. Deceiving a

26   customer into making a purchase cannot be equated to dissatisfaction with a business's response to a

27   subpoena, court order, or custom summons not directly tied to the consumer transaction and occurring

28   later in time. Under Plaintiffs' theory, when any business is accused of violating a law, every consumer

1  who previously purchased a product from that business now has standing to bring a UCL claim, so

2  long as the consumer(s) claim they would not have made a purchase if they possessed prophetic

3  knowledge of the subsequent legal violation. For example, an alleged labor law or environmental law

4  violation could expose a retailer to a host of class actions by plaintiffs for unrelated consumer

5  transactions, so long as consumers claim they would not have made a purchase had they known of the

6  business' subsequent alleged legal transgressions; plaintiff class action counsel could throw open the

7  floodgates of spurious litigation still further by, themselves, alleging such a labor or environmental

8  violation and using it as the basis for their consumer class's UCL claim. This Court should dismiss

9  Plaintiffs' UCL claim because Plaintiffs' Complaint (1) never directly alleges that the MTB

10  Defendants' productions of money transfer records were unlawful, (2) relies on the illogical theory

11  that a response to a subpoena, court order, or HSI custom summons caused Plaintiffs to overpay for a

12  consumer transaction predating the subpoena response, (3) fails to identify any misrepresentation by

13  the MTB Defendants that induced Plaintiffs to complete the money transfer transaction, and (4)

14  contravenes responsible public policy.

15  **V.      CONCLUSION**

16          For the foregoing reasons, this Court should grant this Motion to Dismiss.

17

18   Dated:  June 13, 2024                          PILLSBURY WINTHROP SHAW PITTMAN LLP

19                                          By:        _____/s/ Robert L. Wallan_____

20                                                      ROBERT L. WALLAN
                                                        NATHAN M. SPATZ
21                                                      CHRISTOPHER M. BUTLER

22                                                  Attorneys for Defendant CONTINENTAL
                                                    EXCHANGE SOLUTIONS, INC., d/b/a RIA
23                                                  FINANCIAL SERVICES AND AFEX MONEY
                                                    EXPRESS
24

25

26

27

28

1

2
SIDLEY AUSTIN LLP

3
By: _/s/ Sheila A.G. Armbrust_____

4
Sheila A.G. Armbrust
Hille R. Sheppard (pro hac vice)

5
Stephen Chang

6
*Attorneys for Defendant*

7
*Western Union Financial Services, Inc.*

8
KAUFMAN DOLOWICH, LLP

9

10
By: _/s/ Katherine Alphonso_____

11
Tad A Devlin
Marcus Dong

12
Katherine Alphonso

13
*Attorneys for Defendant Dolex Dollar Express, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 4:22-cv-07996-HSG
4879-3433-3384.v1