BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
JULIA A. HEIMAN
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-8480
Fax: (202) 616-8470
Email: julia.heiman@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| NELSON SEQUEIRA, *et al.*, | Case No.: 4:22-cv-07996-HSG |
| Plaintiffs, | |
| v. | **FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | Date: September 5, 2024 |
| | Time: 02:00 pm |

## I.      INTRODUCTION

The Department of Homeland Security and U.S. Immigration and Customs Enforcement (together the "Federal Defendants"), respectfully submit this reply in support of their Motion to Dismiss the Second Amended Class Action Complaint, ECF No. 144-1 ("Federal Defendants' Motion").  In their Motion, Federal Defendants explained that Plaintiffs have failed to state a claim under the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422 (the "RFPA") in the Second Amended Complaint—both as to Plaintiff Jose Antonio Manjarrez's transactions with DolEx and as to Plaintiffs' transactions with unnamed companies—because they have not adequately alleged that either DolEx or the unnamed companies are companies "for which the provision of financing and cash loans to consumers is a core function and purpose of [their] business."  Mar. 21, 2024, Order at 9.

As to DolEx, Plaintiffs respond that Federal Defendants are elevating form over function, and demanding a talismanic incantation of the language from the Court's March 21, 2024, Order.  Plaintiffs are mistaken.  The Federal Defendants' objection is not as to form at all; no allegations in the Second Amended Complaint, however phrased, can satisfy the standard that this Court recognized.  Indeed, the material incorporated by reference in the complaint confirms that Plaintiffs could not amend their pleadings to make the required showing, even if leave to amend were granted for a second time.

Nor is this an issue the Court has previously considered.  That the Court has declined to reach a factual dispute as to the services DolEx offered does not affect whether the Court may examine the adequacy of Plaintiffs' pleadings and the materials incorporated by reference therein.

Finally, as to the unnamed other companies included in the complaint:  Plaintiffs suggest those allegations should be insulated from review because they are linked with the Plaintiffs' putative RFPA class.  The suggestion is puzzling, and unsupported by law.  Like Plaintiffs' claims related to DolEx, insofar as Plaintiffs did not plead adequate factual matter to state a claim— including as to whether the company in question is a "consumer finance institution"—the Plaintiffs' claim should be dismissed.

## II. DISCUSSION

### A. The Court should dismiss Plaintiffs' claim based on transactions with DolEx.

#### 1. The Second Amended Complaint is facially deficient.

As discussed in Federal Defendants' Motion, DolEx can only be "consumer finance institution," to which Section 3402 of the RFPA applies, if DolEx is "a company for which the provision of financing and cash loans to consumers is a core function and purpose of its business." Fed. Defs.' Mot. at 6 (quoting Mar. 21, 2024, Order, ECF No. 116, at 9). Yet Plaintiffs have failed to plead that that is so. Instead, Plaintiffs insist 1) that they should not be required to include a "talismanic phrase" for the complaint to pass muster; 2) that the volume of a company's lending business should not determine whether that function is core to its purpose; and 3) that the Court already has held that their pleadings are adequate to establish DolEx is a "consumer finance institution." *See* Pls' Consolidated Opp'n to Defs' Mots. to Dismiss Second Am. Compl., ECF No. 168, at 7–10. All three of these arguments miss the mark.

*Talismanic phrasing*. This argument is a strawman. The Federal Defendants do not insist that the complaint include any particular language. The deficiency in the Second Amended Complaint is not the absence of the specific words that the Court used to define the meaning of "consumer finance institution." Rather, the problematic omission is in the failure to plead, *in substance*, that financing and provision of cash loans to consumers is central to the reason for the company's existence. *See* Mar. 21, 2024, Order at 6 n.2 ("institution means an established organization that is dedicated to or primarily established for a particular cause or purpose") (quoting *FTC v. Sterling Precious Metals, LLC*, 2013 WL 1442180, at *3 (S.D. Fla. Apr. 9, 2013)). The complaint avers that DolEx advertises personal loans, *see* SAC ¶ 10, but says nothing about the role that that alleged service plays in DolEx's business. There is no basis on which to conclude that DolEx is an organization "dedicated to or primarily established for," Mar. 21, 2024, Order at 6 n.2, providing financing or cash loans to consumers, and therefore no basis on which to conclude that it is a "consumer finance institution."

