UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON SEQUEIRA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Case No. 22-cv-07996-HSG<br><br>**ORDER GRANTING MONEY TRANSFER DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 157 |

Pending before the Court is the motion to dismiss filed by Defendants Western Union Financial Services, Inc.; Continental Exchange Solutions, Inc., d/b/a Ria Financial Services and AFEX Money Express; Viamericas Corporation; and DolEx Dollar Express, Inc. Dkt. No. 157. The Court held a hearing on the motion. For the reasons detailed below, the Court **GRANTS** the motion.

## I.  BACKGROUND

Plaintiffs Nelson Sequeira, Ismael Cordero, Maria Hernandez, and Jose Antonio Manjarrez bring claims individually and on behalf of proposed classes, alleging violations of the Right to Financial Privacy Act ("RFPA") and California's Unfair Competition Law ("UCL") by two groups of Defendants: (1) the "Federal Government Defendants," which include the U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"); and (2) the "Money Transfer Defendants," which include Western Union Financial Services, Inc. ("Western Union"), Continental Exchange Solutions, Inc., d/b/a Ria Financial Services and AFEX Money Express ("Continental"), DolEx Dollar Express, Inc. ("DolEx"), and Viamericas Corporation ("Viamericas"). *See* Dkt. No. 138 ("SAC") ¶¶ 1–10.

Plaintiffs claim that the Money Transfer Defendants shared Plaintiffs' private financial and

personal records with various law enforcement agencies, including the Federal Government Defendants, in violation of RFPA and the California Financial Information Privacy Act ("Cal. FIPA"). Specifically, Plaintiffs allege that the financial records are collected and shared through the Transaction Record Analysis Center ("TRAC"), which was founded in 2014 by the Arizona Financial Crimes Task Force—comprising the Arizona Attorney General's Office, Phoenix Police Department, and Arizona Department of Public Safety, with the participation of DHS. SAC ¶ 14–28. Plaintiffs allege that this program, which has existed since approximately 2014 but was only recently made public, targets immigrants and communities of color. *Id.* at ¶¶ 14, 48–51. TRAC gathers and makes available consumer financial records from money transfer companies for money transfers greater than $500 sent to or from the Southwest border region, including Arizona, California, New Mexico, Texas, and Mexico. *Id.* at ¶¶ 15, 17, 31, 36. According to the SAC, the information gathered is sweeping, and not intended to focus on particular individuals suspected of criminal activity. *See id.* at ¶¶ 36–37. Plaintiffs raise concerns that TRAC can be "weaponized against vulnerable groups based on improper criteria, such as race, religion, or national origin." *Id.* at ¶¶ 37, 48–51. Plaintiffs further allege that the Money Transfer Defendants were aware that multiple federal government agencies could access and obtain the information produced to TRAC. *See id.* at ¶¶ 45–47.

In the First Amended Complaint, Plaintiffs alleged that the Money Transfer Defendants violated RFPA by sharing Plaintiffs' private financial and personal records with law enforcement agencies, including the Federal Government Defendants, and that the Federal Government Defendants in turn violated RFPA by collecting and obtaining these private financial and personal records. *See* Dkt. No. 38 ("FAC") ¶¶ 70–74. The Court partially granted Defendants' motions to dismiss this claim, holding that Continental and Viamericas were not subject to RFPA because they were not "consumer finance institutions," which the Court defined as companies "for which the provision of financing and cash loans to consumers is a core function and purpose of its business." Dkt. 116 at 9. The Court further found that Plaintiffs had failed to adequately allege that they were "customers" of any of the Money Transfer Defendants under RFPA, which would require the financial institution to maintain an account in their name. *Id.* at 10–11.

In the Second Amended Complaint, Plaintiff Manjarro alleges that he was a customer of DolEx, which maintained an account in his name, that DolEx violated RFPA by sharing his private financial and personal records with law enforcement agencies, including the Federal Government Defendants, and that the Federal Government Defendants in turn violated RFPA by collecting and obtaining these private financial and personal records. *See id.* ¶¶ 65–77. Plaintiffs also preserve their RFPA claims as to other Money Transfer Defendants for purposes of appeal. *See id.* ¶ 67 n.3. Finally, Plaintiffs allege that the Money Transfer Defendants' sharing of their private financial and personal records is in violation of the Cal. FIPA and therefore constitutes an unlawful business practice under the UCL. *See id.* at ¶¶ 78–90.

