

September 30, 2024

Honorable Haywood S. Gilliam, Jr.
United States District Court, Northern District of California
Ronald V. Dellums Federal Building & United States Courthouse
1301 Clay Street
Oakland, CA 94612

    Re: *Sequeira v. U.S. Dep't of Homeland Sec.*, No. 4:22-cv-7996-HSG

    **Letter Brief of *Amici Curiae* American Civil Liberties Union, ACLU of Arizona, and ACLU of Northern California in Support of Plaintiffs' Opposition to Money Transfer Business Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint**

Dear Judge Gilliam,

Pursuant to the accompanying motion for leave, *amici curiae* American Civil Liberties Union (ACLU), ACLU of Arizona, and ACLU of Northern California write to address one important issue regarding the Money Transfer Business Defendants' argument that this action should be dismissed pursuant to Federal Rule of Civil Procedure 19 for failure to join a necessary party. *See* ECF No. 157 at 6–12; ECF No. 182.

On September 25, 2024, the Arizona Attorney General submitted a letter to the Court claiming "a very strong interest" in this matter. ECF No. 181 at 2. This appears intended to satisfy the prong of Rule 19 defining a "Required Party" as a person who "claims an interest relating to the subject of the action . . . ." Fed. R. Civ. P. 19(a)(1)(B).

Merely asserting an interest (even a "very strong" one) does not suffice under the rule, however. As the Ninth Circuit has repeatedly explained, "[t]o satisfy Rule 19, an interest must be *legally protected*." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 852 (9th Cir. 2019) (emphasis added). *See also, e.g., Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

The problem with Arizona's invocation of an interest here is that the basis of the state's asserted interest—its use of bulk, prospective subpoenas for out-of-state money transfer records—has already been ruled illegal in a binding opinion by an Arizona appellate court. *State ex rel. Goddard v. W. Union Fin. Servs., Inc.*, 166 P.3d 916, 923–97 (Ariz. Ct. App. 2007). Put simply, an asserted "interest" in ongoing illegal



activity "is not 'legally protected.'" *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (addressing definition of "legally protected interest" in standing context).[1] *See also Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) ("We do not hold, of course, that a district court would be required to find a party necessary [under Rule 19] based on patently frivolous claims made by that party.").

The Arizona AG's letter asserts an interest in continuing "to issue and enforce . . . subpoenas" to "Money Service Businesses" for bulk records regarding Californians' money transfers. ECF No. 181 at 2. Those subpoenas are issued under the purported authority of Ariz. Rev. Stat. § 13-2315, an anti-racketeering statute. However, the Arizona Court of Appeals has foreclosed use of section 13-2315 to issue just the type of bulk, prospective subpoena for money transfer records at issue here.

In 2006, the Arizona Attorney General's office issued a subpoena under section 13-2315 to Western Union, seeking records of "any wire-transfers made in an amount of $300 or more to any location in Sonora, Mexico from any Western Union location worldwide for a three-year period." *State ex rel. Goddard*, 166 P.3d at 917. Western Union refused to comply, on the grounds that the subpoena violated state law and the Fourth Amendment. The Arizona Court of Appeals agreed, in a unanimous decision issued on state-law grounds.

As the court explained, section 13-2315 requires that government requests for financial records be "reasonable" in light of the circumstances and "relevant to a civil or criminal investigation of an offense." *Id.* at 921. The court held that the subpoena violated section 13-2315 because it was unreasonably overbroad, including because it sought records of money transfers that occurred wholly outside of Arizona (for example, between California and Mexico) and thus were beyond the State's jurisdiction under its anti-racketeering statute. *Id.* at 923–29. Because much of the information prospectively requested was by definition not relevant to any identified current investigation, much less to an investigation into conduct over which Arizona had jurisdiction, the subpoena exceeded the authority of section 13-2315. *Id.* As the court put it, the State's bulk subpoena amounted to a claim of "limitless" investigative power not authorized by statute. *Id.* at 926. And because "[s]ubpoenas that are

---

[1] *Cf. Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 798 (5th Cir. 1999) ("[I]nterference with an affirmatively illegal act is not a tort for which damages may be recovered because it does not impinge upon any legally protected interest." (alteration in original) (citation omitted); *Bell v. Redflex Traffic Sys., Inc.*, 374 F. App'x 518, 520 (5th Cir. 2010) (in standing context, finding no "legally protected" interest in seeking redress for plaintiff's alleged injuries stemming from illegal conduct of running a red light).



overbroad are not enforceable," *id.* at 924, Western Union was under no obligation to comply.