*Lending volume.* Plaintiffs' volume-of-lending argument also misapprehends the Federal Defendants' position. Plaintiffs complain that the Federal Defendants "imply" that fulfilling the "core function and purpose" test "somehow turns on the volume of a company's business that relates to lending or finance," Pls.' Opp at 9, and then go on to prove that is not so. But Federal Defendants never advanced that argument. Federal Defendants instead explained that "a company does not become a 'consumer finance institution' simply by dint of offering or connecting consumers with lending services," Fed. Defs.' Mot. at 6–7, and highlights that the companies in *Worth Bullion* and *Sterling* were not found to be consumer finance institutions notwithstanding that a high volume of their business or revenue derived from provision of financing to consumers. *Id.* (discussing *Commodity Futures Trading Comm'n v. Worth Bullion Group, Inc.*, 717 F.3d 545 (7th Cir. 2013), *and FTC v. Sterling Precious Metals, LLC*, 2023 WL 1442180 (S.D. Fl. Apr. 9, 2013). It was not the volume of business or revenue, but the purpose of the businesses that was determinative. And, as to that, the Second Amended Complaint is silent.[1]

*The Court's prior order.* Finally, Plaintiffs assert that the Court has already resolved the question of whether DolEx is a financial institution under the RFPA, notwithstanding that Plaintiffs have not pled that personal lending is a core function of its business. *See* Pls.' Opp. at 8. The Court has not done so. While the Court declined to resolve whether DolEx offers personal lending *at all*—holding that this was a factual dispute that cannot be resolved on a motion to dismiss, Mar. 21, 2024, Order at 9—the Court did not have occasion to address the question now before it: whether a company is transformed into a "consumer finance institution" under the RFPA simply because it offers personal loans, where such loans are not alleged to be a core function of the company. Whether or not DolEx offers personal loans (and they do not, as demonstrated immediately below), Plaintiffs fail to aver that the personal loans or financing are a core function

---

[1] As an afterthought, Plaintiffs assert in their Opposition that "both money transfers and financing appear to be . . . core products sold by DolEx." Pls.' Opp. at 9. But "[i]t is well-established that parties cannot amend their complaints through briefing." *Borgman v. Yamaha Motor Corp., USA*, 636 F. Supp. 3d 1012, 1031 (D. Alaska 2022) ((quoting *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)). The Second Amended Complaint includes no such allegation, nor could it, as discussed below, *see infra* 4–6.

and purpose of DolEx's business, and that is fatal to the claims based on Mr. Manjarrez's use of DolEx.

### 2. DolEx's webpage, incorporated by reference in the Second Amended Complaint, confirms that Plaintiffs' claim based on Mr. Manjarrez's use of DolEx should be dismissed.

Federal Defendants' Motion explained that Plaintiffs relied wholly on DolEx's webpage for material central to Plaintiffs' RFPA claim, thereby incorporating the content of that webpage by reference. *See* Fed. Defs' Mot. at 8 (quoting SAC ¶ 10 (quoting, without citation, https://www.dolex.com/loans/)). Plaintiffs urge the Court to "be wary [of] rely[ing] on the Government's website print-out," Pls.' Opp. at 11, but do not dispute either the authenticity of the printout or that Plaintiffs' allegations that DolEx is a "consumer finance institution" rest entirely on DolEx's webpage. *See id.*, *generally*; *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1004 (N.D. Cal. 2021) (On a motion to dismiss, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."); Fed. Defs.' Mot. at 8 (discussing same).