Defendants now move to dismiss the SAC under Rule 12(b)(6), for many of the same reasons raised in their previous motions to dismiss. Dkt. Nos. 144-1 ("Federal Mot."), 157 ("MTB Mot."). Money Transfer Defendants also bring a motion to dismiss under Rule 12(b)(7), arguing that the entire case must be dismissed because under Rule 19, the State of Arizona and Arizona Attorney General are necessary parties that cannot feasibly be joined, and that this case cannot proceed in equity and good conscience without them. *See* MTB Mot. at 6–12.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as

1  true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v.*
2  *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not
3  "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or
4  unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)
5  (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *see also*
6  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required
7  to accept as true conclusory allegations which are contradicted by documents referred to in the
8  complaint.").  Similarly, "a plaintiff can . . . plead himself out of a claim by including unnecessary
9  details contrary to his claims." *Sprewell*, 266 F. 3d 988–89.

### B. Rule 12(b)(7)

A party may move to dismiss a complaint for "failure to join a party under Rule 19."  Fed. R. Civ. P. 12(b)(7).  This rule is designed "to protect the interests of absent parties, as well as those ordered before the court, from multiple litigation, inconsistent judicial determinations or the impairment of interests or rights."  *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991).  Rule 19 requires a three-step inquiry: (1) determining whether the absent party is a "required party" and "must be joined" if feasible; (2) determining whether the "required party" can feasibly be joined; and (3) if the party "who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  *Dine Citizens Against Ruining Our Env"t v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019) (quoting Fed. R. Civ. P. 19(a)(1)); *see also Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

## III. DISCUSSION

### A. 12(b)(7) Motion

The Money Transfer Defendants first argue that the case should be dismissed under Federal Rule of Civil Procedure 12(b)(7), because the State of Arizona and Arizona Attorney General (collectively, "Arizona") are required and indispensable parties who cannot feasibly be joined.  *See* MTB Mot. at 6–12.

4

### i. The State of Arizona and Arizona Attorney General Are Required Parties Under Rule 19(a)(1)

Under Rule 19, a party is required to be joined if feasible under two conditions: (1) if "in that person's absence, the court cannot accord complete relief among the existing parties[,]" Fed. R. Civ. P. 19(a)(1)(A); or (2) if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). Money Transfer Defendants argue that joinder of Arizona is required under both conditions. *See* MTB Mot. at 8–9.

First, the Court is not convinced by Money Transfer Defendants' argument under Rule 19(a)(1)(A), as it is not clear why it could not "accord complete relief among the existing parties" in Arizona's absence. Ultimately however, the Court need not decide this point, as it finds Money Transfer Defendants' argument under Rule 19(a)(1)(B) persuasive.

Turning to that argument, Plaintiffs, for the first time at the hearing, raised the threshold issue that Arizona could not be a necessary party because it had not affirmatively claimed an interest in this litigation. *See* Dkt. No. 176 ("Hearing Tr.") at 6:24–8:4; 12:11–23. Joinder under Rule 19(a)(1)(B) "is 'contingent . . . upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action.' " *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983) (emphasis in *Bowen*)). Therefore, joinder is not necessary if the absent party "was aware of [the] action and chose not to claim an interest." *Bowen*, 172 F.3d 689.

Because this argument was not briefed in the parties' papers, the Court granted the parties an opportunity to submit supplemental briefs on the issue. *See* Dkt. Nos. 179, 180. In response, the Arizona Attorney General submitted a letter to inform the Court that "the State of Arizona and [she], in [her] official capacity as the Arizona Attorney General, are highly vested in the outcome of this matter." Dkt. No. 181 at 1. In light of these statements, the Court finds that Arizona has now claimed an interest in the subject matter of this litigation, such that Rule 19(b)(1)(B) applies.

Plaintiffs argue in their supplemental brief that the interest articulated by the Arizona

5

Attorney General is "not a legally protected interest, but general policy interests, which do not qualify under Rule 19." Dkt. No. 183 at 2. The Court is not persuaded: the interest claimed by the Arizona Attorney General relates to Arizona's "ability to issue and enforce the subpoenas and obtain the requested transactional records which are at the crux of the present matter . . . ." Dkt. No. 181 at 2. Plaintiffs' entire theory of this case is that compliance with those subpoenas violates federal and California law. Similarly, Plaintiffs' primary argument against Money Transfer Defendants' Annunzio-Wylie Act and Cal. FIPA affirmative defenses is that those subpoenas are overbroad and not "properly authorized" under the law. *See e.g.*, Dkt. No. 168 ("Opp.") at 14–22. As such, any possible remedy that this Court could craft in favor of Plaintiffs would necessarily require resolution of those issues, and any finding that the existing subpoenas are unlawful would *necessarily* impair Arizona's ability to issue and such enforce subpoenas to obtain records. *See E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010) ("A public entity has an [legally protected] interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices.").