The bulk subpoenas issued to money transfer companies over the last decade are even broader, and thus cannot be distinguished in any way that aids Arizona's claim of a protected interest here. While the 2006 subpoena sought records of money transfers involving one Mexican state, the recent subpoenas seek records of transfers to, from, or within any of the southern-border states, as well as to, from, or within all of Mexico.[2] There is no plausible argument (and certainly neither the Money Transfer Business Defendants nor the Arizona AG have offered one) that these bulk subpoenas can satisfy section 13-2315's reasonableness and relevance requirements. By seeking large volumes of prospective data on transactions that have not yet occurred, that are not relevant to any particular investigation, and that have no nexus with Arizona, the subpoenas violate the statutory relevance and reasonableness requirements.[3]

Because the Arizona Court of Appeals has already ruled Arizona's use of bulk, prospective, extraterritorial section 13-2315 subpoenas illegal and unenforceable, this Court need not itself pass on the "legal validity of the Arizona Attorney General's subpoenas." ECF No. 182 at 4. The Arizona Court of Appeals has already done so. The implication of that ruling is that Arizona cannot claim a legally protected interest in subpoenas that "that are overbroad [and thus] not enforceable." *State ex rel. Goddard*, 166 P.3d at 924.

---

[2] Last year, the ACLU published 140 bulk subpoenas issued under the purported authority of section 13-2315 from 2014 to 2021, which the Arizona Attorney General's office disclosed under the Arizona Public Records Law. *See Arizona AG Money Transfer Surveillance FOIA Database*, ACLU (Dec. 22, 2022), https://www.aclu.org/foia-collection/arizona-ag-money-transfer-surveillance-foia-database. *See also* Fikayo Walter-Johnson & Nathan Freed Wessler, *How the Arizona Attorney General Created a Secretive, Illegal Surveillance Program to Sweep up Millions of Our Financial Records*, ACLU (Jan. 18, 2023), https://perma.cc/Z7MJ-XTHP.

[3] For much the same reason, the subpoenas are also unreasonable under the Fourth Amendment. *See Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208 (1946) (addressing Fourth Amendment relevance and reasonableness requirements). "[D]ocument subpoenas typically seek the records of a particular individual or corporation under investigation, and cover particular time periods when the events under investigation occurred." *ACLU v. Clapper*, 785 F.3d 787, 813 (2d Cir. 2015). Subpoenas seeking prospective production of bulk records are vanishingly rare, but the few courts that have encountered them have not hesitated to invalidate them. The Ninth Circuit, for example, has held that the government cannot indiscriminately collect bulk transactional records without first making "a showing of relevance to a particular authorized investigation *before* collecting the records." *United States v. Moalin*, 973 F.3d 977, 996 (9th Cir. 2020). The Second Circuit has explained that subpoenas for "records that do not *yet* exist" are invalid because they indiscriminately seek records whose relevance cannot be known at the time they are requested. *Clapper*, 785 F.3d at 813.



                                Respectfully Submitted,

                                /s/ *Matthew T. Cagle*

Nathan Freed Wessler (*pro hac vice application pending*)  
AMERICAN CIVIL LIBERTIES UNION FOUNDATION  
125 Broad Street, 18th Floor  
New York, NY 10004  
(212) 549-2500  
nwessler@aclu.org  
*Attorney for* Amici Curiae

Matthew T. Cagle (SBN 286101)  
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA  
39 Drumm Street  
San Francisco, CA 94111  
(415) 293-6336  
mcagle@aclunc.org  
*Attorney for* Amici Curiae