In response, Plaintiffs first suggest the webpage, having been printed on June 6, 2024, should not inform the Court's analysis since that date is after "the misconduct alleged in this case." Pls.' Opp. at 10. Yet Plaintiffs notably do not assert that the version of the webpage on which they relied in drafting the complaint is or was materially different—or different at all—from the then-current version proffered by the Federal Defendants. In any event, an archived version of DolEx's webpage from August 19, 2022 confirms that in 2022, as in 2024, a company other than DolEx provided the loans DolEx advertises. *See* Aug. 1, 2024, Heiman Decl., Ex. 1.[2]

---

[2] Neither printout includes the following quotation, which appears in Federal Defendants' June 6, 2024 submission: "Oportun (a service provider) partners with DolEx in certain states to bring you personal loans, issued by Pathward®, N.A. a national bank headquartered in South Dakota. Neither Oportun or Parthward participates in any other DolEx product or service." However, that statement currently appears verbatim on Dolex's website, *see* https://www.dolex.com/loans/, as it did on June 6, 2024. *See* Aug. 1, 2024 Heiman Decl., ¶ 4. It appears that a technical issue prevents that language from printing when the webpage is rendered as a pdf. Because the archived version of the webpage appears to be missing some formatting, it is unclear whether that language also appeared in the August 2022 version of the page.

In the August 19, 2022, version of Dolex's webpage, just as in the June 6, 2024, version, the advertisement is for "Oportun personal loans." *See id.* at 4. Both versions characterize the loans as "Oportun personal loans offered through DolEx locations," *compare* Aug. 1, 2024, Heiman Decl., Ex. 1 at 5 *with* ECF No. 144-2 at 5, and both caution: "Oportun's website terms, privacy, and security policies apply to anyone who visits that site, which may be different than DolEx website policies," *compare* Aug. 1, 2024 Heiman Decl., Ex. 1 at 5 *with* ECF No. 144-2 at 5.

Both also include the language on which Plaintiffs focus in their Opposition: "[b]y applying through DolEx, you agree that DolEx can use the contact information you provide for a loan application to also open a DolEx customer account for you." *Compare* Aug. 1, 2024, Heiman Decl., Ex. 1 at 5 *with* ECF No. 144-2 at 5. Plaintiffs contends that this language "*confirms* DolEx plays a significant role in the lending process." Pls.' Opp. at 10. But just the opposite is true. As noted above, the website advertises "Oportun personal loans offered through DolEx locations," and then notifies customers that supplying one's information for a loan application amounts to agreement that DolEx can "*also* open a DolEx customer account for you." *Compare* Aug. 1, 2024, Heiman Decl., Ex. 1 at 5 (emphasis added); ECF No. 144-2 at 5 (same). "Also" signifies "in addition" or "besides." *See, e.g.*, The Am. Heritage Dictionary of the English Language (5th ed. 2022) available at https://www.ahdictionary.com/word/search.html?q=also. Thus, the webpage informs users that the information from a loan application may be used to open a DolEx account in addition to, or besides, the account for which the loan application is submitted. The plain meaning of the website is that an account with a different company (*i.e.* Oportun) is created using the loan application, and the customer is informed that the same information will be used *also* to create a DolEx account.

Plaintiffs argue that the webpage "contains no express representation that DolEx is *not* involved in the lending process, and offers no information whatsoever about the relationship between DolEx and Oportun." Pls.' Opp. at 10. Not so. The webpage, in both its 2022 and its present day versions, makes clear that DolEx and Oportun are two companies—with different website policies, *see supra* 5—and that it is the latter that offers personal loans. Indeed, the

5

FEDERAL DEFENDANTS' REPLY SUBMITTED IN SUPPORT OF
THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
Case No.: 22-cv-07996-HSG

webpage indicates that the information customers supply in a loan application will be used to create an account *not* with DolEx, but DolEx may then *also* use that information to create a DolEx customer account. In other words: the customers' loan accounts are not with DolEx, but the information supplied in those accounts will be used by DolEx *too*. This reality—evident in materials incorporated by reference in the complaint—undermines any suggestion that personal loans are a core function and purpose of DolEx's business.