        Plaintiffs' other arguments are likewise unpersuasive. Plaintiffs argue that "the AG only has a *legally protected* interest in obtaining records if the subpoenas are properly authorized. . . . [and] [t]he AG cannot have a legally protected interest in obtaining records with no reasonable connection to conduct indictable in Arizona." Dkt. No. 183 at 2 (emphasis in original). But this argument puts the cart before the horse in requiring a substantive determination of the *merits* of Arizona's claim to that interest before determining whether it is entitled to defend that claim in this case. Put another way, it cannot be the case that an interest claimed under Rule 19 by an absent party is only legally protected *if* the Court first finds that interest substantively meritorious. Otherwise, any Rule 19 motion would either (1) never conclude that the absent party had claimed a legally protected interest, or (2) devolve into a mini-trial on the merits as to the substance of that party's interest in the action. Neither comports with the purpose of Rule 19, which exists to ensure that the absent party be given the *opportunity* to defend its interest in court. *See Peabody*, 610 F.3d at 1081–82 (finding Secretary of the Interior a required party because if he "is not joined, he will be unable to defend his interest in the legality of the lease provisions."). Here, Arizona has

a legally protected interest in defending the validity and enforceability of its subpoenas.

Having resolved the threshold issue, the Court next turns to whether proceeding with this case in Arizona's absence would "(i) as a practical matter impair or impede" its ability to protect its interest, or "(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). Money Transfer Defendants first argue that joinder of Arizona is required, since otherwise they would be subject to a substantial risk of inconsistent obligations if this Court rules in favor of Plaintiffs on their RFPA and/or Cal. FIPA claims. *See* MTB Mot. at 8–9.

In response, Plaintiffs argue that the concern of " 'inconsistent obligations' only arises if certain forms of injunctive relief are granted[,]" seemingly conceding that the injunctive relief they seek could implicate Rule 19. Opp. at 12. Plaintiffs argue that the Court could avoid this result by simply awarding monetary damages pursuant to RFPA and/or Cal. FIPA, thereby permitting the Money Transfer Defendants to "simply continue to comply with [Arizona's] order to produce subject records and also pay whatever damages or restitution are ordered under the RFPA or Cal. FIPA." *Id.* at 13. Additionally, Plaintiffs argue that the Court could award limited injunctive relief, such as requiring the Money Transfer Defendants to comply with the notification requirements of RFPA when producing records to Arizona and/or TRAC, which they say would avoid the risk of subjecting Money Transfer Defendants to inconsistent obligations.

The Court is not persuaded by either argument. First, as to a hypothetical award of money damages, Plaintiffs argue that Rule 19 "guards against litigants incurring inconsistent legal obligations and duties . . . [but] it is unconcerned with the possibility of inconsistent *adjudications or results*." Opp. at 12 (emphasis in original) (citation omitted). While it is true that the Ninth Circuit has adopted the First Circuit's approach that Rule 19 is not implicated simply by the prospect of inconsistent adjudications or results, *see Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California,* 547 F.3d 962, 976 (9th Cir. 2008), the risks facing Money Transfer Defendants in this case go beyond just inconsistent results. "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when

7

a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Id.* (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d. 1, 3 (1st Cir. 1998) (per curiam)).  Here, if this Court were to award money damages to Plaintiffs, it would be doing so based on a finding that Money Transfer Defendants' conduct in producing financial records was illegal under RFPA and/or Cal. FIPA.  If that happened, going forward, Money Transfer Defendants would be forced either to refuse to comply with further subpoenas from Arizona, or to continue to engage in conduct that this Court had found to violate RFPA and/or Cal. FIPA.  This is plainly more than just "successfully defend[ing] a claim in one forum, [but] los[ing] on another claim arising from the same incident in another forum." *Id.*  Instead, Money Transfer Defendants would be stuck "between the proverbial rock and a hard place" of either refusing to comply with Arizona's subpoenas or violating RFPA and/or Cal. FIPA.  *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002); *see also Peabody*, 610 F.3d at 1082 ("If the Secretary is not made a party and if EEOC prevails, . . . .  the Secretary may choose to continue the leases in their current form, ignoring the judgment in the case to which he has not been made a party. If the Secretary chooses to do this, he will put both Peabody and the Nation between the proverbial rock and a hard place[.]" (internal quotations and citations omitted)).