### B. Plaintiffs cannot maintain a claim based on putative class members' use of an unspecified "money transfer business that offers credit or lending services."

The Federal Defendants' Motion also explained that the Plaintiffs' allegations concerning unspecified "other" companies lack sufficient factual matter. *See* Fed. Defs' Mot. at 9–10 (addressing SAC ¶¶ 69, 70, 71). Plaintiffs respond that the allegations regarding unnamed other companies "are linked to the proposed, tentatively defined 'RFPA class.'" Pls.' Opp. at 11 n.5. On that basis, Plaintiffs puzzlingly dismiss the Federal Defendants' argument as "a premature attack on class certification." *Id.* This argument is a red herring.

Federal Defendants' arguments have nothing to do with class certification. Instead, Federal Defendants challenge the sufficiency of Plaintiffs' factual allegations, which calls for a straightforward application of familiar pleading standards. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.") A putative class action complaint does not somehow insulate a pleading from these obligations, as Plaintiffs appear to suggest. *See, e.g.*, *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (assessing whether a putative class action complaint satisfied the *Twombly* standard).

Plaintiffs' case citations wildly miss the mark. Pls. Opp. at 11 n.5 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), and *Wisdom v. Easton Diamond Spots, LLC*, 824 F. App'x 537, 538 (9th Cir. 2020)). *Falcon* addressed the requirements of Rule 23 and had nothing to say about the sufficiency of the underlying claims. *See Falcon*, 457 U.S. at 160 ("The District Court's error in this case . . . is the failure to evaluate carefully the legitimacy of the named

plaintiff's plea that he is a proper class representative under Rule 23(a).")  And, in *Wisdom*, the Court of Appeals held that it had been an abuse of discretion for the district court to *strike* class allegations on the pleadings "on the grounds that common questions either did not exist, or did not predominate over questions affecting individual class members."  *Wisdom*, 824 F. App'x at 538; *see Wisdom v. Easton Diamond Sports*, 2019 WL 580670, at *5 (C.D. Cal. Feb. 11, 2019) (striking the Plaintiff's class allegations under Rule 12(f) because "it is obvious at this stage of the proceedings that classwide relief is not available"), *vacated and remanded*, 824 F. App'x 537 (9th Cir. 2020).  It was "premature" to consider the application of Rule 23 at the motion-to-dismiss phase, but the Court of Appeals had nothing to say about the application of pleading standards applicable to the underlying claims on the merits.  *Wisdom*, 824 F. App'x at 538.[3]  Here, no one is improperly asking that class allegations be stricken.  Instead, Federal Defendants simply contend that the Complaint, putative class action or not, must do more than simply recite the elements of a cause of action.  And, as to the "other companies" Plaintiffs here have not done so.  Indeed, they have not even attempted to argue otherwise.  *See* Pls. Opp., *generally*.

### III.  CONCLUSION

For the reasons explained herein and in the Federal Defendants' Motion, the Court should grant the Federal Defendants' Motion and dismiss Count I of the Second Amended Complaint with prejudice.

Dated: August 1, 2024                                          Respectfully submitted,

                                                        BRIAN M. BOYNTON
                                                        Principal Deputy Assistant Attorney General

                                                        BRIGHAM J. BOWEN
                                                        Assistant Branch Director

                                                        */s/ Julia A. Heiman*
                                                        JULIA A. HEIMAN, Bar No. 241415

---

[3] While the Federal Defendants would indeed object to certification of the proposed "RFPA Class," Plaintiffs have not submitted any motion for class certification, and addressing such issues would indeed be premature.

Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-8480
Facsimile:  (202) 616-8470
julia.heiman@usdoj.gov

*Attorneys for Federal Defendants*