As to Plaintiffs' second argument that the Court could grant limited injunctive relief such as requiring notification of Money Transfer Defendants' customers whose records were being produced, such relief would still run afoul of Rule 19(a)(1)(B), as it would practically impair Arizona's legal interest in the enforcement of its subpoenas.  Arizona has a legally protected interest in Money Transfer Defendants' full compliance with its subpoenas, including regulating disclosures about the investigations in which they are issued.  *See e.g.*, Dkt. No. 158-6 at 2–3 (subpoena to Continental stating "NOTICE: This is a felony investigation.  Either warning another person of impending felony prosecution or suppressing physical evidence by concealment, alteration or destruction in a felony investigation are each separate felonies."); Dkt. No. 162 at 5

(subpoena to DolEx stating same).[1] If this Court were to award Plaintiffs injunctive relief in the form of mandatory disclosures, it would materially impact that interest. Plaintiffs may argue that the impact is minimal, but Arizona is nonetheless entitled to defend that interest. Again, the fact that Plaintiffs base their entire argument against Money Transfer Defendants' Annunzio-Wylie Act and Cal. FIPA defenses on arguments that the Arizona subpoenas and orders are overbroad and "invalid" only further confirms that any ruling for Plaintiffs on the merits in this case will necessarily implicate and impair Arizona's legally protected interests.

Plaintiffs also argue that the question of injunctive relief is still undecided, and "the Court will be able to fashion meaningful relief that addresses Plaintiffs' injuries without subjecting [Money Transfer Defendants] to inconsistent obligations." Opp. at 14. But Plaintiffs tacitly acknowledge that the majority of the injunctive relief they seek in the SAC would run afoul of Rule 19, and it is not apparent to the Court that any relief that would not impose inconsistent obligations exists, given the nature of Plaintiffs' theory.

Accordingly, the Court finds Arizona is a "required party" that must be joined if feasible under Rule 19(a)(1)(B).

### ii. Feasibility of Joining the State of Arizona and Arizona Attorney General

Plaintiffs do not dispute that Arizona cannot be feasibly joined in this case, because it has sovereign immunity under the Eleventh Amendment. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Accordingly, the Court concludes joinder of Arizona is not feasible in this action.

### iii. Dismissal of the Action "In Equity and Good Conscience"

Money Transfer Defendants argue that because Arizona cannot be feasibly joined, dismissal is appropriate in equity and good conscience. The Court agrees: any ruling in Plaintiffs'

---

[1] The Court takes judicial notice of the representations on the face of Arizona's subpoenas to Money Transfer Defendants, as those subpoenas are documents whose "authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (a court may take judicial notice of such documents even if "the plaintiff does not explicitly allege the contents of that document in the complaint."). The Court need not and does not assume the underlying truth of the representations, but instead simply takes notice that the subpoenas make those representations.

9

favor in this action would either (1) be inequitable for Money Transfer Defendants as it would require them to comply with future Arizona subpoenas and orders while simultaneously paying money damages in perpetuity, (2) materially impair Arizona's legally-protected interests in the enforcement of subpoenas and court orders, or (3) both. Plaintiffs present no argument here except as to speculate that the Court could fashion some hypothetical form of limited injunctive relief to avoid prejudice, but as the Court has already found, no such relief is apparent.

Accordingly, because joinder of Arizona is both necessary and not feasible, and this case cannot proceed in equity and good conscience without Arizona, this Court must dismiss it under Rule 12(b)(7). Further, such a fatal flaw is not curable by amendment and supports dismissal with prejudice. *See Dawavendewa,* 276 F.3d at 1153 (affirming dismissal of complaint with prejudice where district court properly ruled that indispensable party could not feasibly be joined under Rule 19). Finally, Plaintiffs' "request [for] an opportunity to file a motion for leave to file an amended complaint attempting to state a claim against such absent parties and/or their adequate representatives," Dkt. No. 183 at 4 n.4, is denied. It is uncontroverted that Arizona cannot be joined based on the Eleventh Amendment, and Plaintiffs identify no other "absent parties" against whom they could state an amended claim that would avoid or remedy this defect.

**B.    12(b)(6) Motion**

Because the Court grants Money Transfer Defendants' Rule 12(b)(7) motion to dismiss with prejudice, it need not reach the issues raised in Money Transfer Defendants' Rule 12(b)(6) motion. *See* Dkt. No. 157.

//

//

//

//

//

//

//

//

## IV. CONCLUSION

Because the Court finds that the State of Arizona and Arizona Attorney General are required parties that must be joined and that such joinder is not feasible, the Court **GRANTS** Money Transfer Defendants' motion to dismiss. Dkt. No. 157. Because this defect cannot be cured by amendment, dismissal shall be **WITH PREJUDICE.** All other pending motions are **TERMINATED AS MOOT.** The Clerk is directed to enter judgment in favor of Defendants and against Plaintiffs and close the file.

**IT IS SO ORDERED.**

Dated: 9/30/2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge